## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID CAREW, Individually and on on Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| LIFECORE BIOMEDICAL, INC., ALBERT D. BOLLES, JAMES G. HALL, BRIAN MCLAUGHLIN, and JOHN MORBERG, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff David Carew ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lifecore Biomedical, Inc. ("Lifecore" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## **NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Lifecore securities between October 7, 2020, and March 19, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Lifecore[1], together with its subsidiaries, operates as an integrated contract development and manufacturing organization in the U.S. and internationally.   The Company purportedly designs, develops, manufactures, and sells differentiated products for biomaterials markets, and license technology applications to partners.

3.     Lifecore's securities trade on the Nasdaq Global Select Market ("NASDAQ") and, as such, the Company is required to comply with NASDAQ's "listing" rules, or the set of conditions which a company must meet in order to list its securities on the exchange.   In relevant part, NASDAQ Listing Rule 5250(c)(1) requires Lifecore to timely file all required periodic financial reports with the SEC.   As a "non-accelerated filed"—i.e., a company that has a public float of less than $75 million as of the last business day of its most recently completed second fiscal quarter—Lifecore must file quarterly

---

[1] Lifecore was formerly known as Landec Corporation and changed its name to Lifecore Biomedical, Inc. in November 2022.

reports with the SEC no more than 45 days after fiscal quarter-end and annual reports no more than 90 days after fiscal year-end.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lifecore maintained deficient internal controls over financial reporting; (ii) as a result, the Company issued several financial statements that were inaccurate and would need to be restated; (iii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective; (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (v) accordingly, the Company's financial position and/or prospects were materially overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      In September 2022, Lifecore began reporting various issues concerning the internal controls over its financial reporting.  On September 14, 2022, in the first of what would ultimately be a series of 16 such disclosures over approximately an 18-month period, Lifecore filed an Annual Report on Form 10-K with the SEC for the fiscal year ended May 29, 2022 (the "2022 10-K") which revealed, in relevant part, that "due to a material weakness in our internal control over financial reporting [. . .] our disclosure controls and procedures were not effective as of May 29, 2022[,]" and that the Company was restating several previously issued financial statements.  Despite the foregoing, Lifecore represented to investors that the Company was undertaking efforts to address the material weaknesses

3

and restate the financial statements in a timely manner.  For example, Lifecore stated in the 2022 10-K that the Company was purportedly "evaluating remediation activities related to [its] non-standard transaction processes" including "(i) enhancing and developing a more comprehensive review process and monitoring controls related to non-standard transactions and (ii) continuing to provide training and development to [Lifecore's] accounting team related to non-standard transactions, including discontinued operations and restructuring activity."

6.      Then, on October 7, 2022, Lifecore filed a Quarterly Report on Form 10-Q with the SEC for the fiscal quarter ended August 28, 2022 (the "Q1 2023 10-Q") which stated that the Company's "disclosure controls and procedures were not effective as of August 28, 2022, due to the material weakness in internal control over financial reporting that was disclosed in the [2022 10-K]."

7.      On this news, Lifecore's stock price fell $0.19 per share, or 2.31%, to close at $8.05 per share on October 10, 2022.  Nonetheless, Lifecore reiterated in the Q1 2023 10-Q that the Company was implementing a remediation plan to address the foregoing material weaknesses.

8.      On January 9, 2023, Lifecore revealed in a filing with the SEC that the Company was "unable to file, without unreasonable effort and expense, its Quarterly Report on Form 10-Q for the period ended November 27, 2022 (the 'Second Quarter Form 10-Q') in a timely manner" because "[t]he Company experienced an unexpected delay in finalizing the financial statements relating to the assessment of certain asset impairments and subsequent events in the Second Quarter Form 10-Q."

4

9.     On January 11, 2023, Lifecore issued a press release announcing receipt of a notification letter from the Listing Qualifications Department of NASDAQ indicating that, "as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the period ended November 27, 2022 [] with the [SEC], the Company [was] not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1)[.]"

10.     On this news, Lifecore's stock price fell $0.12 per share, or 1.65%, to close at $7.14 per share on January 12, 2023.

11.     On February 1, 2023, Lifecore revealed in a filing with the SEC that "the Company's previously issued (i) consolidated financial statements as of and for the year ended May 29, 2022 and (ii) unaudited consolidated financial statements as of and for the three months ended August 28, 2022" should no longer be relied upon.  Specifically, Lifecore indicated that "[t]his determination resulted from the identification of errors [. . .] identified by the Company related to certain non-cash impairment charges" related to a particular segment of the Company and that the financial statements for these periods would need to be restated.

