# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID CAREW, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFECORE BIOMEDICAL, INC., ALBERT D. BOLLES, JAMES G. HALL, BRIAN MCLAUGHLIN, and JOHN MORBERG,<br><br>Defendants. | **Case No. 0:24-cv-03028 (LMP/JFD)**<br><br>**CLASS ACTION**<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Co-lead plaintiffs David Carew ("Mr. Carew") and Hugh Robert Holmes ("Mr. Holmes" and, collectively with Mr. Carew, "Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' amended complaint against Defendants, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lifecore Biomedical, Inc. ("Lifecore" or the "Company") f/k/a Landec Corporation [1] ("Landec"), analysts' reports and advisories about the Company, and

---

[1] Lifecore was formerly known as Landec Corporation and changed its name to Lifecore Biomedical, Inc. in November 2022.

information readily obtainable on the Internet. Plaintiffs believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Lifecore securities between October 7, 2020, and March 19, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Lifecore, formerly Landec, was a diversified health and wellness company with two operating segments: Curation Foods and Lifecore Biomedical. Curation Foods is the company's lower margin legacy business. Lifecore Biomedical is the higher margin Contract Development and Manufacturing Organization ("CDMO") business that offers highly differentiated capabilities in the development, fill and finish of sterile, injectable pharmaceutical products in syringes and vials. It is involved in the manufacture of pharmaceutical-grade sodium hyaluronate in bulk form as well as formulated and filled syringes and vials for injectable products used in treating a broad spectrum of medical conditions and procedures.

3.     Between 2020 and 2023, Lifecore transitioned away from its Curation Foods business to fully focus on its Lifecore Biomedical business by, among other things,

divesting of the companies which made up its Curation Foods segment and renaming and rebranding itself as Lifecore.

4.     When businesses meet the criteria to be accounted as discontinued operations, their assets, liabilities, operating results, and cash flows are presented separately. When current financial statements include comparative financial statements – *i.e.*, financial statements for the same period in the prior year – accounting standards for discontinued operations require companies to retrospectively adjust prior periods' financial statements to present the discontinued operations separately from continued operations to match how they are presented in the financial statements for the current period.

5.     Lifecore restated its financial statements three times: in September 2022, March 2023, and March 2024. Altogether, the Company restated financial statements for fiscal 2021 through fiscal 2023 and all the interim financial statements. As discussed below, some financial statements were restated more than once and some restatements involved corrections to the financial statements previously presented only in the earnings releases – *e.g.*, 2022 and 2023 annual earnings releases filed with the SEC via Form 10-Ks. The restatements included corrections of misstatements related to accounting for Lifecore's disposition and restructuring activities as well as improper accounting for its continuing operations. By restating their prior financial statements, the Company acknowledged the misstatements were material to the financial statements.

6.     Throughout the Class Period, Defendants made several materially false and misleading statements regarding the Company's business, operations, and prospects.

3

Specifically, Defendants misrepresented and/or failed to disclose that: (i) Lifecore recklessly maintained deficient internal controls over financial reporting; (ii) as a result of the deficient internal controls, the Company issued numerous financial statements that materially misstated the Company's revenue, profits, and operating losses; (iii) Lifecore's purported remediation efforts with respect to the internal control deficiencies were ineffective; and (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements.

7.    Starting in September 2022, Lifecore started to come clean to investors about various issues concerning the internal controls over its financial reporting.  On September 14, 2022, in the first of what would ultimately be a series of ***sixteen such disclosures over the next year and a half***, Lifecore revealed in its annual report for the fiscal year ended May 29, 2022 (the "2022 10-K") that, due to a previously undisclosed material weakness in the Company's internal control over financial reporting, "our disclosure controls and procedures were not effective as of May 29, 2022[,]" and that the Company was restating several previously issued financial statements and earnings releases ("Restatement No. 1").  Lifecore assured investors that the Company was undertaking efforts to address the material weaknesses and restate the financial statements in a timely manner.

8.    Then, on October 7, 2022, Lifecore revealed in a quarterly report for the quarter ended August 28, 2022 (the "Q1 2023 10-Q") that the Company's disclosure controls and procedures were still not effective due to the material weakness in internal control over financial reporting that was disclosed in the 2022 10-K.

4

9.     On this news, Lifecore's stock price fell $0.19 per share, or 2.31%, to close at $8.05 per share on October 10, 2022.  Lifecore reiterated in the Q1 2023 10-Q that the Company was implementing a remediation plan to address the material weaknesses.

10.     On January 9, 2023, Lifecore revealed in an SEC filing that the Company was unable to file its quarterly report for the period ended November 27, 2022 (the 'Second Quarter Form 10-Q') in a timely manner because "[t]he Company experienced an unexpected delay in finalizing the financial statements relating to the assessment of certain asset impairments and subsequent events in the Second Quarter Form 10-Q."

11.     On January 11, 2023, Lifecore issued a press release announcing the Company had received a notification letter from NASDAQ indicating that Lifecore was not in compliance with NASDAQ's continued listing requirements.

12.     On this news, Lifecore's stock price fell $0.12 per share, or 1.65%, to close at $7.14 per share on January 12, 2023.

13.     Next, on February 1, 2023, Lifecore revealed in a filing with the SEC that "the Company's previously issued (i) consolidated financial statements as of and for the year ended May 29, 2022 and (ii) unaudited consolidated financial statements as of and for the three months ended August 28, 2022" ***should no longer be relied upon***.  Specifically, Lifecore indicated that "[t]his determination resulted from the identification of errors [. . .] identified by the Company related to certain non-cash impairment charges" related to the Company's Curation Foods business and that the financial statements for these periods would need to be restated.

14.     On this news, Lifecore's stock price fell $0.11 per share, or 1.75%, to close at $6.17 per share on February 2, 2023.

15.     On March 16, 2023, Lifecore filed another Quarterly Report on Form 10-Q with the SEC for the fiscal quarter ended November 27, 2022 (the "Q2 2023 10-Q") which stated, in relevant part, that the Company's "disclosure controls and procedures were not effective as of November 27, 2022, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]."

16.     That same day, Lifecore filed an amended Annual Report on Form 10-K/A for the fiscal year ended May 29, 2022 (the "2022 10-K/A") and an amended Quarterly Report on Form 10-Q/A for the fiscal quarter ended August 28, 2022 (the "Q1 2023 10-Q/A" and, collectively with the 2022 10-K/A, "Restatement No. 2").

17.     The 2022 10-K/A revealed that the impairment charges recorded as part of the restatement pertained to property and equipment and intangible assets related to Lifecore's subsidiary, Yucatan Foods, LLC ("Yucatan Foods").

18.     On this news, Lifecore's stock price fell $3.44 per share, or 67.32%, to close at $1.67 per share on March 17, 2023. Nonetheless, Lifecore reiterated in the Q2 2023 10-Q that the Company was implementing a remediation plan to address the foregoing material weaknesses.

19.     Then, on April 10, 2023, Lifecore revealed in a filing with the SEC that the Company again "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 26, 2023 (the 'Third Quarter Form 10-Q') in a timely manner

due to a delay in obtaining and compiling information required to be included in its Third Quarter Form 10-Q[.]"

20.     On June 2, 2023, Lifecore filed its Quarterly Report on Form 10-Q with the SEC for the fiscal quarter ended February 26, 2023 (the "Q3 2023 10-Q"), which again stated that the Company's "disclosure controls and procedures were not effective as of February 26, 2023, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]." Nonetheless, Lifecore similarly reiterated in the Q3 2023 10-Q that the Company was implementing a remediation plan to address the foregoing material weaknesses.

21.     On August 14, 2023, Lifecore revealed in a filing with the SEC that the Company "could not complete the filing of its Annual Report on Form 10-K for the fiscal year ended May 28, 2023 (the '2023 Form 10-K') in a timely manner due to an unexpected delay in obtaining and compiling information required to be included in the 2023 Form 10-K" and that "[t]he Company experienced unexpected delays in compiling and analyzing supporting documentation related to the accounting for certain recent non- routine corporate transactions occurring during the fourth quarter 2023, and thus will require additional time to complete the preparation and review processes in support of the 2023 Form 10-K."

22.     On this news, Lifecore's stock price fell $0.41 per share, or 4.1%, to close at $9.58 per share on August 15, 2023.

23.     Then, on August 22, 2023, Lifecore issued a press release announcing that the Company received a second notification letter from the Listing Qualifications

Department of NASDAQ indicating that, "as a result of the Company's delay in filing its Annual Report on Form 10-K for the period ended May 28, 2023 [] with the [SEC], the Company [was] not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1)[.]"

24.    On this news, Lifecore's stock price fell $0.45 per share, or 5%, to close at $8.55 per share on August 23, 2023.

25.    On October 10, 2023, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended August 27, 2023 as Lifecore continued to finalize the compiling and analyzing of supporting documentation related to the accounting for certain non-routine corporate transactions occurring during the fourth quarter 2023 and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended May 28, 2023.

26.    On this news, Lifecore's stock price fell $0.07 per share, or 0.96%, to close at $7.22 per share on October 11, 2023.

27.    Next, on October 31, 2023, Lifecore revealed in a filing with the SEC that the Company's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 and May 30, 2021 and the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February 28, 2020, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 **should no longer be relied upon**. Specifically, Lifecore indicated that "[t]his determination resulted from the Company's

identification of errors [. . .] related to certain adjustments [. . .] involving the calculation of capitalized interest, valuation of inventories, and certain adjustments related to previously divested businesses" and that the financial statements for these periods would need to be restated.

28.     On January 10, 2024, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended November 26, 2023, as it continued to finalize the restatement of certain previously issued consolidated financial statements "and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended May 28, 2023 [] and of the Quarterly Report on Form 10-Q for the period ended August 27, 2023[.]"

29.     On this news, Lifecore's stock price fell $0.28 per share, or 3.98%, to close at $6.75 per share on January 11, 2024.

30.     On January 12, 2024, Lifecore issued a press release announcing that the Company received a third notification letter from the Listing Qualifications Department of NASDAQ indicating that "as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the fiscal quarter ended November 29, 2023 [] and its continued delay in filing its Annual Report on Form 10-K for the period ended May 28, 2023 [] and its Quarterly Report on Form 10-Q for the fiscal quarter ended August 27, 2023 [] with the [SEC]" the Company was not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1).

31.     On this news, Lifecore's stock price fell $0.11 per share, or 1.6%, to close at $6.76 per share on January 16, 2024.

32.    Next, on February 16, 2024, after three notification letters from NASDAQ, Lifecore issued a press release announcing that the Company received a Staff Delisting Determination from the Listing Qualifications Department of NASDAQ "notifying the Company that [NASDAQ] has initiated a process which could result in the delisting of the Company's securities from [NASDAQ] as a result of the Company not being in compliance with Nasdaq Listing Rule 5250(c)(1)." Specifically, Lifecore stated that the Staff Determination was issued "because the Company has not filed its Annual Report on Form 10-K for the fiscal year ended May 28, 2023 [] or its Quarterly Reports on Form 10-Q for the quarterly periods ended August 27, 2023 [] and November 29, 2023 [] by the Extension Deadline."