12.     On this news, Lifecore's stock price fell $0.11 per share, or 1.75%, to close at $6.17 per share on February 2, 2023.

13.     On March 16, 2023, Lifecore filed a Quarterly Report on Form 10-Q with the SEC for the fiscal quarter ended November 27, 2022 (the "Q2 2023 10-Q") which stated, in relevant part, that the Company's "disclosure controls and procedures were not effective as of November 27, 2022, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]."

14.     On this news, Lifecore's stock price fell $1.03 per share, or 3.33%, to close at $29.86 per share on March 17, 2023.  Nonetheless, Lifecore reiterated in the Q2 2023 10-Q that the Company was implementing a remediation plan to address the foregoing material weaknesses.

15.     On April 10, 2023, Lifecore revealed in a filing with the SEC that the Company "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 26, 2023 (the 'Third Quarter Form 10-Q') in a timely manner due to a delay in obtaining and compiling information required to be included in its Third Quarter Form 10-Q, which delay could not be eliminated by the Company without unreasonable effort and expense."

16.     On June 2, 2023, Lifecore filed a Quarterly Report on Form 10-Q with the SEC for the fiscal quarter ended February 26, 2023 (the "Q3 2023 10-Q"), which stated, in relevant part, that the Company's "disclosure controls and procedures were not effective as of February 26, 2023, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]."  Nonetheless, Lifecore reiterated in the Q3 2023 10-Q again that the Company was implementing a remediation plan to address the foregoing material weaknesses.

17.     On August 14, 2023, Lifecore revealed in a filing with the SEC that the Company "could not complete the filing of its Annual Report on Form 10-K for the fiscal year ended May 28, 2023 (the '2023 Form 10-K') in a timely manner due to an unexpected delay in obtaining and compiling information required to be included in the 2023 Form 10-K, which delay could not be eliminated by the Company without unreasonable effort and

expense" and that "[t]he Company experienced unexpected delays in compiling and analyzing supporting documentation related to the accounting for certain recent non-routine corporate transactions occurring during the fourth quarter 2023, and thus will require additional time to complete the preparation and review processes in support of the 2023 Form 10-K."

18.     On this news, Lifecore's stock price fell $2.00 per share, or 4.87%, to close at $39.06 per share on August 15, 2023.

19.     On August 22, 2023, Lifecore issued a press release announcing that the Company received a notification letter from the Listing Qualifications Department of NASDAQ indicating that, "as a result of the Company's delay in filing its Annual Report on Form 10-K for the period ended May 28, 2023 [] with the [SEC], the Company [was] not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1)[.]"

20.     On this news, Lifecore's stock price fell $0.45 per share, or 5%, to close at $8.55 per share on August 23, 2023.

21.     On October 10, 2023, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended August 27, 2023 as Lifecore continued to finalize the compiling and analyzing of supporting documentation related to the accounting for certain non-routine corporate transactions occurring during the fourth quarter 2023 and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended May 28,

2023, "which delay could not be eliminated by the Company without unreasonable effort and expense."

22.     On this news, Lifecore's stock price fell $1.04 per share, or 3.58%, to close at $27.99 per share on October 11, 2023.

23.     On October 31, 2023, Lifecore revealed in a filing with the SEC that the Company's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 and May 30, 2021 and the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February 28, 2020, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 should no longer be relied upon. Specifically, Lifecore indicated that "[t]his determination resulted from the Company's identification of errors [. . .] related to certain adjustments [. . .] involving the calculation of capitalized interest, valuation of inventories, and certain adjustments related to previously divested businesses" and that the financial statements for the these periods would need to be restated.

24.     On January 10, 2024, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended November 26, 2023, as it continued to finalize the restatement of certain previously issued consolidated financial statements "and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended May 28, 2023 [] and of the Quarterly Report on Form 10-Q for the period ended August 27, 2023 [], which delay could not be eliminated by the Company without unreasonable effort and expense."

25.     On this news, Lifecore's stock price fell $0.75 per share, or 3.41%, to close at $21.19 per share on January 11, 2024.

26.     On January 12, 2024, Lifecore issued a press release announcing that the Company received a notification letter from the Listing Qualifications Department of NASDAQ indicating that "as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the fiscal quarter ended November 29, 2023 [] and its continued delay in filing its Annual Report on Form 10-K for the period ended May 28, 2023 [] and its Quarterly Report on Form 10-Q for the fiscal quarter ended August 27, 2023 [] with the [SEC]" the Company was not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1).

27.     On this news, Lifecore's stock price fell $0.11 per share, or 1.6%, to close at $6.76 per share on January 16, 2024.