33.    On this news, Lifecore's stock price fell $0.16 per share, or 1.95%, to close at $8.03 per share on February 20, 2024. Nevertheless, Lifecore assured investors in the same press release that the Company intended to appeal the Staff Determination and was "working diligently to file the delinquent periodic reports as soon as possible to regain compliance with the Listing Rule."

34.    Finally, on March 20, 2024, Lifecore filed its Annual Report on Form 10-K for the fiscal year ended May 28, 2023 with the SEC (the "2023 10-K"). Specifically, the 2023 10-K revealed that, despite Lifecore's previous restatements and purported implementation of a remediation plan, the Company's Audit Committee had concluded that Lifecore's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 and May 30, 2021, the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February

28, 2021, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 (collectively, the "Prior Financial Statements"), ***should no longer be relied upon*** and that the Company needed to restate the Prior Financial Statements ("Restatement No. 3"). Further, the 2023 10-K stated that the determination resulted from the identification of errors in the Prior Financial Statements related to adjustments involving the calculation of capitalized interest, valuation of inventories, and certain other adjustments related to previously divested businesses reflected in the Prior Financial Statements.

35.    On this news, Lifecore's stock price plummeted $2.18 per share, or 30.32%, to close at $5.01 per share on March 20, 2024.

36.    Thereafter, the issues concerning Lifecore's internal control over financial reporting persisted after the end of the Class Period. On April 8, 2024, Lifecore revealed in a filing with the SEC that, as a result of the requirement to restate the Prior Financial Statements, it "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 25, 2024[.]" Then, on April 19, 2024, Lifecore issued a press release announcing that the Company had received a fourth notice from NASDAQ stating that "the Nasdaq Hearings Panel would consider the delinquency in the filing of the Q3 Form 10-Q in rendering its determination regarding the Company's continued listing on Nasdaq Global Select Market."

37.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members suffered significant losses and damages.

**JURISDICTION AND VENUE**

38.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

39.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

40.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Lifecore is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

41.    In connection with the acts alleged in this amended complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

42.    Plaintiffs, as set forth in their previously filed certifications (Dkt. Nos. 20-1, 25-2), acquired Lifecore securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

43.    Defendant Lifecore is a Delaware corporation with principal executive offices located at 3515 Lyman Blvd., Chaska, Minnesota, 55318. Lifecore's common stock trades on the NASDAQ under the ticker symbol "LFCR".

44.    Defendant Albert D. Bolles ("Bolles") served as the Company's Chief Executive Officer ("CEO") from prior to the start of the Class Period until August 2022.

45.    Defendant James G. Hall ("Hall") served as the Company's CEO from August 2022 through the end of the Class Period.

46.    Defendant Brian McLaughlin ("McLaughlin") served as the Company's Chief Financial Officer ("CFO") from prior to the start of the Class Period until January 2021.

47.    Defendant John Morberg ("Morberg") served as the Company's Chief Financial Officer since January 2021.

48.    Defendants Bolles, Hall, McLaughlin, and Morberg are sometimes referred to herein as the "Individual Defendants."

49.    The Individual Defendants possessed the power and authority to control the contents of Lifecore's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Lifecore's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Lifecore, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

50.     Lifecore and the Individual Defendants are collectively referred to herein as "Defendants."

## RELEVANT ACCOUNTING STANDARDS

51.     Generally Accepted Accounting Principles ("GAAP") constitute those standards recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time, and are the common set of accounting principles, standards, and procedures that companies in the United States use to prepare their financial statements.

52.     The SEC has the statutory authority for the promulgation of GAAP for public companies and has delegated that authority to the Financial Accounting Standards Board ("FASB").  The SEC Rules and interpretive releases and the FASB Accounting Standards Codification ("ASC") represent sources of authoritative GAAP for SEC registrants. ASC 105-10-05-1. Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate despite footnote or other disclosures, unless the Commission has otherwise provided.  SEC rules and regulations require that publicly traded companies such as Lifecore include financial statements that comply with GAAP in their annual and quarterly reports filed with the SEC. *See* Sections 12 and 13 of the Exchange Act; Rule 10-01(d) of SEC Regulation S-X.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

**Restatements and Materiality**

53.    GAAP requires any error in the financial statements of a prior period discovered after the financial statements are issued to be reported as an error correction by restating the prior-period financial statements and providing description of the nature of the error and its effect on the financial statements. ASC 250-10-45-23 and ASC 250-10-50-7.

54.    ASC 250 distinguishes errors from accounting changes and defines an error as "an error in recognition, measurement, presentation, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of generally accepted accounting principles (GAAP), or oversight or misuse of facts that existed at the time the financial statements were prepared. A change from an accounting principle that is not generally accepted to one that is generally accepted is a correction of an error." ASC 250-10-20 – Glossary.

55.    ASC 250 further requires disclosure that "previously issued financial statements have been restated, along with a description of the nature of the error", including "the effect of the correction on each financial statement line item… for each prior period presented" and "the cumulative effect of the change on retained earnings …as of the beginning of the earliest period presented." ASC 250-10-50-7.

56.    The SEC Staff Accounting Bulletins No. 99, Materiality, and No. 108, Quantifying Financial Statement Misstatements, ("SAB 99" and "SAB 108") are the primary source of guidance in assessing materiality of financial statement misstatements.

Because GAAP does not apply to immaterial items (ASC 105-10-05-6), a restatement is required only for items deemed to be material.

### Lifecore Violated the Following Accounting Principles Which Caused Multiple Restatements of its Financial Statements

57.    During the Class Period, Lifecore violated the following accounting principles which caused multiple restatements of its financial statements.

### Accounting for Discontinued Operations

58.    Accounting Standards Codification ("ASC") Topic 205-20 contains reporting and disclosure requirements for discontinued operations.  A business which has been part of an entity's continuing operations can be reported in discontinued operations only if it is a component of the entity.[2] ASC 205-20-15-2.a.  Moreover, a disposal of a component of an entity can only be reported in discontinued operations "if the disposal represents a strategic shift that has (or will have) a major effect on an entity's operations and financial results" and the component of an entity has either been disposed of (by sale or other means) in the current period or met six held-for-sale criteria as of the reporting date.[3] ASC 205-20-45-1B. 53. Discontinued operations are reported separately on the

---

[2] "A component of an entity comprises operations and cash flows that can be clearly distinguished, operationally and for financial reporting purposes, from the rest of the entity. A component of an entity may be a reportable segment or an operating segment, a reporting unit, a subsidiary, or an asset group." ASC 205-20-20.

[3] The six held-for-sale criteria are:

A. Management commits to a plan to sell the entity to be sold.

B. The entity to be sold is available for immediate sale in its present condition subject only to terms that are usual and customary for such sales.

C. An active program to locate a buyer or buyers and other actions required to complete the plan to sell the entity to be sold have been initiated.

D. The sale of the entity to be sold is probable and transfer of the entity to be sold is expected to qualify for recognition as a completed sale, generally within one year.

E. The entity to be sold is being actively marketed for sale at a price that is reasonable in

balance sheet and in the income statement and are labeled as discontinued operations for the current and comparative periods. For comparative purposes, prior periods are adjusted to reflect the effect of operations discontinued (or marked as held-for-sale) in the current period.

59.     An entity is required to provide the following disclosures for discontinued operations in the notes to the financial statements that cover the period in which a discontinued operation either has been disposed of or is classified as held-for-sale:

    a.  The facts and circumstances leading to the disposal or expected disposal

    b.  The expected manner and timing of that disposal.

    c.  The gain or loss on disposal, if not separately presented in the income statement.

    d.  The segment(s) in which the discontinued operation is reported.

ASC 205-20-50-1.

### Accounting for Restructuring Expenses

60.     ASC 420-10, Exit or Disposal Cost Obligations, addresses significant issues related to the recognition, measurement, and reporting of costs associated with exit and disposal activities, including restructuring activities.

61.     Restructuring costs are generally recognized when a liability for a cost associated with an exit or disposal activity is incurred, which may occur over time. ASC 420-10-25.  Costs associated with an exit or disposal activity that do not involve a

---

relation to its current fair value.
F. Actions required to complete the plan indicate it is unlikely that significant changes to the plan will be made or that the plan will be withdrawn. ASC 205-20-451E.

discontinued operation are reported as part of in income from continuing operations before income taxes on the income statement. ASC 420-10-45-3. However, costs associated with an exit or disposal activity involving a discontinued operation are included within the results of discontinued operations on the income statement. ASC 420-10-45-2.

### Accounting for Property and Equipment

62.     ASC Topic 360, Property, Plant, and Equipment, is the operative standard for accounting for fixed assets. Property, plant, and equipment is reported at its historical cost, which is the amount of cash, or its equivalent, paid to acquire an asset, and is commonly adjusted subsequently for amortization, depreciation, and/or impairment. "[T]he historical cost of acquiring an asset includes the costs necessarily incurred to bring it to the condition and location necessary for its intended use. … if an asset requires a period of time in which to carry out the activities necessary to bring it to that condition and location, the interest cost incurred during that period as a result of expenditures for the asset is a part of the historical cost of acquiring the asset." ASC 360-10-30-1.

63.     GAAP requires the cost of fixed assets to be spread over their expected useful life in such a way as to allocate the cost, as equitably as possible, to the periods during which services are obtained from the use of these assets. This process is called depreciation. It is a process of allocation, not valuation. ASC 360-10-35-4.

64.     If there are indicators that an asset's (or asset group's) carrying amount may not be recoverable (i.e., its undiscounted future cash flows are less than its carrying amount), impairment testing is required. ASC 360-10-35-17 and ASC 360-10-35-21. An impairment loss is recognized only when the carrying amount of an asset (or an asset group)

is not recoverable and exceeds its fair value. An impairment loss equals the amount by which the carrying amount of a long-lived asset (or asset group) exceeds its fair value. ASC 360-10-35-17. The right-of-use assets, which represent a lessee's right to use an underlying asset for the lease term, are subject to the same impairment requirements as other fixed assets. ASC 842-20-35-9.

65.    Companies are required to disclose relevant information about their fixed assets, including their accounting policies, carrying amounts, accumulated depreciation, depreciation methods used, and any impairment losses recognized. ASC 360-10-50-1 and 360-10-50-2.    With respect to impairments, GAAP requires the following specific disclosures:

> All of the following information shall be disclosed in the notes to financial statements that include the period in which an impairment loss is recognized:
>
> a.  A description of the impaired long-lived asset (asset group) and the facts and circumstances leading to the impairment
>
> b.  If not separately presented on the face of the statement, the amount of the impairment loss and the caption in the income statement or the statement of activities that includes that loss
>
> c.  The method or methods for determining fair value (whether based on a quoted market price, prices for similar assets, or another valuation technique)
>
> d.  If applicable, the segment in which the impaired long-lived asset (asset group) is reported under Topic 280.

ASC360-10-50-2.

## Accounting for Intangible Assets

66.    GAAP requires indefinite-lived intangible assets to be tested for impairment once a year, at the same time each year, or more frequently if events or changes in

circumstances (referred to as "triggering events") indicate that it is more likely than not that the asset is impaired. ASC 350-30-35-18.  A company must assess the "totality" of events and circumstances, including a non-exclusive list of factors included in GAAP, to determine whether it is more likely than not that an indefinite-lived intangible asset is impaired and an interim impairment test is triggered. Lifecore disclosed that it conducted its annual impairment tests in the fiscal fourth quarter.