28.     On February 16, 2024, Lifecore issued a press release announcing that the Company received a Staff Delisting Determination from the Listing Qualifications Department of NASDAQ "notifying the Company that [NASDAQ] has initiated a process which could result in the delisting of the Company's securities from [NASDAQ] as a result of the Company not being in compliance with Nasdaq Listing Rule 5250(c)(1)." Specifically, Lifecore stated that the Staff Determination was issued "because the Company has not filed its Annual Report on Form 10-K for the fiscal year ended May 28, 2023 [] or its Quarterly Reports on Form 10-Q for the quarterly periods ended August 27, 2023 [] and November 29, 2023 [] by the Extension Deadline."

9

29.     On this news, Lifecore's stock price fell $0.16 per share, or 1.95%, to close at $8.03 per share on February 20, 2024.  Nonetheless, Lifecore reiterated in the same press release that the Company intended to appeal the Staff Determination and was "working diligently to file the delinquent periodic reports as soon as possible to regain compliance with the Listing Rule."

30.     Finally, on March 20, 2024, Lifecore filed its Annual Report on Form 10-K for the fiscal year ended May 28, 2023 with the SEC (the "2023 10-K").  Specifically, the 2023 10-K revealed that, despite Lifecore's previous restatements and purported implementation of a remediation plan, the Company's Audit Committee had concluded that Lifecore's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 and May 30, 2021, the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February 28, 2021, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 (collectively, the "Prior Financial Statements"), should no longer be relied upon and that the Company needed to restate the Prior Financial Statements.  Further, the 2023 10-K stated that the determination resulted from the identification of errors in the Prior Financial Statements related to adjustments involving the calculation of capitalized interest, valuation of inventories, and certain other adjustments related to previously divested businesses reflected in the Prior Financial Statements.  In addition, the Company adjusted certain other items that were previously identified in the Prior Financial Statements and concluded as immaterial, individually and in the aggregate, to the Prior Financial Statements.

31.     On this news, Lifecore's stock price fell $2.18 per share, or 30.32%, to close at $5.01 per share on March 20, 2024.

32.     The issues concerning Lifecore's internal control over financial reporting persisted after the end of the Class Period.  On April 8, 2024, Lifecore revealed in a filing with the SEC that, as a result of the requirement to restate the Prior Financial Statements, it "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 25, 2024[,]" and on April 19, 2024, Lifecore issued a press release announcing that the Company had received a notice from NASDAQ stating that "the Nasdaq Hearings Panel would consider the delinquency in the filing of the Q3 Form 10-Q in rendering its determination regarding the Company's continued listing on Nasdaq Global Select Market."

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

34.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

35.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

36.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Lifecore is headquartered in

this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

37.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

38.    Plaintiff, as set forth in the attached Certification, acquired Lifecore securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

39.    Defendant Lifecore is a Delaware corporation with principal executive offices located at 3515 Lyman Blvd., Chaska, Minnesota, 55318.  Lifecore's common stock trades on the NASDAQ under the ticker symbol "LFCR".

40.    Defendant Albert D. Bolles ("Bolles") served as the Company's Chief Executive Officer ("CFO") from prior to the start of the Class Period until August 2022.

41.    Defendant James G. Hall ("Hall") served as the Company's CEO from August 2022 through the end of the Class Period.

42.    Defendant Brian McLaughlin ("McLaughlin") served as the Company's Chief Financial Officer ("CFO") from prior to the start of the Class Period until January 2021.

43.    Defendant John Morberg ("Morberg") has served as the Company's Chief Financial Officer since January 2021.

44.     Defendants Bolles, Hall, McLaughlin, and Morberg are sometimes referred to herein as the "Individual Defendants."

45.     The Individual Defendants possessed the power and authority to control the contents of Lifecore's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Lifecore's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Lifecore, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

46.     Lifecore and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

47.     Lifecore, together with its subsidiaries, operates as an integrated contract development and manufacturing organization in the U.S. and internationally.  The Company purportedly designs, develops, manufactures, and sells differentiated products for biomaterials markets, and license technology applications to partners.

48.     Lifecore's securities trade on the NASDAQ and, as such, the Company is required to comply with NASDAQ's "listing" rules, or the set of conditions which a

company must meet in order to list its securities on the exchange.  In relevant part, NASDAQ Listing Rule 5250(c)(1) requires Lifecore to timely file all required periodic financial reports with the SEC.  As a "non-accelerated filed"—i.e., a company that has a public float of less than $75 million as of the last business day of its most recently completed second fiscal quarter—Lifecore must file quarterly reports with the SEC no more than 45 days after fiscal quarter-end and annual reports no more than 90 days after fiscal year-end.