67.    If necessary, the quantitative impairment test is performed to identify and measure an indefinite-lived intangible asset impairment. ASC 350-30-35-18A – 18F. The quantitative test compares the fair value of an indefinite-lived intangible asset with its carrying amount, also known as the net book value. If the carrying an indefinite-lived intangible asset (i.e., the amount recorded on the books) exceeds its fair value, then the asset is considered impaired and an impairment loss is recognized in an amount equal to the difference between the fair value and carrying value. ASC 350-30-35-19.

68.    Finite-lived intangible assets are amortized over their useful lives and are reviewed for impairment in accordance with the guidance in ASC Topic 360, Property, Plant, and Equipment. ASC 350-30-35-6 and ASC 350-30-35-14.  If there are indicators that an asset's carrying amount may not be recoverable (i.e., its undiscounted future cash flows are less than its carrying amount), impairment testing is required. ASC 360-10-35-17 and ASC 360-10-35-21.  An impairment loss is recognized only when the carrying amount of an asset is not recoverable and exceeds its fair value.  An impairment loss equals the amount by which the carrying amount of an asset exceeds its fair value. ASC 360-10-35-17.

**Accounting for Principal and Agent Revenue**

69.     ASC topic 606, Revenue from Contracts with Customers, is the authoritative standard which governs accounting for revenue recognition.  When another party is involved in providing goods or services to a customer, GAAP requires the reporting entity to determine whether it has promised to provide goods or services to customers itself (as a principal) or to arrange for those goods or services to be provided by another party (as an agent). ASC 606-10-55-36.  The principal versus agent assessment is a two-step process, it consists of (1) identifying the specified good or service to be provided to the end consumer and (2) assessing whether the reporting entity controls the specified good or service before it is transferred to the end consumer. ASC 606-10-55-36A.

70.     A reporting entity that is determined to be a principal follows the "gross" approach and recognizes revenue when (or as) it satisfies its performance obligation in the amount equal to the price paid by the end consumer for the good or service ("gross" revenue). ASC 606-10-55-37B.  The amounts remitted to the other party are presented as an expense.  Conversely, a reporting entity that is determined to be an agent, follows the "net" approach and recognizes revenue when (or as) it satisfies its performance obligation equal to the net amount retained after remitting amounts to the other parties for providing the good or service ("net" revenue). ASC 606-10-55-38.

**Accounting for Inventory**

71.     Lifecore disclosed that it employed the first-in, first-out ("FIFO") inventory cost method. GAAP requires companies using FIFO to present their inventory at the lower of cost or net realizable value on their financial statements.  ASC 330-10-35-1B.  Net

realizable value is defined as the "estimated selling prices in the ordinary course of business, less reasonably predictable costs of completion, disposal, and transportation." ASC 330-10-20.

72.    "When evidence exists that the net realizable value of inventory is lower than its cost, the difference shall be recognized as a loss in earnings in the period in which it occurs. That loss may be required, for example, due to damage, physical deterioration, obsolescence, changes in price levels, or other causes." ASC 330-10-35-1B.  Depending on the composition of inventory, cost adjustments could be applied to individual items, categories of inventory, or components of each major category. ASC 330-10-35-8 – 11. Therefore, in practice, inventory valuation adjustments are recorded by establishing a reserve against the cost of inventory to reduce its carrying value.  GAAP requires companies to disclose "substantial and unusual losses that result from the subsequent measurement of inventory … in the financial statements." ASC 330-10-50-2.

## SUMMARY OF IMPACT OF RESTATEMENTS

73.    The following chart summarizes the impact of the Company's misstatements on the fiscal 2021 – 2023 interim and annual financial statements. These misstatements represent adjustments required to be made to the originally reported amounts for each period.[4]

---

[4] To the extent possible, they have been segregated by issue and by segment. Some of the restatement items, although quantified in the schedule below, are not specifically described in the restatements. Therefore, it was not possible to allocate all misstatements to a segment or identify the exact cause of each misstatement. The chart below does not include adjustments necessary to correct misstatements the Company made when separately presenting continued and discontinued operations, including recasting prior period financial statements.

| (000s, except per share amts.) | FY 2020 5/31/20 | Q1 FY21 8/30/20 | Q2 FY21 11/29/20 | Q3 FY21 2/28/21 | FY 2021* 5/30/21 | Q1 FY22 8/29/21 | Q2 FY22 11/28/21 | Q3 FY22 2/27/22 | FY 2022** 5/29/22 | Q1 FY23 8/28/22 | Q2 FY23 11/27/22 | Q3 FY23 2/26/23 | FY 2023** 5/28/23 | Fiscal 2021 - 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Lifecore segment revenue** | | | | | | | | | | | | | | |
| Originally reported | $ 85,833 | $ 21,804 | $ 23,219 | $27,225 | $ 98,087 | $ 21,952 | $ 24,946 | $ 34,808 | $109,320 | $ 23,703 | $ 21,691 | $ 26,330 | $103,269 | $ 310,676 |
| Principal v. Agent (Rest. No. 3) | | 228 | 24 | 142 | 492 | - | 38 | 2 | 40 | 21 | 173 | 206 | - | 532 |
| Restated | $ 85,833 | $ 22,032 | $ 23,243 | $27,367 | $ 98,579 | $ 21,952 | $ 24,984 | $ 34,810 | $109,360 | $ 23,724 | $ 21,864 | $ 26,536 | $103,269 | $ 311,208 |
| Over/(under) stated % | 0.0% | (1.0%) | (0.1%) | (0.5%) | (0.5%) | 0.0% | (0.2%) | (0.0%) | (0.0%) | (0.1%) | (0.8%) | (0.8%) | 0.0% | (0.2%) |
| | | | | | | | | | | | | | | |
| **Lifecore segment gross profit** | | | | | | | | | | | | | | |
| Originally reported | $ 32,883 | $ 5,002 | $ 10,474 | $11,561 | $ 38,265 | $ 5,764 | $ 11,715 | $ 12,905 | $ 43,745 | $ 6,101 | $ 6,675 | $ 6,072 | $ 27,242 | $ 109,252 |
| Rest. No. 1 | | | | | | | | | 1 | | | | | 1 |
| Inventory write downs (Rest. No. 3) | | (100) | 42 | (895) | (533) | (308) | (498) | (791) | (3,863) | (127) | (987) | 2,469 | 618 | (3,778) |
| Restated | $ 32,883 | $ 4,902 | $ 10,516 | $10,666 | $ 37,732 | $ 5,456 | $ 11,217 | $ 12,114 | $ 39,883 | $ 5,974 | $ 5,688 | $ 8,541 | $ 27,860 | $ 105,475 |
| Over/(under) stated % | 0.0% | 2.0% | (0.4%) | 8.4% | 1.4% | 5.6% | 4.4% | 6.5% | 9.7% | 2.1% | 17.4% | (28.9%) | (2.2%) | 3.6% |
| | | | | | | | | | | | | | | |
| **Lifecore segment gross profit margin** | | | | | | | | | | | | | | |
| Originally reported | 38.3% | 22.9% | 45.1% | 42.5% | 39.0% | 26.3% | 47.0% | 37.1% | 40.0% | 25.7% | 30.8% | 23.1% | 26.4% | 35.2% |
| Restated | 38.3% | 22.2% | 45.2% | 39.0% | 38.3% | 24.9% | 44.9% | 34.8% | 36.5% | 25.2% | 26.0% | 32.2% | 27.0% | 33.9% |
| Over/(under) stated % | 0.0% | 3.1% | (0.3%) | 9.0% | 1.9% | 5.6% | 4.6% | 6.5% | 9.7% | 2.2% | 18.3% | (28.4%) | (2.2%) | 3.8% |
| | | | | | | | | | | | | | | |
| **Curation foods segment gross profit** | | | | | | | | | | | | | | |
| Originally reported | $ 42,105 | $ 11,345 | $ 10,163 | $ 8,128 | $ 43,209 | $ 11,755 | $ 1,277 | $ 990 | $ 6,808 | $ (280) | $ 433 | $ (94) | $ 50 | $ 50,067 |
| Previously recorded restructuring costs (Rest. No. 1) | | | | | | | | (675) | (184) | | | | | (184) |
| Rest. No. 2 | | | | | | | | | 431 | | | | | - |
| Rest. No. 3 | | | | | | | | 43 | (198) | | | | 75 | 75 |
| Restated | $ 42,105 | $ 11,345 | $ 10,163 | $ 8,128 | $ 43,209 | $ 11,755 | $ 1,277 | $ 315 | $ 6,624 | $ 194 | $ 235 | $ (94) | $ 125 | $ 49,958 |
| Over/(under) stated % | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 214.3% | 2.8% | (244.3%) | 84.3% | 0.0% | (60.0%) | 0.2% |
| | | | | | | | | | | | | | | |
| **Operating loss** | | | | | | | | | | | | | | |
| Originally reported | $(38,537) | $(12,468) | $ (1,466) | $ (793) | $(13,496) | $ (3,808) | $(37,030) | $ (3,751) | $(38,039) | $ (8,157) | $ (7,906) | $ (9,699) | $ (26,083) | $ (77,618) |
| Gross profit (see above) | | (100) | 42 | (895) | (533) | (308) | (498) | (1,466) | (4,046) | 347 | (1,185) | 2,469 | 693 | (3,886) |
| R&D (Rest No. 3) | | | | | | | | (288) | (521) | (242) | (149) | (276) | (496) | (1,017) |
| SG&A - Curation foods (Rest. No. 1) | | | | | | | | (6,625) | (3,496) | | | | | (3,496) |
| SG&A - Yucatan related (Rest. No. 2) | | | | | | | | | 222 | | | | | - |
| SG&A (Rest. No. 3) | | (34) | | (1,304) | (457) | (232) | (82) | (175) | 395 | (1,811) | 23 | 53 | 4,049 | 3,987 |
| Gain on sale of BreatheWay (Rest. No. 3) | | | | | | | | | 2,108 | | | | | - |
| Yucatan impairments of PP&E and Intangibles (Rest. No. 2) | | | | | | | | | (17,354) | | | | | (17,354) |
| COGS and SG&A expenses improperly recorded as restructuring costs (Rest. No. 1) | | | | | | | | 595 | 424 | | | | | 424 |
| Restructuring costs (Rest. No. 3) | | | | (48) | (74) | 168 | (52) | (4) | 602 | | 260 | 175 | 41 | 569 |
| Restated | $(38,537) | $(12,602) | $ (1,424) | $ (3,040) | $(14,560) | $ (4,180) | $(37,662) | $(11,714) | $ (62,035) | $ (7,533) | $ (8,957) | $ (7,278) | $ (21,796) | $ (98,391) |
| Over/(under) stated % | 0.0% | (1.1%) | 2.9% | (73.9%) | (7.3%) | (8.9%) | 1.7% | (68.0%) | (38.7%) | 8.3% | (11.7%) | 33.3% | 19.7% | (21.1%) |