### Materially False and Misleading Statements Issued During the Class Period

49.    The Class Period began on October 7, 2020, when Lifecore filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the fiscal quarter ended August 30, 2020 (the "Q1 2021 10-Q").  With respect to the Company's controls and procedures, the Q1 2021 10-Q stated, in relevant part:

> As of August 30, 2020, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure***.[2]

---

[2] All emphases included herein are added unless otherwise indicated.

50.     Appended to the Q1 2021 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bolles and McLaughlin, attesting that "[t]he information contained in the [Q1 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

51.     On January 7, 2021, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the fiscal quarter ended November 29, 2020 (the "Q2 2021 10-Q").  With respect to controls and procedures, the Q2 2021 10-Q stated, in relevant part:

> As of November 29, 2020, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure***.

52.     Appended to the Q2 2021 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and McLaughlin, attesting that "[t]he information contained in the [Q2 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

53.     On April 8, 2021, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the fiscal quarter ended

February 28, 2021 (the "Q3 2021 10-Q").  With respect to controls and procedures, the Q3

2021 10-Q stated, in relevant part:

> As of February 28, 2021, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure***.

54.     Appended to the Q3 2021 10-Q as exhibits were signed certifications

pursuant to SOX by Defendants Bolles and McLaughlin, attesting that "[t]he information

contained in the [Q3 2021 10-Q] fairly presents, in all material respects, the financial

condition and results of operations of the Company."

55.     On July 29, 2021, Lifecore filed an Annual Report on Form 10-K with the

SEC, reporting the Company's financial and operational results for the fiscal year ended

May 30, 2021 (the "2021 10-K").  The 2021 10-K stated, in relevant part:

> As of May 30, 2021, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that our disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Securities Exchange Act of 1934, as amended, is recorded, processed, summarized and reported within the time periods specified by the Securities and Exchange Commission, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's***

16

*management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.*

***Management's Report on Internal Control over Financial Reporting***

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities Exchange Act of 1934, as amended). In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in *Internal Control - Integrated Framework (2013 Framework)*. ***Our management has concluded that we maintained effective internal control over financial reporting as of May 30, 2021***.

56.     Appended to the 2021 10-K as exhibits were signed certifications pursuant to SOX by Defendants Bolles and Morberg, attesting that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

57.     On October 5, 2021, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended August 29, 2021 (the "Q1 2022 10-Q").  With respect to the Company's controls and procedures, the Q1 2022 10-Q stated, in relevant part:

As of August 29, 2021, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief***

*Financial Officer, as appropriate to allow timely decisions regarding required disclosure.*

58.     Appended to the Q1 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and Morberg, attesting that "[t]he information contained in the [Q1 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

59.     On January 7, 2022, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the fiscal quarter ended November 28, 2021 (the "Q2 2022 10-Q").  With respect to the Company's controls and procedures, the Q2 2022 10-Q stated, in relevant part:

> As of November 28, 2021, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.***

60.     Appended to the Q2 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and Morberg, attesting that "[t]he information contained in the [Q2 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

61.     On April 7, 2022, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the fiscal quarter ended February 27, 2022 (the "Q3 2022 10-Q").  With respect to the Company's controls and procedures, the Q3 2022 10-Q stated, in relevant part:

> As of February 27, 2022, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure***.

62.     Appended to the Q3 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and Morberg, attesting that "[t]he information contained in the [Q3 2022 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

63.     The statements referenced in ¶¶ 49-62 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lifecore maintained deficient internal controls over financial reporting; (ii) as a result, the Company issued several financial statements that were inaccurate and would need to be restated; (iii) Lifecore's purported remediation efforts with respect to the

foregoing deficiencies were ineffective; (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (v) accordingly, the Company's financial position and/or prospects were materially overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

64.     On September 14, 2022, Lifecore filed its 2022 10-K with the SEC which revealed, in relevant part, that:

> Management assessed the effectiveness of our internal control over financial reporting as of May 29, 2022. In making this assessment, which was conducted under the supervision and with the participation of management, including our Chief Executive Officer and Chief Financial Officer, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control – Integrated Framework (2013). *As part of our annual assessment, management has concluded that we did not design and operate effective internal controls over the completeness and accuracy of the accounting for non-standard transactions, that would include discontinued operations and restructuring activity. Specifically, we did not design controls for non-standard transactions to ensure the accurate presentation of non-standard transactions, which would include discontinued operations and certain restructuring costs in our financial statements. This resulted in a material error in our interim financial information as presented in and filed with our Quarterly Report on Form 10-Q for our fiscal third quarter ended February 27, 2022. As a result, we have restated the impacted financial information and corrected these errors in Note 1 to our consolidated financial statements included in Part IV, Item 15 of this Annual Report on Form 10-K*.