| (000s, except per share amts.) | FY 2020 5/31/20 | Q1 FY21 8/30/20 | Q2 FY21 11/29/20 | Q3 FY21 2/28/21 | FY 2021* 5/30/21 | Q1 FY22 8/29/21 | Q2 FY22 11/28/21 | Q3 FY22 2/27/22 | FY 2022** 5/29/22 | Q1 FY23 8/28/22 | Q2 FY23 11/27/22 | Q3 FY23 2/26/23 | FY 2023** 5/28/23 | Fiscal 2021 - 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net loss from continuing operations before taxes** | | | | | | | | | | | | | | |
| Originally reported | $(51,307) | $(15,309) | $(16,001) | $(5,715) | $(40,466) | $(11,589) | $(41,265) | $(7,382) | $(51,923) | $(12,000) | $(12,445) | $(15,391) | $(68,702) | $(161,091) |
| Operating income (loss), see above | | (134) | 42 | (2,247) | (1,064) | (372) | (632) | (7,963) | (23,996) | 624 | (1,051) | 2,421 | 4,287 | (20,773) |
| Windset investment valuation adj. (Rest. No. 3) | | (1,779) | 1,800 | | | | | | | | | | | - |
| Interest expense (Rest. No. 1) | | | | | | | | | (96) | | | | | (96) |
| Undercapitalized interest expense on CIP (Rest. No. 3) | | 205 | 204 | 377 | 1,454 | 548 | 327 | 429 | 1,806 | 432 | 595 | 963 | 535 | 3,795 |
| Transition services income (Rest. Nos. 1 & 3) | | | | | | | | 5,473 | 5,814 | 44 | 24 | 8 | 76 | 5,890 |
| Loss on debt refinancing (Rest. No. 3) | | | | | | | | | | | | | 33 | 33 |
| Other income (expense), net (Rest. Nos. 1 & 3) | | | | | | (63) | 251 | (164) | (2,536) | (62) | 75 | (8) | (157) | (2,693) |
| Restated | $(51,307) | $(17,017) | $(13,955) | $(7,585) | $(40,076) | $(11,476) | $(41,319) | $(9,607) | $(70,931) | $(10,962) | $(12,802) | $(12,007) | $(63,928) | $(174,935) |
| Over/(under) stated % | 0.0% | (10.0%) | 14.7% | (24.7%) | 1.0% | 1.0% | (0.1%) | (23.2%) | (26.8%) | 9.5% | (2.8%) | 28.2% | 7.5% | (7.9%) |
| | | | | | | | | | | | | | | |
| **Loss from discontinued operations, net of tax** | | | | | | | | | | | | | | |
| Originally reported | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (5,744) | $ (51,155) | $ - | $ - | $(24,731) | $ (33,187) | $ (84,342) |
| Eat Smart disc. ops. adj. (Rest. Nos. 1 & 3) | | | | | | | | 3,466 | (287) | | | | | (287) |
| Other disc. ops. Adj. (Rest. # 3) | | | | | | | | | | | | 301 | (2,140) | (2,140) |
| Restated | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (2,278) | $ (51,442) | $ - | $ - | $(24,430) | $ (35,327) | $ (86,769) |
| Over/(under) stated % | | | | | | | | 152.2% | (0.6%) | | | 1.2% | (6.1%) | (2.8%) |
| | | | | | | | | | | | | | | |
| **Net loss per share from continuing operations** | | | | | | | | | | | | | | |
| Originally reported | $ (1.31) | $ (0.38) | $ (0.45) | $ (0.19) | $ (1.12) | $ (0.32) | $ (1.30) | $ (0.24) | $ (1.56) | $ (0.41) | $ (0.42) | $ (0.51) | $ (2.30) | $ (4.98) |
| Restatement adjustments (Rest. Nos. 1 - 3) | | (0.04) | 0.05 | (0.05) | 0.02 | 0.01 | 0.08 | (0.14) | (0.66) | 0.04 | (0.01) | 0.11 | 0.16 | (0.48) |
| Restated | $ (1.31) | $ (0.42) | $ (0.40) | $ (0.24) | $ (1.10) | $ (0.31) | $ (1.22) | $ (0.38) | $ (2.22) | $ (0.37) | $ (0.43) | $ (0.40) | $ (2.14) | $ (5.46) |
| Over/(under) stated % | 0.0% | (9.5%) | 12.5% | (20.8%) | 1.8% | 3.2% | 6.6% | (36.8%) | (29.7%) | 10.8% | (2.3%) | 27.5% | 7.5% | (8.8%) |
| | | | | | | | | | | | | | | |
| **Total net loss per share** | | | | | | | | | | | | | | |
| Originally reported | $ (1.31) | $ (0.38) | $ (0.45) | $ (0.19) | $ (1.12) | $ (0.32) | $ (1.30) | $ (0.43) | $ (3.30) | $ (0.41) | $ (0.42) | $ (1.33) | $ (3.41) | $ (7.83) |
| Restatement adjustments (Rest. Nos. 1 - 3) | | (0.04) | 0.05 | (0.05) | 0.02 | - | 0.01 | (0.02) | (0.67) | 0.04 | (0.01) | 0.12 | 0.09 | (0.56) |
| Restated | $ (1.31) | $ (0.42) | $ (0.40) | $ (0.24) | $ (1.10) | $ (0.32) | $ (1.29) | $ (0.45) | $ (3.97) | $ (0.37) | $ (0.43) | $ (1.21) | $ (3.32) | $ (8.39) |
| Over/(under) stated % | 0.0% | (9.5%) | 12.5% | (20.8%) | 1.8% | 0.0% | 0.8% | (4.4%) | (16.9%) | 10.8% | (2.3%) | 9.9% | 2.7% | (6.7%) |

* - Originally reported amounts for fiscal year 2021 represent amounts reported in the Company's August 10, 2022 earnings release.

** - Originally reported amounts for fiscal years 2022 and 2023 represent amounts reported in the Company's August 10, 2022 and August 31, 2023 earnings releases, respectively.

74. As shown above, the Company's failure to follow GAAP in accounting for its revenues as a principal, rather than an agent, and failure to write down its Lifecore segment inventory to its net realizable value enabled the Company to inflate the Lifecore segment gross profit margin by as much as 18.3% at the time when investors increasingly looked at the performance of the Lifecore segment because it represented the Company's future focus.

75. Moreover, the Company's failure to follow GAAP enabled it to understate its operating loss, pre-tax loss from continuing operations, and net loss per share from continuing operations by as much as 73.9%, 26.8%, and 36.8%, respectively.

76. In addition, the Company acknowledged that it improperly accounted for its July 1, 2021 disposition of Windset investment, December 13, 2021 Eat Smart Disposition, February 7, 2023 Yucatan disposition, and the April 16, 2023 O Olive sale, which misstated its losses from continuing and discontinued operations.

77. In connection with each of the Company's restatements, Lifecore evaluated the materiality of the misstatements in accordance with SAB No. 99 and SAB No, 108 and had concluded that its previously issued financial statements contained material errors and should be restated.

78. The magnitude and pervasiveness of the aforementioned misstatements, combined with the misstatements made in accounting for discontinued operations, rendered Lifecore's financial statements materially false and misleading, which deprived its financial statement users of the ability to evaluate the Company's business, operations, and prospects.

## SUBSTANTIVE ALLEGATIONS

### Background

79.    Lifecore, together with its subsidiaries, operates as an integrated contract development and manufacturing organization in the U.S. and internationally.  The Company purportedly designs, develops, manufactures, and sells differentiated products for biomaterials markets, and licenses technology applications to partners.

80.    Lifecore's securities trade on the NASDAQ and, as such, the Company is required to comply with NASDAQ's "listing" rules, or the set of conditions which a company must meet in order to list its securities on the exchange. Failing to comply with these rules results in NASDAQ initiating a delisting procedure.  In relevant part, NASDAQ Listing Rule 5250(c)(1) requires Lifecore to timely file all required periodic financial reports with the SEC.  As a "non-accelerated filer"—*i.e.*, a company that has a public float of less than $75 million as of the last business day of its most recently completed second fiscal quarter—Lifecore must file quarterly reports with the SEC no more than forty-five days after fiscal quarter-end and annual reports no more than ninety days after fiscal year-end.

81.    Despite repeatedly assuring the investing public that Lifecore's internal controls over financial reporting were effective, the reality was that the Company's accounting was slipshod. Defendants were reckless in their assurances. Even when the truth began to come out, Defendants recklessly assured investors that their internal control deficiencies were corrected, only to re-admit that the controls continued to be deficient.

26

82.     The following table summarizes the timeline of Defendants' restatements during the class period:

| Quarterly/Annual Statements | Restatement 1 (September 14, 2022) | Restatement 2 (March 16, 2023) | Restatement 3 (March 20, 2024) |
|---|---|---|---|
| 1st Quarter 2021 | | | Restated |
| 2nd Quarter 2021 | | | Restated |
| 3rd Quarter 2021 | | | Restated |
| Fiscal Year 2021 | | | Restated |
| 1st Quarter 2022 | | | Restated |
| 2nd Quarter 2022 | | | Restated |
| 3rd Quarter 2022 | Restated | | Restated |
| Fiscal Year 2022 | Restated | Restated | Restated |
| 1st Quarter 2023 | | Restated | Restated |
| 2nd Quarter 2023 | | | Restated |
| 3rd Quarter 2023 | | | Restated |
| Fiscal Year 2023 | | | Restated |

**Defendants Made Materially False and Misleading Statements During the Class Period**

83.     The Class Period begins on October 7, 2020, when Lifecore filed a Quarterly Report on Form 10-Q with the SEC, signed by Defendant McLaughlin, reporting the Company's financial and operational results for the fiscal quarter ended August 30, 2020 (the "Q1 2021 10-Q").  With respect to the Company's controls and procedures, the Q1 2021 10-Q stated, in relevant part:

As of August 30, 2020, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure***.[5]

84.     Appended to the Q1 2021 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bolles and McLaughlin attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

85.     The statements in ¶¶ 83-84 are materially false and/or misleading because Lifecore did not maintain effective disclosure controls and procedures. Additionally, due to the ineffective controls, the Q1 2021 10-Q contained misstated financial figures concerning Lifecore segment revenue, Lifecore segment gross profit, Lifecore segment gross profit margin, operating loss, and net loss from continuing operations before taxes, as shown in the tables on pages 20-21.

86.     On January 7, 2021, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, signed by Defendant McLaughlin, reporting the Company's financial and

---

[5] All emphases included herein are added unless otherwise indicated.

operational results for the fiscal quarter ended November 29, 2020 (the "Q2 2021 10-Q").

With respect to controls and procedures, the Q2 2021 10-Q reiterated, in relevant part:

> As of November 29, 2020, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure***.

87.    Appended to the Q2 2021 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and McLaughlin attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

88.    The statements in ¶¶ 86-87 are materially false and/or misleading because Lifecore did not maintain effective disclosure controls and procedures. Additionally, due to the ineffective controls, the Q2 2021 10-Q contained misstated financial figures concerning Lifecore segment revenue, Lifecore segment gross profit, Lifecore segment gross profit margin, operating loss, and net loss from continuing operations before taxes, as shown in the tables on pages 20-21.