Yet, after purportedly implementing the foregoing remediation plan and restating its previously issued financial statements, the Company's subsequent financial statements were continually riddled with errors.  Lifecore's securities nonetheless continued to trade

at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

65.     For example, in response to the foregoing material weaknesses, the 2022 10-K stated, in relevant part:

> In response to the material weakness described above, with the oversight of the Audit Committee of our Board of Directors, management has corrected the error in its interim financial statements. Management is currently evaluating remediation activities related to our non-standard transaction processes that will include, but are not limited to the following (i) enhancing and developing a more comprehensive review process and monitoring controls related to non-standard transactions and (ii) continuing to provide training and development to our accounting team related to non-standard transactions, including discontinued operations and restructuring activity.

> The remediation efforts are intended to both address the identified material weakness and to enhance our overall financial control environment and will be subject to ongoing senior management review, as well as Audit Committee oversight. We plan to complete this remediation process as quickly as possible. Management is committed to continuous improvement of our internal control over financial reporting and will continue to diligently review our internal control over financial reporting.

66.     Further, appended to the 2022 10-K as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg, attesting that "[t]he information contained in the [2022 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company.

67.     The statements referenced in ¶¶ 65-66 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.

Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lifecore maintained deficient internal controls over financial reporting; (ii) as a result, the Company issued several financial statements that were inaccurate and would need to be restated; (iii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective; (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (v) accordingly, the Company's financial position and/or prospects were materially overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

68.     On October 7, 2022, Lifecore filed its Q1 2023 10-Q, which stated that the Company's "disclosure controls and procedures were not effective as of August 28, 2022, due to the material weakness in internal control over financial reporting that was disclosed in the [2022 10-K]."

69.     On this news, Lifecore's stock price fell $0.19 per share, or 2.31%, to close at $8.05 per share on October 10, 2022.  Lifecore's securities nonetheless continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

70.     For example, in response to the foregoing material weaknesses, the Q1 2023 10-Q stated, in relevant part:

> ***In response to the material weakness referred to above, with the oversight of the Audit Committee of our Board of Directors, during the three months ended August 28, 2022 we began implementing a remediation***

*plan to address the material weaknesses mentioned above*. The material weaknesses will not be considered remediated until the applicable controls operate for a sufficient period of time and management has concluded, through testing, that these controls are operating effectively.

71.     Further, appended to the Q1 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg, attesting that "[t]he information contained in the [Q1 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

72.     The statements referenced in ¶¶ 70-71 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lifecore maintained deficient internal controls over financial reporting; (ii) as a result, the Company issued several financial statements that were inaccurate and would need to be restated; (iii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective; (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (v) accordingly, the Company's financial position and/or prospects were materially overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

73.     On January 9, 2023, Lifecore revealed in an SEC filing, in relevant part, that:

Lifecore [. . .] is unable to file, without unreasonable effort and expense, its Quarterly Report on Form 10-Q for the period ended November 27, 2022 (the "Second Quarter Form 10-Q") in a timely manner. The Company experienced an unexpected delay in finalizing the financial statements

relating to the assessment of certain asset impairments and subsequent events in the Second Quarter Form 10-Q. Specifically, with respect to its asset impairments, management is assessing its treatment of certain non-cash impairment charges related to the Company's Curation Foods business contained in its financial statements to be included in the Second Quarter Form 10-Q and its previously issued financial statements covering the Company's fiscal year ended May 29, 2022 and the fiscal quarter ended August 28, 2022. The Company intends to evaluate the effect of the foregoing charges on the Company's prior period financial information and on the related internal control over financial reporting, but such evaluation has not yet been completed. Until this evaluation is completed, the Company will not be able to complete the financial statements to be included in the Second Quarter Form 10-Q and will not be in a position to complete and file the Second Quarter Form 10-Q. The Company will file the Second Quarter Form 10-Q as soon as practical.

74.     Then, on January 11, 2023, Lifecore issued a press release announcing that the Company received a notification letter from the Listing Qualifications Department of NASDAQ indicating that, "as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the period ended November 27, 2022 [] with the [SEC], the Company [was] not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1)[.]"

75.      On this news, Lifecore's stock price fell $0.12 per share, or 1.65%, to close at $7.14 per share on January 12, 2023.

76.     After having already once restated its previously issued financial statements, the Company's financial statements continued to be riddled with errors.  For example, on February 1, 2023, Lifecore revealed in a filing with the SEC that "the Company's previously issued (i) consolidated financial statements as of and for the year ended May 29, 2022 and (ii) unaudited consolidated financial statements as of and for the three months ended August 28, 2022" should no longer be relied upon.  Specifically, Lifecore indicated

that "[t]his determination resulted from the identification of errors [. . .] identified by the Company related to certain non-cash impairment charges" related to a particular segment of the Company and that the financial statements for these periods would need to be restated.