89.    On April 8, 2021, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, signed by Defendant Morberg, reporting the Company's financial and operational

results for the fiscal quarter ended February 28, 2021 (the "Q3 2021 10-Q").  With respect

to controls and procedures, the Q3 2021 10-Q reiterated, in relevant part:

>    As of February 28, 2021, our management evaluated, with
> participation of our Chief Executive Officer and our Chief Financial Officer,
> the effectiveness of our disclosure controls and procedures. ***Based on this
> evaluation, our Chief Executive Officer and our Chief Financial Officer
> have concluded that the disclosure controls and procedures are effective in
> ensuring that information required to be disclosed in reports filed under
> the Exchange Act, is recorded, processed, summarized and reported within
> the time periods specified by the SEC, and are effective in providing
> reasonable assurance that information required to be disclosed by the
> Company in such reports is accumulated and communicated to the
> Company's management, including its Chief Executive Officer and Chief
> Financial Officer, as appropriate to allow timely decisions regarding
> required disclosure***.

90.    Appended to the Q3 2021 10-Q as exhibits were signed certifications

pursuant to SOX by Defendants Bolles and Morberg attesting to the accuracy of financial

reporting, the disclosure of any weaknesses or deficiencies to the Company's internal

control over financial reporting, and the disclosure of all fraud.

91.    The statements in ¶¶ 89-90 are materially false and/or misleading because

Lifecore did not maintain effective disclosure controls and procedures. Additionally, due to

the ineffective controls, the Q3 2021 10-Q contained misstated financial figures concerning

Lifecore segment revenue, Lifecore segment gross profit, Lifecore segment gross profit

margin, operating loss, and net loss from continuing operations before taxes, as shown in the

tables on pages 20-21.

92.    On July 29, 2021, Lifecore filed an Annual Report on Form 10-K with the

SEC, signed by Defendants Bolles and Morberg, reporting the Company's financial and

operational results for the fiscal year ended May 30, 2021 (the "2021 10-K"). The 2021

10-K reiterated, in relevant part:

> As of May 30, 2021, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that our disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Securities Exchange Act of 1934, as amended, is recorded, processed, summarized and reported within the time periods specified by the Securities and Exchange Commission, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.***

> ***Management's Report on Internal Control over Financial Reporting***

> Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities Exchange Act of 1934, as amended). In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in *Internal Control - Integrated Framework (2013 Framework)*. ***Our management has concluded that we maintained effective internal control over financial reporting as of May 30, 2021***.

93.     Appended to the 2021 10-K as exhibits were signed certifications pursuant

to SOX by Defendants Bolles and Morberg attesting to the accuracy of financial reporting,

the disclosure of any weaknesses or deficiencies to the Company's internal control over

financial reporting, and the disclosure of all fraud.

94.     The statements in ¶¶ 92-93 are materially false and/or misleading because

Lifecore did not maintain effective internal control over financial reporting and disclosure

controls and procedures. Indeed, the Company was so reckless in its accounting practices

that it would need to restate the financial statements for the same period multiple times. Additionally, due to the ineffective controls, the 2021 10-K contained misstated financial figures concerning Lifecore segment revenue, Lifecore segment gross profit, Lifecore segment gross profit margin, operating loss, and net loss from continuing operations before taxes, as shown in the tables on pages 20-21.

95.    On October 5, 2021, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, signed by Defendant Morberg, reporting the Company's financial and operational results for the quarter ended August 29, 2021 (the "Q1 2022 10-Q").  With respect to the Company's controls and procedures, the Q1 2022 10-Q reiterated, in relevant part:

> As of August 29, 2021, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.***

96.    Additionally, the Q1 2022 10-Q contained misstated financial figures pertaining to valuation of accounts receivable and inventory, capitalization of interest on assets under construction, and recording of cost of sales of the Company's Lifecore segment.

97.    Appended to the Q1 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and Morberg attesting to the accuracy of financial

reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

98.     The statements in ¶¶ 95-97 are materially false and/or misleading because Lifecore did not maintain effective disclosure controls and procedures. Indeed, the Company was so reckless in its accounting practices that it would need to restate the financial statements for the same period multiple times. Additionally, due to the ineffective controls, the Q1 2022 10-Q contained misstated financial figures concerning Lifecore segment gross profit, Lifecore segment gross profit margin, operating loss, and net loss from continuing operations before taxes, as shown in the tables on pages 20-21.

99.     Then, on January 7, 2022, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, signed by Defendant Morberg, reporting the Company's financial and operational results for the fiscal quarter ended November 28, 2021 (the "Q2 2022 10-Q"). With respect to the Company's controls and procedures, the Q2 2022 10-Q reiterated, in relevant part:

> As of November 28, 2021, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure***.

100.    Additionally, the Q2 2022 10-Q contained misstated financial figures pertaining to valuation of accounts receivable and inventory, capitalization of interest on assets under construction, and recording of revenue and related cost of sales of the Company's Lifecore segment.

101.    Appended to the Q2 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and Morberg attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

102.    The statements in ¶¶ 99-101 are materially false and/or misleading because Lifecore did not maintain effective disclosure controls and procedures. Additionally, due to the ineffective controls, the Q2 2022 10-Q contained misstated financial figures concerning Lifecore segment revenue, Lifecore segment gross profit, Lifecore segment gross profit margin, operating loss, and net loss from continuing operations before taxes, as shown in the tables on pages 20-21.

103.    Next, on April 7, 2022, Lifecore filed a Quarterly Report on Form 10-Q with the SEC, signed by Defendant Morberg, reporting the Company's financial and operational results for the fiscal quarter ended February 27, 2022 (the "Q3 2022 10-Q"). With respect to the Company's controls and procedures, the Q3 2022 10-Q reiterated, in relevant part:

> As of February 27, 2022, our management evaluated, with participation of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of our disclosure controls and procedures. ***Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that the disclosure controls and procedures are effective in ensuring that information required to be disclosed in reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified by the SEC, and are effective in providing***

*reasonable assurance that information required to be disclosed by the Company in such reports is accumulated and communicated to the Company's management, including its Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.*

104.    Additionally, the Q3 2022 10-Q contained misstated financial figures pertaining to valuation of accounts receivable and inventory, capitalization of interest on assets under construction, recording of revenue and related cost of sales of the Company's Lifecore segment, and the presentation of certain operating costs and expenses of continuing operations and discontinued operations. Additionally, Lifecore's May 30, 2021 balance sheet as included herein was materially misstated because Lifecore had failed to appropriately separate Eat Smart's fixed asset balances and right of use assets and lease liabilities from Lifecore's other assets and liabilities.

105.    Appended to the Q3 2022 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Bolles and Morberg attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

106.    The Q3 2022 10-Q also accounted for the Company's corporate transition of Landec Corporation to Lifecore Biomedical under restructuring expenses, when it ***should have*** been classified as selling, general, and administrative expenses, and cost of goods sold within continuing operations. Furthermore, the Q3 2022 10-Q included amended financial figures for Q3 2021, the first nine months of 2021, and fiscal year 2021, which separately presented the Company's continuing and discontinued operations following the sale of the Eat Smart business on December 13, 2021 (during Q3 2022). These amounts

contained material misstatements related to continuing and discontinued operations during fiscal year 2021.

107.    The statements in ¶¶ 103-106 are materially false and/or misleading because Lifecore did not maintain effective disclosure controls and procedures. Additionally, due to the ineffective controls, the Q3 2022 10-Q contained misstated financial figures concerning Lifecore segment revenue, Lifecore segment gross profit, Lifecore segment gross profit margin, operating loss, net loss from continuing operations before taxes, and loss from discontinued operations net of taxes, as shown in the tables on pages 20-21.

108.    On August 10, 2022, Lifecore filed a Form 8-K containing an earnings release for the fourth quarter and full fiscal year 2022 (the "August 2022 Earnings Release").  The August 2022 Earnings Release contained materially misstated May 30, 2021 and May 30, 2022 balance sheets and income statements.

## Lifecore Gradually Reveals the Truth, but Downplays the Severity of Its Issues

109.    On September 14, 2022, Lifecore filed its 2022 10-K with the SEC, signed by Defendants Hall and Morberg, which revealed, in relevant part, that:

> As required by Rule 13a-15(b) under the Exchange Act, we have evaluated, under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this Form 10-K. Our disclosure controls and procedures are designed to provide reasonable assurance that information required to be disclosed by us in reports that we file under the Exchange Act is accumulated and communicated to our management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure and is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the SEC. **Based upon the evaluation, our principal executive officer and principal**

36

*financial officer concluded that due to a material weakness in our internal control over financial reporting as described in the "Management's Report on Internal Control over Financial Reporting", our disclosure controls and procedures were not effective as of May 29, 2022.*

Management assessed the effectiveness of our internal control over financial reporting as of May 29, 2022. In making this assessment, which was conducted under the supervision and with the participation of management, including our Chief Executive Officer and Chief Financial Officer, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control – Integrated Framework (2013). *As part of our annual assessment, management has concluded that we did not design and operate effective internal controls over the completeness and accuracy of the accounting for non-standard transactions, that would include discontinued operations and restructuring activity. Specifically, we did not design controls for non-standard transactions to ensure the accurate presentation of non-standard transactions, which would include discontinued operations and certain restructuring costs in our financial statements. This resulted in a material error in our interim financial information as presented in and filed with our Quarterly Report on Form 10-Q for our fiscal third quarter ended February 27, 2022. As a result, we have restated the impacted financial information and corrected these errors in Note 1 to our consolidated financial statements included in Part IV, Item 15 of this Annual Report on Form 10-K.*

110.  2022 10-K also disclosed the following information regarding the restatement:

**Restatement Background**

In this Annual Report on Form 10-K for the year ended May 29, 2022, Landec Corporation (the "Company") is restating (the "Restatement") its previously issued (i) unaudited consolidated balance sheets as of February 27, 2022 and May 30, 2021, (ii) unaudited consolidated statement of comprehensive (loss) income for the three and nine months ended February 27, 2022, (iii) unaudited consolidated statement of cash flows for the nine months ended February 27,2022, (iv) unaudited consolidated statement of changes in stockholders' equity, and unaudited notes related thereto, as previously reported in our Quarterly Report on Form 10-Q for the third quarter period ended February 27, 2022 (the "Prior Financial Statements").

The Restatement results from corrections by the Company primarily related to:

(i) the classification of certain expenses and the recording of accruals related to the Company's recent disposition activities and the Company's corporate transition of Landec Corporation to Lifecore Biomedical, which *were previously classified as restructuring expenses* from continuing operations in our Prior Financial Statements, *but which the Company intends to correct to classify as selling, general and administrative expenses, and cost of goods sold* within continuing operations;

(ii) the treatment of the fees received and costs incurred by the Company pursuant to the transition services agreement related to the sale of the Curation Foods' Eat Smart business (the "TSA"), for which the Company had *previously recognized* the net of the TSA fees received and costs incurred as loss on sale of Eat Smart *within discontinued operations, but for which the Company intends to correct to classify the TSA fees received by the Company within transition services income and the TSA costs incurred by the Company as selling, general and administrative expenses* within continuing operations; and

(iii) the classification of certain costs and expenses related to the Company's recent disposition activities and the Company's corporate transition of Landec Corporation to Lifecore Biomedical, which were *previously classified as loss on sale of Eat Smart* within discontinued operations, *but which the Company intends to correct to classify as selling, general and administrative expenses* within continuing operations.