77.     On this news, Lifecore's stock price fell $0.11 per share, or 1.75%, to close at $6.17 per share on February 2, 2023.

78.     Then, on March 16, 2023, Lifecore filed its Q2 2023 10-Q which stated, in relevant part, that the Company's "disclosure controls and procedures were not effective as of November 27, 2022, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]."

79.     On this news, Lifecore's stock price fell $1.03 per share, or 3.33%, to close at $29.86 per share on March 17, 2023.  Lifecore's securities nonetheless continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

80.     For example, in response to the foregoing material weakness, the Q2 2023 10-Q stated, in relevant part:

> In response to the material weaknesses described above, with the oversight of the Audit Committee of our Board of Directors, management has corrected the errors in its annual and interim financial statements. Management is currently evaluating remediation activities related to our processes for assessing recoverability and measurement of fair value of certain indefinite-lived and long-lived assets that will include, but are not limited to the following (i) developing a more comprehensive review over the periodic assessment of recoverability of indefinite-lived and long-lived assets; and (ii) enhancing and developing a more comprehensive review

process and monitoring controls related to the measurement of fair values of indefinite-lived and long-lived assets. In addition, management is currently evaluating remediation activities related to our non-standard transaction processes that will include, but are not limited to the following (i) enhancing and developing a more comprehensive review process and monitoring controls related to non-standard transactions; and (ii) continuing to provide training and development to our accounting team related to non-standard transactions, including discontinued operations and restructuring activity.

The remediation efforts, which are ongoing, are intended to both address the identified material weaknesses and to enhance our overall financial control environment and will be subject to ongoing senior management review, as well as Audit Committee oversight. We plan to complete this remediation process as quickly as possible. Management is committed to continuous improvement of our internal control over financial reporting and will continue to diligently review our internal control over financial reporting.

81.     Further, appended to the Q2 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg, attesting that "[t]he information contained in the [Q2 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company.

82.     The statements referenced in ¶¶ 80-81 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lifecore maintained deficient internal controls over financial reporting; (ii) as a result, the Company issued several financial statements that were inaccurate and would need to be restated; (iii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective; (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing

requirements; (v) accordingly, the Company's financial position and/or prospects were materially overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

83.     On April 10, 2023, Lifecore revealed in a filing with the SEC that the Company "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 26, 2023 (the 'Third Quarter Form 10-Q') in a timely manner due to a delay in obtaining and compiling information required to be included in its Third Quarter Form 10-Q, which delay could not be eliminated by the Company without unreasonable effort and expense."

84.     Then, on June 2, 2023, Lifecore filed its Q3 2023 10-Q, which stated, in relevant part, that the Company's "disclosure controls and procedures were not effective as of February 26, 2023, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]."   Lifecore's securities nonetheless continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

85.     For example, in response to the foregoing material weakness, the Q3 2023 10-Q contained a substantively similar description of the Company's purported remediation efforts as discussed, *supra*, in ¶ 80, and appended to the Q3 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg, attesting that "[t]he information contained in the [Q3 2023 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company.

86.   The statements referenced in ¶ 85 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lifecore maintained deficient internal controls over financial reporting; (ii) as a result, the Company issued several financial statements that were inaccurate and would need to be restated; (iii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective; (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (v) accordingly, the Company's financial position and/or prospects were materially overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

87.   On August 14, 2023, Lifecore disclosed that it "could not complete the filing of its [2023 Form 10-K] in a timely manner due to an unexpected delay in obtaining and compiling information required to be included in the 2023 Form 10-K, which delay could not be eliminated by the Company without unreasonable effort and expense" and that "[t]he Company experienced unexpected delays in compiling and analyzing supporting documentation related to the accounting for certain recent non-routine corporate transactions occurring during the fourth quarter 2023, and thus will require additional time to complete the preparation and review processes" in support of the 2023 Form 10-K.

88.   On this news, Lifecore's stock price fell $2.00 per share, or 4.87%, to close at $39.06 per share on August 15, 2023.

28

89.     Then, on August 22, 2023, Lifecore issued a press release announcing that the Company received a notification letter from the Listing Qualifications Department of NASDAQ stating that "the Company [was] not in compliance with Nasdaq Listing Rule 5250(c)(1) [] because the Company failed to timely file its Annual Report on Form 10-K for the period ended May 28, 2023 [] with the [SEC]."