111.  However, the above disclosures *do not explain the restatement adjustments made to Lifecore's May 30, 2021 balance sheet*, which was recast to separately show Eat Smart's assets and liabilities to segregate them from assets and liabilities of continuing operations:

| (in thousands) | As reported May 30, 2021 | | Adjustment | | As restated May 30, 2021 |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| Property and equipment, net | $ | 112,770 | $ | 7,516 | $ | 120,286 |
| Operating lease right-of-use assets | | 7,480 | | 9,618 | | 17,098 |
| Other assets, discontinued operations | | 171,274 | | (17,134) | | 154,140 |
| Total Assets | | 502,924 | | — | | 502,924 |
| **LIABILITIES** | | | | | |
| Current portion of lease liabilities | | 1,465 | | 135 | | 1,600 |
| Current liabilities, discontinued operations | | 42,779 | | (135) | | 42,644 |
| Total Current Liabilities | | 101,888 | | — | | 101,888 |
| Long-term lease liabilities | | 9,581 | | 10,778 | | 20,359 |
| Non-current liabilities, discontinued operations | | 14,759 | | (10,778) | | 3,981 |
| Total Liabilities | $ | 300,140 | $ | — | $ | 300,140 |

112.   The recast May 30, 2021 balance sheet was initially included in the Q3 2022 10-Q and in the related earnings release for comparison as the prior year's balance sheet. However, based on the balance sheet accounts affected by the restatement, it appears that Lifecore's May 30, 2021 balance sheet, as included in the Q3 2022 10-Q, was materially misstated because Lifecore had ***failed to appropriately separate Eat Smart's fixed asset balances and right of use assets and lease liabilities from Lifecore's other assets and liabilities***.[6]

113.   Notably, as stated above, the balance sheet included in the August 10, 2022 Form 8-K announcing the Q4 and full year 2022 earnings release ("August 2022 Earnings Release") already included corrections required to be made to the May 30, 2021 balance sheet as part of Restatement No.1. However, the amounts presented in the earnings release as part of the May 30, 2021 balance sheet were not marked as restated in violation of GAAP. Accordingly, the Company's various reporting of the May 30, 2021 balance sheet at relevant times were materially misstated, inconsistent, and/or unclear.

114.   Furthermore, although not disclosed, this restatement also partially corrected the misstatements of Lifecore's balance sheet and income statement as of and for the year ended May 29, 2022 reported in the August 2022 Earnings Release. With respect to the restatement of the income statement for the three and nine months ended February 27, 2022, the restatement shows that Lifecore had significantly understated its Q3 2022 operating loss and net loss from continued operations and overstated the loss from discontinued operations.

---

[6] Right of use asset is "[a]n asset that represents a lessee's right to use an underlying asset for the lease term." ASC 842-10-20.

115.  In addition, the 2022 10-K also revealed that income statements for each of the first two quarters of fiscal year 2022 (ending August 29, 2021, and November 28, 2021, respectively) were also misstated, but the Company did not issue restated Q1 and Q2 financial statements until much later.

| (In thousands) | As reported | | As reported | | Adjustment | | As restated | | As restated | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Retained Earnings (Accumulated Deficit) | | Total Stockholders' Equity | | | | Retained Earnings (Accumulated Deficit) | | Total Stockholders' Equity | |
| Balance at May 30, 2021 | $ | 38,580 | $ | 202,784 | $ | — | $ | 38,580 | $ | 202,784 |
| Net loss | | (9,477) | | (9,477) | | (32) | | (9,509) | | (9,509) |
| Balance at August 29, 2021 | | 29,103 | | 193,865 | | (32) | | 29,071 | | 193,833 |
| Net loss | | (38,441) | | (38,441) | | (80) | | (38,521) | | (38,521) |
| Balance at November 28, 2021 | | (9,338) | | 156,202 | | (112) | | (9,450) | | 156,090 |
| Net loss | | (12,850) | | (12,850) | | (236) | | (13,086) | | (13,086) |
| Balance at February 27, 2022 | $ | (22,188) | $ | 144,072 | $ | (348) | $ | (22,536) | $ | 143,724 |

116.  For example, in response to the foregoing material weaknesses, the 2022 10-K stated, in relevant part:

> In response to the material weakness described above, with the oversight of the Audit Committee of our Board of Directors, ***management has corrected the error in its interim financial statements***. Management is currently evaluating remediation activities related to our non-standard transaction processes that will include, but are not limited to the following
>
> (i) enhancing and developing a more comprehensive review process and monitoring controls related to non-standard transactions and (ii) continuing to provide training and development to our accounting team related to non-standard transactions, including discontinued operations and restructuring activity.
>
> The remediation efforts are intended to both address the identified material weakness and to enhance our overall financial control environment and will be subject to ongoing senior management review, as well as Audit Committee oversight. We plan to complete this remediation process as quickly as possible. Management is committed to continuous improvement of our internal control over financial reporting and will continue to diligently review our internal control over financial reporting.

117.  Furthermore, despite being alerted to issues in prior financial statements, Defendants were reckless in failing to recognize that the other prior financial statements –

that is, financial statements from the first quarter of 2021 to the second quarter of 2022 – contained errors and would need to be restated.

118.    Appended to the 2022 10-K as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

119.    The statements referenced in ¶¶ 111-118 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants made undisclosed amendments to the 2021 10-K, Q1 2022 10-Q, and Q2 2022 10-Q; (ii) even after the undisclosed amendments, further restatements would be required because of errors related to inventory valuation, the capitalization of interest on assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and/or the write off of other receivables of the Company's former Curation Foods businesses; (iii) Defendants failed to "correct[] the error in its interim financial statements"; (iv) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective; (v) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (vi) accordingly, the Company's financial position and/or prospects were materially overstated; and (vii) as a result, the Company's public statements were materially false and misleading at all relevant times.

120.    On October 7, 2022, Lifecore filed its Q1 2023 10-Q, signed by Defendant Morberg, which stated that the Company's "disclosure controls and procedures were not effective as of August 28, 2022, due to the material weakness in internal control over financial reporting that was disclosed in the [2022 10-K]."

121.    The Q1 2023 10-Q also contained misstated financial figures concerning the valuation of property and equipment, customer relationships and tradename related to Lifecore's subsidiary Yucatan Foods.

122.    The Q1 2023 10-Q also contained misstated financial figures for Q1 2022, which were recast to separately present continued and discontinued operations associated with December 13, 2021 the Eat Smart disposition.

123.    Further, appended to the Q1 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

124.    On this news, Lifecore's stock price fell $0.19 per share, or 2.31%, to close at $8.05 per share on October 10, 2022. Lifecore's securities nonetheless continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

125.    The statements referenced in ¶¶ 121-123 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading

42

statements and/or failed to disclose that: (i) there were errors in the financial statement pertaining to valuation of property and equipment, customer relationships and tradename related to Lifecore's Yucatan Foods, inventory valuation, the capitalization of interest on assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and/or the write off of other receivables of the Company's former Curation Foods businesses, as shown in the tables on pages 20-21; (ii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective and the financial statement for this period would need to be restated; (iii) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (iv) accordingly, the Company's financial position and/or prospects were materially overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

126.    Subsequently, on January 9, 2023, Lifecore revealed in an SEC filing, in relevant part, that:

> Lifecore [. . .] is unable to file, without unreasonable effort and expense, its Quarterly Report on Form 10-Q for the period ended November 27, 2022 (the "Second Quarter Form 10-Q") in a timely manner. The Company experienced an unexpected delay in finalizing the financial statements relating to the assessment of certain asset impairments and subsequent events in the Second Quarter Form 10-Q. Specifically, with respect to its asset impairments, management is assessing its treatment of certain non-cash impairment charges related to the Company's Curation Foods business contained in its financial statements to be included in the Second Quarter Form 10-Q and its previously issued financial statements covering the Company's fiscal year ended May 29, 2022 and the fiscal quarter ended August 28, 2022. The Company intends to evaluate the effect of the foregoing charges on the Company's prior period financial information and on the related internal control over financial reporting, but such evaluation

has not yet been completed. Until this evaluation is completed, the Company will not be able to complete the financial statements to be included in the Second Quarter Form 10-Q and will not be in a position to complete and file the Second Quarter Form 10-Q. The Company will file the Second Quarter Form 10-Q as soon as practical.

127.    Then, on January 11, 2023, Lifecore issued a press release announcing that the Company received a notification letter from the Listing Qualifications Department of NASDAQ indicating that, "as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the period ended November 27, 2022 [] with the [SEC], the Company [was] not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1)[.]"

128.     On this news, Lifecore's stock price fell $0.12 per share, or 1.65%, to close at $7.14 per share on January 12, 2023.

129.    Despite having already restated previously issued financial statements, the Company failed to catch errors in other previously issued financial statements, and subsequent financial statements continued to be riddled with errors. For example, on February 1, 2023, Lifecore revealed in a filing with the SEC that "the Company's previously issued (i) consolidated financial statements as of and for the year ended May 29, 2022 and (ii) unaudited consolidated financial statements as of and for the three months ended August 28, 2022" should no longer be relied upon.  Specifically, Lifecore indicated that "[t]his determination resulted from the identification of errors [. . .] related to certain non-cash impairment charges" related to the Company's Curation Foods business and that the financial statements for these periods would need to be restated.

130.    On this news, Lifecore's stock price fell $0.11 per share, or 1.75%, to close at $6.17 per share on February 2, 2023.

131.    Then, on March 16, 2023, Lifecore filed its Q2 2023 10-Q, signed by Defendant Morberg, which stated, in relevant part, that the Company's "disclosure controls and procedures were not effective as of November 27, 2022, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]."

132.    For example, in response to the foregoing material weakness, the Q2 2023 10-Q stated, in relevant part:

> In response to the material weaknesses described above, with the oversight of the Audit Committee of our Board of Directors, management has corrected the errors in its annual and interim financial statements. Management is currently evaluating remediation activities related to our processes for assessing recoverability and measurement of fair value of certain indefinite-lived and long-lived assets that will include, but are not limited to the following (i) developing a more comprehensive review over the periodic assessment of recoverability of indefinite-lived and long-lived assets; and (ii) enhancing and developing a more comprehensive review process and monitoring controls related to the measurement of fair values of indefinite-lived and long-lived assets. In addition, management is currently evaluating remediation activities related to our non-standard transaction processes that will include, but are not limited to the following (i) enhancing and developing a more comprehensive review process and monitoring controls related to non-standard transactions; and (ii) continuing to provide training and development to our accounting team related to non-standard transactions, including discontinued operations and restructuring activity.
>
> The remediation efforts, which are ongoing, are intended to both address the identified material weaknesses and to enhance our overall financial control environment and will be subject to ongoing senior management review, as well as Audit Committee oversight. We plan to complete this remediation process as quickly as possible. Management is committed to continuous improvement of our internal control over financial reporting and will continue to diligently review our internal control over financial reporting.

133.    Further, appended to the Q2 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

134.    That same day, Lifecore also filed its amended 2022 10-K/A and Q1 2023 10-Q/A. The 2022 10-K/A, signed by Defendants Hall and Morberg, revealed that the impairment charges recorded as part of the restatement pertained to property and equipment and intangible assets related to Lifecore's indirect wholly owned subsidiary, Yucatan Foods, which the Company sold on February 7, 2023, during Q3 2023 for $17.5 million in cash, subject to certain post-closing adjustments.