90.     On this news, Lifecore's stock price fell $0.45 per share, or 5%, to close at $8.55 per share on August 23, 2023.

91.     Then, on October 10, 2023, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended August 27, 2023 as Lifecore continued to finalize the compiling and analyzing of supporting documentation related to the accounting for certain non-routine corporate transactions occurring during the fourth quarter 2023 and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended May 28, 2023, "which delay could not be eliminated by the Company without unreasonable effort and expense."

92.     On this news, Lifecore's stock price fell $1.04 per share, or 3.58%, to close at $27.99 per share on October 11, 2023.

93.     Then, after having already *twice* restated its previously issued financial statements, the Company's financial statements continued to be riddled with errors.  For example, on October 31, 2023, Lifecore revealed in a filing with the SEC, in relevant part, that:

On October 30, 2023, the Audit Committee (the "Audit Committee") of the Board of Directors of Lifecore Biomedical, Inc. (the "Company"), after discussion with management, concluded that the Company's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 ("FY22") and May 30, 2021 ("FY21") included in the Company's Annual Report on Form 10-K/A filed with the Securities and Exchange Commission (the "SEC"), the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February 28, 2020, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 included in the Company's Quarterly Reports on Form 10-Q filed with the SEC and the Company's press release announcing its consolidated results as of and for the fourth quarter and fiscal year ended May 28, 2023 ("FY23") and furnished on Form 8-K with the SEC on August 31, 2023 (the "Earnings Release") (collectively, the "Non-Reliance Periods"), should no longer be relied upon.

This determination resulted from the Company's identification of errors in the Non-Reliance Periods related to certain adjustments as more particularly described below, involving the calculation of capitalized interest, valuation of inventories, and certain adjustments related to previously divested businesses contained in the Non-Reliance Periods. In addition, the Company expects to correct certain items that were previously identified and concluded as immaterial, individually and in the aggregate, to the financial statements for the Non-Reliance Periods.

The Company has assessed the materiality of these errors in accordance with the U.S. Securities and Exchange Commission Staff Accounting Bulletin No. 99 ("SAB"), Materiality and SAB No. 108, Quantifying Financial Statement Misstatements, and has concluded that the prior financial statements referenced above should be restated.

94. On January 10, 2024, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended November 26, 2023, as it continued to finalize the restatement of certain previously issued consolidated financial statements "and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended May 28, 2023 [] and

of the Quarterly Report on Form 10-Q for the period ended August 27, 2023 [], which delay could not be eliminated by the Company without unreasonable effort and expense."

95.    On this news, Lifecore's stock price fell $0.75 per share, or 3.41%, to close at $21.19 per share on January 11, 2024.

96.    On January 12, 2024, Lifecore issued a press release announcing that the Company received a notification letter from the Listing Qualifications Department of NASDAQ indicating that "as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the fiscal quarter ended November 29, 2023 [] and its continued delay in filing its Annual Report on Form 10-K for the period ended May 28, 2023 [] and its Quarterly Report on Form 10-Q for the fiscal quarter ended August 27, 2023 [] with the [SEC]" the Company was not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1).

97.    On this news, Lifecore's stock price fell $0.11 per share, or 1.6%, to close at $6.76 per share on January 16, 2024.

98.    On February 16, 2024, Lifecore issued a press release announcing that the Company received a Staff Delisting Determination from the Listing Qualifications Department of NASDAQ "notifying the Company that NASDAQ has initiated a process which could result in the delisting of the Company's securities from NASDAQ as a result of the Company not being in compliance with Nasdaq Listing Rule 5250(c)(1)." Specifically, Lifecore stated that the Staff Determination was issued "because the Company has not filed its Annual Report on Form 10-K for the fiscal year ended May 28,

2023 [] or its Quarterly Reports on Form 10-Q for the quarterly periods ended August 27, 2023 [] and November 29, 2023 [] by the Extension Deadline."

99.     On this news, Lifecore's stock price fell $0.16 per share, or 1.95%, to close at $8.03 per share on February 20, 2024.  Lifecore's securities nonetheless continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

100.    For example, in the same press release, Lifecore stated, in relevant part, that the Company intended to appeal the Staff Determination and that "*[t]he Company is working diligently to file the delinquent periodic reports as soon as possible to regain compliance with the Listing Rule*."

101.    The statements referenced in ¶ 100 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lifecore maintained deficient internal controls over financial reporting; (ii) as a result, the Company issued several financial statements that were inaccurate and would need to be restated; (iii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective; (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (v) accordingly, the Company's financial position and/or prospects were

materially overstated; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Fully Emerges**

102.   Finally, on March 20, 2024, Lifecore filed its 2023 10-K, stating, in relevant part:

> Management assessed the effectiveness of our internal control over financial reporting as of May 28, 2023. In making this assessment, which was conducted under the supervision and with the participation of management, including our Chief Executive Officer and Chief Financial Officer, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control – Integrated Framework (2013). As part of our annual assessment, management has concluded that we did not design and operate effective internal controls, as detailed below.