135.    The additional Q4 2022 Yucatan impairment charges totaled $17.4 million, as detailed below:

| (in thousands) | Adjustment | |
|---|---|---|
| Land | $ | - |
| Buildings | | (1,912) |
| Leasehold improvements | | (1,650) |
| Computers, capitalized software, machinery, equipment and autos | | (13,962) |
| Furniture and fixtures | | (191) |
| Construction in process | | (149) |
| Gross property and equipment | $ | (17,864) |
| Accumulated depreciation and amortization | | 5,960 |
| Property and equipment, net | $ | (11,904) |
| | | |
| Customer relationships - Yucatan Foods | | |
| Gross Carrying Amount | $ | (9,600) |
| Accumulated Amortization | | 3,850 |
| | $ | (5,750) |
| | | |
| Trademarks/tradenames - Yucatan Foods | | 300 |
| | | |
| Total intangible assets | $ | (5,450) |
| | | |
| Total adjustment for impairment of goodwill and intangible assets | $ | (17,354) |

136.   The adjustments recorded in the Q1 2023 10-Q/A, signed by Defendant Morberg, pertained to the entries necessary to record the above fiscal 2022 Yucatan impairment charges and stated, in relevant part:

> This restatement reflected in the tables below results from corrections by us related to:
>
> (i) adjustments to the amounts of depreciation of property and equipment and amortization of long-lived assets related to Yucatan Foods, including its related tax effect; and
>
> (ii) adjustments to the amounts of property and equipment, customer relationships and tradename resulting from the impairment of long-lived and indefinite lived assets related to Yucatan Foods.
>
> The effects of these errors on our previously reported unaudited consolidated balance sheet as presented in the Original Quarterly Report are as follows:

| (in thousands) | As reported | | Adjustment | As restated |
| --- | --- | --- | --- | --- |
| | August 28, 2022 | | | August 28, 2022 |
| **ASSETS** | | | | |
| Property and equipment, net | $ | 129,024 | $ (11,473) | $ 117,551 |
| Trademarks/tradenames, net | $ | 8,400 | $ 300 | $ 8,700 |
| Customer relationships, net | $ | 6,875 | $ (5,529) | $ 1,346 |
| **Total Assets** | $ | 285,800 | $ (16,702) | $ 269,098 |
| | | | | |
| LIABILITIES AND STOCKHOLDERS' EQUITY | | | | |
| Deferred tax liability, net | $ | 291 | $ (167) | $ 124 |
| Total Liabilities | $ | 188,901 | $ (167) | $ 188,734 |
| Accumulated deficit | $ | (70,915) | $ (16,535) | $ (87,450) |
| Total Stockholders' Equity | $ | 96,899 | $ (16,535) | $ 80,364 |
| Total Liabilities and Stockholders' Equity | $ | 285,800 | $ (16,702) | $ 269,098 |

The effects of this error on our previously reported interim consolidated statement of comprehensive (loss) income for the three-month period ended August 28, 2022 [Q1FY2023] as presented in the Original Prior Quarterly Report are as follows:

| | Three Months Ended | | | |
| --- | --- | --- | --- | --- |
| | As reported | | Adjustment | As restated |
| | August 28, 2022 | | | August 28, 2022 |
| Product sales | $ | 43,355 | $ - | $ 43,355 |
| Cost of product sales | | 37,534 | (431) | 37,103 |
| Gross profit | | 5,821 | 431 | 6,252 |
| Operating costs and expenses: | | | | |
| Research and development | | 2,048 | - | 2,048 |
| Selling, general and administrative | | 10,883 | (222) | 10,661 |
| Restructuring costs | | 1,047 | - | 1,047 |
| Total operating costs and expenses | | 13,978 | (222) | 13,756 |
| Operating loss | | (8,157) | 653 | (7,504) |
| Interest income | | 15 | - | 15 |
| Interest expense | | (3,678) | - | (3,678) |
| Other income (expense), net | | (180) | - | (180) |
| Net loss before tax | | (12,000) | 653 | (11,347) |
| Income tax (expense) benefit | | (64) | 60 | (4) |
| Net loss from continuing operations | | (12,064) | 713 | (11,351) |
| Loss from discontinued operations, net of tax | | - | - | - |
| Net loss | $ | (12,064) | $ 713 | $ (11,351) |

137.  Additionally, despite being aware of issues in prior financial statements, Defendants were reckless in failing to recognize that the other prior financial statements – that is, financial statements from the first quarter of 2021 to the third quarter of 2022 – contained errors and would need to be restated. Furthermore, due to Defendants' reckless accounting practices, the 2022 10-K/A and Q1 2023 10-Q/A still contained material misstatements and would need to be restated again.

138.    On this news, Lifecore's stock price fell $3.44 per share, or 67.32%, to close at $1.67 per share on March 17, 2023. Of note, this restatement revealed that ***the operating loss for fiscal year 2022 was understated by more than $17 million***. Lifecore's securities nonetheless continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

139.    The statements referenced in ¶¶ 132-137 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) there were errors in the financial statement pertaining to valuation of property and equipment, customer relationships and tradename related to Lifecore's Yucatan Foods, inventory valuation, the capitalization of interest on assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and/or the write off of other receivables of the Company's former Curation Foods businesses, as shown in the tables on pages 20-21; (ii) Lifecore's previous purported remediation efforts with respect to the foregoing deficiencies were ineffective and the financial statement for this period would need to be restated; (iii) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements; (iv) accordingly, the Company's financial position and/or prospects were materially overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

140. On April 10, 2023, Lifecore revealed in a filing with the SEC that the Company "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 26, 2023 (the 'Third Quarter Form 10-Q') in a timely manner due to a delay in obtaining and compiling information required to be included in its Third Quarter Form 10-Q, which delay could not be eliminated by the Company without unreasonable effort and expense."

141. Then, on June 2, 2023, Lifecore filed its Q3 2023 10-Q, signed by Defendant Morberg, which stated, in relevant part, that the Company's "disclosure controls and procedures were not effective as of February 26, 2023, due to the material weaknesses in internal control over financial reporting that were disclosed in [the 2022 10-K]." Lifecore's securities nonetheless continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the true scope and severity of Lifecore's deficient internal controls over financial reporting.

142. For example, in response to the foregoing material weakness, the Q3 2023 10-Q contained a substantively similar description of the Company's purported remediation efforts as discussed, *supra*, in ¶¶ 116, 132. Also, appended to the Q3 2023 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Hall and Morberg attesting to the accuracy of financial reporting, the disclosure of any weaknesses or deficiencies to the Company's internal control over financial reporting, and the disclosure of all fraud.

143.    The statements referenced in ¶ 142 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) there were errors in the financial statement pertaining to inventory valuation, the capitalization of interest on assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and/or the write off of other receivables of the Company's former Curation Foods businesses, as shown in the tables on pages 20-21; (ii) Lifecore's purported remediation efforts with respect to the foregoing deficiencies were ineffective and the financial statement for this period would need to be restated; (iii) all of the foregoing impaired Lifecore's ability to  timely  file periodic reports with the SEC in compliance with NASDAQ listing requirements; (iv) accordingly, the Company's financial position and/or prospects were materially overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

144.    Then, on August 14, 2023, Lifecore disclosed that it "could not complete the filing of its [2023 Form 10-K] in a timely manner due to an unexpected delay in obtaining and compiling information required to be included in the 2023 Form 10-K, which delay could not be eliminated by the Company without unreasonable effort and expense" and that "[t]he Company experienced unexpected delays in compiling and analyzing supporting documentation related to the accounting for certain recent non-routine corporate

transactions occurring during the fourth quarter 2023, and thus will require additional time to complete the preparation and review processes" in support of the 2023 Form 10-K.

145.    On this news, Lifecore's stock price fell $0.41 per share, or 4.1%, to close at $9.58 per share on August 15, 2023.

146.    Then, on August 22, 2023, Lifecore issued a press release announcing that the Company received a second notification letter from the Listing Qualifications Department of NASDAQ stating that "the Company [was] not in compliance with Nasdaq Listing Rule 5250(c)(1) [] because the Company failed to timely file its Annual Report on Form 10-K for the period ended May 28, 2023 [] with the [SEC]."

147.  On this news, Lifecore's stock price fell $0.45 per share, or 5%, to close at $8.55 per share on August 23, 2023.

148.    Then, on August 31, 2023, Lifecore filed a Form 8-K containing an earnings release for the fourth quarter and full fiscal year 2023 (the "August 2023 Earnings Release").  The August 2023 Earnings Release contained materially misstated May 29, 2022 and May 28, 2023 balance sheets and income statements.

149.    Then, on October 10, 2023, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended August 27, 2023 as Lifecore continued to finalize the compiling and analyzing of supporting documentation related to the accounting for certain non-routine corporate transactions occurring during the fourth quarter 2023 and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended

May 28, 2023, "which delay could not be eliminated by the Company without unreasonable effort and expense."

150.    On this news, Lifecore's stock price fell $0.07 per share, or 0.96%, to close at $7.22 per share on October 11, 2023.

151.    Even after restating its previously issued financial statements *twice*, the Company's financial statements for fiscal year 2022 continued to be replete with mistakes. For example, on October 31, 2023, Lifecore revealed in a filing with the SEC, in relevant part, that:

> On October 30, 2023, the Audit Committee (the "Audit Committee") of the Board of Directors of Lifecore Biomedical, Inc. (the "Company"), after discussion with management, concluded that the Company's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 ("FY22") and May 30, 2021 ("FY21") included in the Company's Annual Report on Form 10-K/A filed with the Securities and Exchange Commission (the "SEC"), the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February 28, 2020, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 included in the Company's Quarterly Reports on Form 10-Q filed with the SEC and the Company's press release announcing its consolidated results as of and for the fourth quarter and fiscal year ended May 28, 2023 ("FY23") and furnished on Form 8-K with the SEC on August 31, 2023 (the "Earnings Release") (collectively, the "Non-Reliance Periods"), ***should no longer be relied upon.***

> This determination resulted from the Company's identification of errors in the Non-Reliance Periods related to certain adjustments as more particularly described below, involving the calculation of capitalized interest, valuation of inventories, and certain adjustments related to previously divested businesses contained in the Non-Reliance Periods. In addition, the Company expects to correct certain items that were previously identified and concluded as immaterial, individually and in the aggregate, to the financial statements for the Non-Reliance Periods.

> The Company has assessed the materiality of these errors in accordance with the U.S. Securities and Exchange Commission Staff

Accounting Bulletin No. 99 ("SAB"), Materiality and SAB No. 108, Quantifying Financial Statement Misstatements, and has concluded that the prior financial statements referenced above should be restated.

152.    Then, on January 10, 2024, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its Quarterly Report on Form 10-Q for the period ended November 26, 2023, as it continued to finalize the restatement of certain previously issued consolidated financial statements "and the preparation and review processes in support of the Annual Report on Form 10-K for the fiscal year ended May 28, 2023 [] and of the Quarterly Report on Form 10-Q for the period ended August 27, 2023 [], which delay could not be eliminated by the Company without unreasonable effort and expense."

153.    On this news, Lifecore's stock price fell $0.28 per share, or 3.98%, to close at $6.75 per share on January 11, 2024.

154.    Further, on January 12, 2024, Lifecore issued a press release announcing that the Company received a third notification letter from the Listing Qualifications Department of NASDAQ indicating that "as a result of the Company's delay in filing its Quarterly Report on Form 10-Q for the fiscal quarter ended November 29, 2023 [] and its continued delay in filing its Annual Report on Form 10-K for the period ended May 28, 2023 [] and its Quarterly Report on Form 10-Q for the fiscal quarter ended August 27, 2023 [] with the [SEC]" the Company was not in compliance with the requirements for continued listing under Nasdaq Listing Rule 5250(c)(1).