> The Company has identified deficiencies in the internal control over financial reporting that aggregated to material weaknesses in the following components of the COSO framework:

> a.  Control Environment – maintaining a sufficient complement of personnel to timely support the Company's internal control objectives and ensuring personnel conduct internal control related responsibilities;

> b.  Risk Assessment - identification and assessment of risks and changes in the business model resulting from recent disposition activities that impacted the design of control activities, including the precision of management review controls, and the completeness of controls required to support the financial reporting framework;

> c.  Information and Communication - Design of controls to validate the completeness and accuracy of information used in the performance of control activities; and

> d.  Monitoring – As a result of the material weaknesses described above, the Company failed to design and implement certain monitoring activities that were responsive to timely identification and remediation of control deficiencies.

As a result of the material weaknesses in the COSO components identified above, the control activities were ineffective and represent a material weakness. Additionally, material errors in the Company's financial statements were identified, primarily relating to the areas of inventory valuation, the capitalization of interest on assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and the write off of other receivables of the Company's former Curation Foods businesses that were not collectible prior to the fiscal year periods presented in the consolidated financial statements.

The material weaknesses contributed to the restatement of the Company's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 and May 30, 2021, and the condensed consolidated financial statements for the interim periods ended August 30, 2020, November 29, 2020, February 28, 2021, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023.

The material weaknesses previously identified related to the accounting for and classification of certain non-standard transactions, which included discontinued operations, restructuring costs, and indefinite-lived and long-lived asset impairment tests for the year ended May 29, 2022 continued to exist as of May 28, 2023 and are included and appropriately reside within the material weaknesses relating to components of the COSO framework as described above.

103.    On this news, Lifecore's stock price fell $2.18 per share, or 30.32%, to close at $5.01 per share on March 20, 2024.

104.    The issues concerning Lifecore's internal control over financial reporting persisted after the end of the Class Period.  On April 8, 2024, Lifecore revealed in a filing with the SEC that, as a result of the requirement to restate the Prior Financial Statements, it "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 25, 2024[,]" and on April 19, 2024, Lifecore issued a press release announcing that the Company had received a notice from NASDAQ stating that "the Nasdaq Hearings

Panel would consider the delinquency in the filing of the Q3 Form 10-Q in rendering its determination regarding the Company's continued listing on Nasdaq Global Select Market."

105.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

106.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

107.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

108.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Lifecore securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Lifecore or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

109.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

110.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

111.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lifecore;

- whether the Individual Defendants caused Lifecore to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lifecore securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

112. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

113. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lifecore securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Lifecore securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

114.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

115.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

116.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

117.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

118.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lifecore securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Lifecore securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

119.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lifecore securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lifecore's finances and business prospects.

120.    By virtue of their positions at Lifecore, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to

Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

121.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Lifecore, the Individual Defendants had knowledge of the details of Lifecore's internal affairs.

122.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Lifecore.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lifecore's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Lifecore securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Lifecore's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lifecore securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

123.    During the Class Period, Lifecore securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lifecore securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lifecore securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Lifecore securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

124.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

125.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

126.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

127.    During the Class Period, the Individual Defendants participated in the operation and management of Lifecore, and conducted and participated, directly and indirectly, in the conduct of Lifecore's business affairs.  Because of their senior positions, they knew the adverse non-public information about Lifecore's misstatement of income and expenses and false financial statements.

128.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lifecore's financial condition and results of operations, and to correct promptly any public statements issued by Lifecore which had become materially false or misleading.

129.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lifecore disseminated in the marketplace during the Class Period concerning Lifecore's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lifecore to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Lifecore within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lifecore securities.

130.    Each of the Individual Defendants, therefore, acted as a controlling person of Lifecore.  By reason of their senior management positions and/or being directors of Lifecore, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lifecore to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Lifecore and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

131.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lifecore.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  July 29, 2024          Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN PLLP

<u>s/Robert K. Shelquist</u>
Robert K. Shelquist (#021310X)
Gregg M. Fishbein (#0202009)
Rebecca A. Peterson (#0392663)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel:  (612) 339-6900
rkshelquist@locklaw.com
gmfishbein@locklaw.com
rapeterson@locklaw.com

POMERANTZ LLP
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Tel:  (212) 661-1100
Fax:  (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*