155.    On this news, Lifecore's stock price fell $0.11 per share, or 1.6%, to close at $6.76 per share on January 16, 2024.

156.    Then, on February 16, 2024 after three warning letters from NASDAQ, Lifecore issued a press release announcing that the Company received a Staff Delisting Determination from the Listing Qualifications Department of NASDAQ "notifying the Company that NASDAQ has initiated a process which could result in the delisting of the Company's securities from NASDAQ as a result of the Company not being in compliance with Nasdaq Listing Rule 5250(c)(1)." Specifically, Lifecore stated that the Staff Determination was issued "because the Company has not filed its Annual Report on Form 10-K for the fiscal year ended May 28, 2023 [] or its Quarterly Reports on Form 10-Q for the quarterly periods ended August 27, 2023 [] and November 29, 2023 [] by the Extension Deadline."

157.    On this news, Lifecore's stock price fell $0.16 per share, or 1.95%, to close at $8.03 per share on February 20, 2024.

**Lifecore Fully Admits the Scope of Its Issues**

158. On March 20, 2024, Lifecore filed its 2023 10-K, signed by Defendants Hall and Morberg, stating, in relevant part:

Management assessed the effectiveness of our internal control over financial reporting as of May 28, 2023. In making this assessment, which was conducted under the supervision and with the participation of management, including our Chief Executive Officer and Chief Financial Officer, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control – Integrated Framework (2013). As part of our annual assessment, ***management has concluded that we did not design and operate effective internal controls***, as detailed below.

The Company has identified deficiencies in the internal control over financial reporting that aggregated to material weaknesses in the following components of the COSO framework:

55

a. Control Environment – maintaining a sufficient complement of personnel to timely support the Company's internal control objectives and ensuring personnel conduct internal control related responsibilities;

b. Risk Assessment - identification and assessment of risks and changes in the business model resulting from recent disposition activities that impacted the design of control activities, including the precision of management review controls, and the completeness of controls required to support the financial reporting framework;

c. Information and Communication - Design of controls to validate the completeness and accuracy of information used in the performance of control activities; and

d. Monitoring – As a result of the material weaknesses described above, the Company failed to design and implement certain monitoring activities that were responsive to timely identification and remediation of control deficiencies.

*As a result of the material weaknesses in the COSO components identified above, the control activities were ineffective and represent a material weakness.* Additionally, *material errors in the Company's financial statements were identified*, primarily relating to the areas of inventory valuation, the capitalization of interest on assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and the write off of other receivables of the Company's former Curation Foods businesses that were not collectible prior to the fiscal year periods presented in the consolidated financial statements.

The material weaknesses contributed to the restatement of the Company's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 and May 30, 2021, and the condensed consolidated financial statements for the interim periods ended August 30, 2020, November 29, 2020, February 28, 2021, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023.

The material weaknesses previously identified related to the accounting for and classification of certain non-standard transactions, which included discontinued operations, restructuring costs, and indefinite-lived and long-lived asset impairment tests for the year ended May 29, 2022 continued to exist as of May 28, 2023 and are included and appropriately

reside within the material weaknesses relating to components of the COSO framework as described above.

159.    The 2023 10-K also stated the following, in pertinent part, about the

restatement adjustments for each segment:

The following descriptions of the restatement adjustments within the respective Non-Reliance Periods exclude a description of errors previously identified and concluded as immaterial that were also corrected as part of the restatement. The more significant adjustments to the Lifecore segment financial statements, are described as follows:

1.  The Company restated the Lifecore segment revenues and cost of sales in FY22 and FY21 to gross up revenues and cost of sales for certain performance obligations the Company acted as a principal in the arrangements.

2.  The Company restated inventories and cost of sales to write down inventories to their net realizable value in FY22 and FY21 which reduced inventories and increased cost of sales during those periods.

3.  The Company restated property and equipment and interest expense to record capitalized interest on assets under construction in FY22 and FY21 which increased property and equipment and reduced interest expense during those periods.

4.  The Company restated FY21 opening retained earnings to account for the cumulative effect of the above restatements.

The more significant restatement adjustments to the Company's former Curation Foods segment financial information is described as follows:

1.  The Company restated FY21 opening retained earnings related to its former Curation Foods businesses non-current other receivables that were not collectable prior to the fiscal year periods presented in the consolidated FY23 financial statements.

2.  The Company restated the presentation of certain operating costs and expenses of continuing operations and discontinued operations affecting FY22 and FY21.

In addition to the errors described above, the Company corrected certain items that were previously uncorrected and immaterial adjustments to prior periods, but are now being corrected as a part of the restatement.

160. That same day, Lifecore also filed a Form 8-K which contained a supplementary summary of select financial data related to its ongoing Lifecore business and the adjustments required to the previously reported amounts pertaining to the Lifecore business.

161. On this news, Lifecore's stock price plummeted $2.18 per share, or 30.32%, to close at $5.01 per share on March 20, 2024.

162. The issues concerning Lifecore's internal control over financial reporting persisted even after the end of the Class Period. On April 8, 2024, Lifecore revealed in a filing with the SEC that, as a result of the requirement to restate the Prior Financial Statements, it "could not complete the filing of its Quarterly Report on Form 10-Q for the period ended February 25, 2024[,]" and on April 19, 2024, Lifecore issued a press release announcing that the Company had received a fourth notice from NASDAQ stating that "the Nasdaq Hearings Panel would consider the delinquency in the filing of the Q3 Form 10-Q in rendering its determination regarding the Company's continued listing on Nasdaq Global Select Market."

163. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**ADDITIONAL FACTS PROBATIVE OF SCIENTER**

164.    During the Class Period, Defendants recklessly failed to maintain proper internal controls over financial reporting. Defendants did not properly account for inventory valuation, the capitalization of interest on assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and the write off of other receivables of the Company's former Curation Foods businesses, as reflected in the tables on pages 20-21. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

165.    Additionally, Defendants were reckless in their restatement efforts. In the 2022 10-K, Defendants assured the investing public that, "management has corrected the error in its interim financial statements." However, the purportedly 'corrected' financial statements would have to be restated. Defendants' failure to maintain proper internal controls was so severe and reckless that it necessitated numerous restatements for certain periods, resulting in multiple error-laden financial statements for the same period. Additionally, despite numerous opportunities to catch errors in their financial statements throughout the Class Period, Defendants recklessly failed to recognize the errors in the majority of their financial statements until Restatement No. 3.

166.    Furthermore, the scope of errors in Lifecore's financial statements speaks to how recklessly the financial statements were prepared. The Company's failure to follow GAAP enabled it to understate its operating loss, pre-tax loss from continuing operations,

and net loss per share from continuing operations by as much as 73.9%, 26.8%, and 36.8%, respectively. On the other end, the same metrics were overstated by as much as 33.3%, 28.2%, and 27.5% respectively. Meanwhile, Lifecore segment's gross profits were overstated by as much as 17.4% and understated by as much as 28.9%, Lifecore segment gross profit margins were overstated by as much as 18.3% and understated by as much as 28.4%, and Curation Foods segment gross profits were overstated by as much as 214.3% and understated by as much as 244.3%. The sheer magnitude of errors is demonstrative of Lifecore's reckless accounting practices.

167.    On January 18, 2021, Defendant McLaughlin parted ways with the Company. On August 10, 2022, a month before Restatement No. 1, Defendant Bolles resigned as the Company's CEO. On March 20, 2024, the same day as Restatement No. 3, the Company announced that Defendant Hall would be stepping down as CEO in May 2024. These resignations, especially of Defendants Bolles and Hall, are probative of scienter because, upon information and belief, their recklessness led to Lifecore's repeated financial errors, leading in turn to their departure.

168.    On March 26, 2024, Lifecore filed a Form 8-K with the SEC, which stated in pertinent part that Lifecore's independent registered public accountant, Ernst & Young LLP, "determined that it declined to stand for reappointment as the Company's independent registered public accounting firm for the Company's fiscal year ending May 26, 2024." Auditors regularly decline to be reappointed when they disagree with a company's accounting treatments or believe that management is not acting with integrity. Here, Plaintiffs believe that E&Y's decision to drop its client was the result of Lifecore's

recklessly prepared financial statements resulting in numerous restatements, including multiple restatements for certain periods.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

169.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"), and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein; the officers and directors of the Company, at all relevant times, and the members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Defendants have or had a controlling interest.

170.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Lifecore securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Lifecore or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

171.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

172.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

173.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lifecore;

- whether the Individual Defendants caused Lifecore to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lifecore securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

174.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

175.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lifecore securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Lifecore securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

176.    Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

177.    Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

178.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

179.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

180.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lifecore securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Lifecore securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

181.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of

the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lifecore securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lifecore's finances and business prospects.

182.    By virtue of their positions at Lifecore, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

183.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As officers of Lifecore, the Individual Defendants had knowledge of the details of Lifecore's internal affairs.

184.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the

statements of Lifecore. As officers of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lifecore's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Lifecore securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Lifecore's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Lifecore securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

185. During the Class Period, Lifecore securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lifecore securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Lifecore securities was substantially lower than the prices paid by Plaintiffs and the other

members of the Class.  The market price of Lifecore securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

186.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

187.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

188.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

189.    During the Class Period, the Individual Defendants participated in the operation and management of Lifecore, and conducted and participated, directly and indirectly, in the conduct of Lifecore's business affairs.  Because of their senior positions, they knew the adverse non-public information about Lifecore's misstatement of income and expenses and false financial statements.

190.    As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lifecore's financial

condition and results of operations, and to correct promptly any public statements issued by Lifecore which had become materially false or misleading.

191.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lifecore disseminated in the marketplace during the Class Period concerning Lifecore's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lifecore to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Lifecore within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lifecore securities.

192.    Each of the Individual Defendants, therefore, acted as a controlling person of Lifecore.  By reason of their senior management positions of Lifecore, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lifecore to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Lifecore and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

193.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lifecore.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.    Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: January 24, 2025              **LOCKRIDGE GRINDAL NAUEN PLLP**


By:  */s/ Robert K. Shelquist*
Robert K. Shelquist (#021310X)
Gregg M. Fishbein (#0202009)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
rkshelquist@locklaw.com
gmfishbein@locklaw.com

*Liaison Counsel to Plaintiffs and the*
*Proposed Class*

**POMERANTZ LLP**

By: */s/ Brenda Szydlo*
Jeremy A. Lieberman (*pro hac vice*)
Brenda Szydlo (*pro hac vice*)
Dean Paul Ferrogari (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
(212) 661-1100
jalieberman@pomlaw.com
bszydlo@pomlaw.com
dferrogari@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Phillip Kim*
Phillip Kim (*pro hac vice*)
Ha Sung (Scott) Kim (*pro hac vice motion forthcoming*)
275 Madison Avenue, 40th Floor
New York, New York 10016
(212) 686-1060
philkim@rosenlegal.com
skim@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
(312) 984-0000
malmstrom@whafh.com

*Additional Counsel for Plaintiff Hugh Robert Holmes*

70