**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| DAVID CAREW, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIFECORE BIOMEDICAL, INC., ALBERT D. BOLLES, JAMES G. HALL, BRIAN MCLAUGHLIN, and JOHN MORBERG,<br><br>Defendants. | Civil File No. 0:24-cv-03028 (LMP/JFD)<br><br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 4

      A.    Landec Divests Its Curation Foods Business And Rebrands As
            Lifecore ........................................................................................................ 4

      B.    Lifecore Works With EY To Classify And Audit Its Changing
            Assets ........................................................................................................... 5

      C.    Lifecore Restates Two Financial Periods And Discloses A Material
            Weakness In Its Internal Controls ................................................................ 6

      D.    Lifecore Reiterates Its Internal Control Weakness ...................................... 7

      E.    Lifecore Sells The Last Curation Foods Assets And Remediates Its
            Accounting Issues ........................................................................................ 8

      F.    Lifecore Completes The Remediation, Restates Its Financials, And
            Avoids Delisting ........................................................................................... 9

III.  PLAINTIFFS' 10(B) CLAIM SHOULD BE DISMISSED ..................................... 9

      A.    Plaintiffs Challenge Four Categories of Statements ................................. 10

      B.    Plaintiffs Fail To Allege Any Materially False Or Misleading
            Statement .................................................................................................... 11

            1.    Plaintiffs Fail To Allege The Disclosure Evaluation
                  Statements And SOX Certifications Were False When Made ........ 13

            2.    Plaintiffs Fail To Plead Particularized Facts Challenging The
                  Allegedly Misstated GAAP Financials .......................................... 15

            3.    Defendants Forward-Looking Remediation Statements Are
                  Not Actionable ............................................................................... 17

      C.    Plaintiffs' Allegations Do Not Give Rise To A "Strong Inference"
            That Defendants Acted With Scienter ........................................................ 19

            1.    Plaintiffs' Allegations About Lifecore's Restatements Do Not
                  Raise A Strong Inference Of Scienter .......................................... 20

2.  Leadership Transitions Do Not Support An Inference Of Scienter ...................................................................................... 23

3.  Plaintiffs' Conclusory Allegations About EY's Decision Not To Stand For Reappointment Are Insufficient ............................... 24

D.  Plaintiffs Fail To Connect The Claimed Loss With The Alleged Misstatements ............................................................................. 25

E.  Plaintiffs' Section 20(a) Claim Necessarily Fails ...................................... 28

IV.  CONCLUSION ....................................................................................... 28

**TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Diabat v. Credit Suisse Grp. AG,*
   2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024)............................................................... 17

*Dura Pharms., Inc. v. Broudo*
   544 U.S. 336 (2005).................................................................................passim

*Elam v. Neidorff,*
   544 F.3d 921 (8th Cir. 2008) ............................................................2, 13, 14

*Ferris, Baker Watts, Inc. v. Ernst & Young, LLP,*
   395 F.3d 851 (8th Cir. 2005) .................................................................. 12, 16

*In re 3M Co. Sec. Litig.,*
   2021 WL 4482987 (D. Minn. Sept. 30, 2021)..................................... 12, 16, 19

*In re Apogee Enterprises, Inc. Sec. Litig.,*
   2020 WL 1445856 (D. Minn. Mar. 25, 2020) ................................... 10, 20, 21

*In re Best Buy Co., Inc. Sec. Litig.,*
   2005 WL 839099 (D. Minn. Apr. 12, 2005)................................................ 18

*In re Buca Inc. Sec. Litig.,*
   2006 WL 3030886 (D. Minn. Oct. 16, 2006) .......................................22, 26

*In re Ceridian Corp. Securities Litigation,*
   542 F.3d 240 (8th Cir. 2008) ........................................................3, 20, 21, 22

*In re Cornerstone Propane Partners, L.P Sec. Litig.,*
   335 F. Supp. 2d 1069 (N.D. Cal. 2005) ..................................................... 23

*In re Interpool, Inc. Sec. Litig.,*
   2005 WL 2000237 (D.N.J. Aug. 17, 2005) ................................................ 23

*In re K-tel Int'l, Inc. Sec. Litig.,*
   300 F.3d 881 (8th Cir. 2002) .........................................................15, 16, 21

*In re Lottery.com, Inc. Sec. Litig.,*
   715 F. Supp. 3d 506 (S.D.N.Y. 2024)......................................................... 13

*In re Navarre Corp. Sec. Litig.,*
   299 F.3d 735 (8th Cir. 2002) ...........................................................passim

*In re Synovis Life Techs., Inc. Sec. Litig.*,
2005 WL 2063870 (D. Minn. Aug. 25, 2005) ..............................................23, 24

*In re Target Corp. Securities Litigation*,
275 F. Supp. 3d 1063 (D. Minn. July 31, 2017) .....................................12, 15

*Iowa Pub. Employees' Ret. Sys. v. MF Glob., Ltd.*,
620 F.3d 137 (2d Cir. 2010)....................................................................17

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).................................................................................20

*Julianello v. K-V Pharm. Co.*,
791 F.3d 915 (8th Cir. 2015) ....................................................13, 17, 18

*Mart v. Tactile Sys. Tech., Inc.*,
595 F. Supp. 3d 788 (D. Minn. 2022).....................................................21

*McAdams v. McCord*,
584 F.3d 1111 (8th Cir. 2009) ................................................................26

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ................................................................25

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ......................................................17

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
122 F.4th 28 (2d Cir. 2023) ....................................................................13

*Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*,
2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) .........................................25

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015).............................................................................12, 15

*Perez v. Target Corp.*,
2024 WL 4804656 (D. Minn. Nov. 15, 2024) .......................................12, 28

*Podraza v. Whiting*,
790 F.3d 828 (8th Cir. 2015) ............................................................passim

*Rand-Heart of New York, Inc. v. Dolan*,
812 F.3d 1172 (8th Cir. 2016) ................................................................27

*Rochester Laborers Pension Fund v. Monsanto Co.*,
  883 F. Supp. 2d 835 (E.D. Mo. 2012).....................................................................20, 21

*Shalala v. Guernsey Mem'l Hosp.*,
  514 U.S. 87 (1995) .................................................................................................15, 16

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................. 1, 4, 10

*Trustees of Welfare & Pension Funds of Loc. 464A - Pension Fund v. Medtronic PLC*,
  726 F. Supp. 3d 938 (D. Minn. 2024) ....................................................................... 13,

*United States v. Basin Elec. Power Coop.*,
  248 F.3d 781 (8th Cir. 2001) ........................................................................................ 15

## STATUTES

15 U.S.C. § 78u-4(b)(1)................................................................................................... 10

15 U.S.C. § 78u-5(c)........................................................................................................ 17

15 U.S.C. § 78u-5(c)(1)(B).............................................................................................. 19

## RULES

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 10

Fed. R. Civ. P. 9(b).......................................................................................................... 10

## REGULATIONS

17 C.F.R. § 229.601(b)(31)(i) ..........................................................................................5

17 C.F.R. § 240.10b-5 ...........................................................................................9, 20, 28

## I.    INTRODUCTION

Lifecore Biomedical ("Lifecore" or the "Company") is a Contract Development and Manufacturing Organization ("CDMO") that partners with pharmaceutical companies to develop and manufacture sterile, injectable pharmaceutical products.  At the start of the alleged Class Period, October 7, 2020 through March 19, 2024, the Company, then known as Landec Corporation ("Landec"), had two major operating segments—(1) Lifecore, the CDMO business, and (2) Curation Foods, Inc. ("Curation Foods"), a lower-margin health foods business with multiple brands.  Prior to the start of the class period, the Company had decided to sell its Curation Foods assets and focus on Lifecore.  This transition was harder than anticipated—it took over three years to sell Curation Foods' assets and address accounting issues that arose from the divestment.  Ultimately, the Company rebranded as Lifecore and focused on growing its CDMO business.

Plaintiffs' Amended Complaint ("AC") asserts that Lifecore's restatement of financial results during this transition reveals securities fraud, but the allegations fail to meet the unique and rigorous pleading requirements that apply to securities law claims. "As a check against abusive litigation by private parties, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA)."  *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  Among other control measures, Congress imposed "[e]xacting pleading requirements" and a stay on all discovery unless Plaintiffs can allege with particularity "facts constituting the alleged violation" and facts raising a strong inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 313-14.  In order to make this comparative assessment, the court must consider the complaint along with "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* at 322.

Plaintiffs challenge four categories of statements over the nearly three-and-a-half-year alleged Class Period: (1) statements that Lifecore had evaluated its internal controls and found them effective, (2) Sarbanes-Oxley Act ("SOX") certifications stating that, based on the Company's officer's knowledge, the reported financials fairly represent the

1

financial condition of the Company, (3) periodic financial figures, and (4) statements about Lifecore's remediation plans.  Plaintiffs allege that accounting errors under Generally Accepted Accounting Principles ("GAAP") identified in later financial restatements show that the challenged statements were false and made with the intent to defraud, but Plaintiffs have not identified any confidential witnesses, contemporaneous reports contradicting the Company's disclosures, insider stock sales, or adverse market conditions purportedly known by Lifecore's officers.  In response to similar claims, the Eighth Circuit has consistently held that "[a]llegations of GAAP violations are insufficient, standing alone, to raise an inference of scienter." *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 745 (8th Cir. 2002).

The Amended Complaint fails to plead falsity, scienter, or loss causation under the established standards.  First, Plaintiffs allege no particularized facts supporting falsity. Two categories of challenged statements—the statements regarding internal control evaluations and SOX certifications—are statements of opinion because they are expressly based on the knowledge of the speaker.  Without contemporaneous facts indicating that the speaker did not hold the expressed belief at the time of the statement, these opinion statements are inactionable.  Plaintiffs likewise fail to plead falsity with respect to the periodic financial figures because they did not allege "contemporaneous reports, witness statements, or any information that had actually been provided to defendants" contradicting the reported numbers.  Certain financial figures were restated, but the PSLRA standard "cannot be satisfied with allegations that defendants made statements 'and then showing in hindsight that the statement is false.'" *Elam v. Neidorff*, 544 F.3d 921, 927 (8th Cir. 2008).  Plaintiffs also fail to plead actionably false remediation statements because each remediation statement is forward-looking and accompanied by meaningful cautionary language, and because Plaintiffs do not plead facts showing that Defendants had "actual knowledge" that the statements were false when made.

Second, Plaintiffs claims independently warrant dismissal for failure to meet the exacting standard for pleading scienter under the PSLRA.  Plaintiffs plead no facts,

2

particularized or otherwise, suggesting that any Defendant knew the statements were false at the time. Instead, Plaintiffs assume such knowledge based on the existence of multiple restatements, along with the scope and "sheer magnitude" of the restatements. The Eighth Circuit has rejected this exact argument. Applying *Tellabs*, the Eighth Circuit held that absent something more than the restatement of financials, "the opposing inference of nonfraudulent intent—that these were mistakes by accounting personnel undetected because of faulty accounting controls—is simply more compelling." *In re Ceridian Corp. Securities Litigation*, 542 F.3d 240, 246 (8th Cir. 2008). Here, Lifecore was faced with complex accounting issues arising from its disposition of multiple brands within its Curation Foods business. Lifecore worked with its independent public accountant, EY, and tried to properly present the various changes from its discontinued operations. When it identified errors, it informed the market and took appropriate steps to correct the inaccuracies. The alleged restatements are insufficient to raise a strong inference of scienter. Plaintiffs' few other scienter allegations do not change this result. Courts have repeatedly held that the departure of corporate officers or a change in accounting firms does not raise a strong inference of scienter. This is especially true here, where the timing and circumstances surrounding these changes contradicts any inference of fraud.

Third, Plaintiffs' inconsistent loss causation allegations undermine any causal connection between Defendants' misstatements and Plaintiffs' losses. Plaintiffs do not allege any stock price decline from one of the alleged "partial corrections," which negates allegations of a "gradually disclosed" fraud. Instead, Plaintiffs allege stock price declines following announcements of previously disclosed information, or new information unrelated to the alleged misstatements. The federal securities laws, however, do not provide investors with broad insurance against market losses when stock prices decline. And declines following announcements of previously disclosed information, elaborations on such disclosures, or information unrelated to the alleged misstatements, are not recoverable.

The Amended Complaint should be dismissed.

3

## II.    STATEMENT OF FACTS[1]

### A.    Landec Divests Its Curation Foods Business And Rebrands As Lifecore

Before the Class Period, Landec was a diversified health company with two distinct business segments: Curation Foods and Lifecore.  AC ¶ 2.  Curation Foods had a portfolio of natural food brands including Eat Smart, Windset, O Olive Oil and Vinegar, and Yucatan Foods.  *Id.*  ¶¶ 2-3, 76.  Lifecore was Landec's CDMO business, specializing in innovative pharmaceutical drug injectables.  *Id.* ¶ 2.

In January 2020, Landec announced a strategic decision to divest Curation Foods and focus on the high-growth Lifecore business.  *Id.* ¶ 3; Ex. 1.  The transition involved selling each Curation Foods' brands and shifting to executives with broader experience outside of just the natural foods industry.  *See* AC ¶¶ 3, 44-47, 76.  Landec's public disclosures during the alleged Class Period described this transition.  Among other things, Landec announced the retirement of CFO Brian McLaughlin on January 19, 2021 (AC ¶ 46; Ex. 2), the disposition of its Windset Farms investment on July 1, 2021 (AC ¶ 76), the sale of its Eat Smart business on December 13, 2021 (*id.* ¶ 76), the rebranding of the Company as Lifecore and the transition of Albert Bolles from CEO "to President of Curation Foods, Inc. to oversee the remaining disposition activities" on August 10, 2022 (*id.* ¶¶ 3, 167; Ex. 3 at Ex. 99.2), the disposition of its Yucatan Foods business on February 7, 2023 (AC ¶ 76), and the sale of its O Olive brand on April 16, 2023 (*id.*).  When McLaughlin left in January 2021, John Morberg became CFO.  *Id.* ¶¶ 46-47.  And when Albert Bolles transitioned to the President of Curation Foods, James Hall became Lifecore's CEO.  *Id.* ¶¶ 44-45.

---

[1] The Statement of Facts is drawn from the AC as well as judicially noticeable public documents and documents incorporated by reference into the AC, which are properly considered in ruling on a motion to dismiss under the federal securities laws.  *Tellabs*, 551 U.S. at 322.

### B.      Lifecore Works With EY To Classify And Audit Its Changing Assets

Throughout this transition, Lifecore[2] filed periodic reports disclosing its financial results.  As part of each filing, Lifecore included required disclosures about management's "Evaluation of Disclosure Controls and Procedures" and attached signed certifications under the Sarbanes-Oxley Act of 2002 ("SOX Certifications").  *See, e.g.*, Ex. 4 at 33-34, Exs. 31.1, 31.2, 32.1, 32.2; Ex. 5 at 33-34, Exs. 31.1, 31.2, 32.1, 32.2. Before discovering any material weaknesses in its internal controls, the Evaluation of Disclosure Controls and Procedures stated that, based on management's evaluation, the CEO and CFO concluded disclosure controls were effective in ensuring timely recording and reporting of information required to be disclosed under the Exchange Act.  AC ¶¶ 83, 86, 89, 92, 95, 99, 103.   The accompanying SOX Certifications, filed in accordance with 17 CFR § 229.601(b)(31)(i), indicate that the signing officer reviewed the annual or quarterly report and, based on the officer's knowledge, the report does not contain any untrue statements or omissions of material fact and fairly presents the financial condition of the Company. *See, e.g.*, Ex. 4 at Exs. 31.1, 31.2; Ex. 5 at Exs. 31.1, 31.2.

Lifecore addressed various challenges with its financial reporting and internal controls during its transition.  Among the challenges was the application of unique and complex accounting rules affecting the Curation Foods divestitures.  AC ¶ 4.  When a company has both continuing and discontinued operations, various intersecting accounting rules impact the segmentation, calculation, and presentation of current and past financial results.  *See id.* ¶¶ 58-72.  Lifecore worked with EY to audit the financials, including the constantly changing assets and expenses related to the divestments.  *Id.* ¶ 168.

---

[2] The Company completed its corporate name change from Landec to Lifecore on November 14, 2022 (AC n.1), and is called Lifecore through the remainder of this memorandum for ease of reference.

### C. Lifecore Restates Two Financial Periods And Discloses A Material Weakness In Its Internal Controls

On September 14, 2022, Lifecore announced that its previously issued financial statements from the third and fourth quarter of 2022 were no longer reliable because of classification errors related to recent disposition activities and the corporate transition. *See* Ex. 7 at 2. On the same day, Lifecore issued its fiscal year 2022 annual report,[3] which corrected financial disclosures from the prior two reporting periods with minor reclassifications of expenses, fees, and costs related to the sale of Eat Smart and the corporate transition. *See* AC ¶¶ 109-10; Ex. 5 at 34-35. EY reviewed these restated financials and certified preparation "in accordance with generally accepted accounting principles." Ex. 5 at 38-40.

The 2022 annual report also disclosed a material weakness in Lifecore's internal controls over financial reporting for non-standard transactions, including discontinued operations and certain restructuring costs. AC ¶ 109; Ex. 5 at 34-35. Specifically, the Company disclosed that "management has concluded that we did not design and operate effective internal controls over the completeness and accuracy of the accounting for non-standard transactions," including its sales of the various Curation Foods assets. AC ¶ 109; Ex. 5 at 34. The 2022 annual report warned that because of the material weaknesses, there was a "reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis." Ex. 5 at 34. It disclosed that management was "evaluating remediation activities related to our non-standard transaction processes." *Id.* at 35; AC ¶ 116. Finally, the 2022 annual report included EY's independent findings, which stated, "[i]n [EY's] opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company at May 29, 2022 and May 30, 2021." Ex. 5 at 38. None of these corrections or disclosures

---

[3] The Company's fiscal year is the 52- or 53-week period that ends on the last Sunday of May each year, with quarters ending on the last Sunday of August, November, and February. Ex. 4 at 6. The exact closing date varies year-by-year. *Id.*

materially impacted Lifecore's stock price, which actually increased on September 14, 2022, opening at $9.86 and closing at $9.89.  *See* Ex. 8.

**D.     Lifecore Reiterates Its Internal Control Weakness**

On October 7, 2022, Lifecore again disclosed that its "disclosure controls and procedures were not effective as of August 28, 2022, due to the material weakness in internal control over financial reporting that was disclosed in the [2022 10-K]."  AC ¶ 120. Then, on January 9, 2023, Lifecore disclosed that it was unable to timely file its quarterly report for the second quarter of fiscal year 2023 because it was still evaluating the proper treatment of non-cash impairment charges related to Curation Foods.  *Id.* ¶ 126.  It disclosed two days later that the Company had received a notification from NASDAQ that it had not complied with the timing requirements for filing its periodic reports.  *Id.* ¶ 127. Lifecore ultimately filed its quarterly report for the second quarter of fiscal year 2023 on March 16, 2023.  *Id.* ¶ 131; Ex. 4.

With this quarterly report, Lifecore issued its second restatement, which included its amended 2022 annual report and amended quarterly report for the first quarter of 2023. *See* AC ¶ 134; Ex. 9; Ex. 10.  The primary adjustment was the recognition of a $17.4 million impairment charge reducing the value of the buildings, improvements, equipment, and goodwill associated with the Yucatan Foods brand that had been sold on February 7, 2023, about one month before the restatement.  AC ¶¶ 134-36.

The March 16, 2023 filings reiterated Lifecore's existing material weaknesses related to the classification of non-standard transactions and disclosed another material weakness related to the "assessment of recoverability and measurement of fair value of certain indefinite-lived and long-lived assets"—such as the physical properties associated with Lifecore's natural foods businesses.  AC ¶ 132; *see* Ex. 9 at 38-40; Ex. 10 at 36. Lifecore explained it was developing plans to remediate the material weaknesses.  AC ¶ 132; Ex. 4 at 34; Ex. 9 at 38-40; Ex. 10 at 36-37.  But the Company again warned that the material weaknesses created a reasonable possibility that it would not prevent a material

misstatement in financial statements. Ex. 9 at 16, 39. Included in the amended 2022 annual report was EY's audit report, stating "[i]n our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company." *Id.* at 43-45.

### E.    Lifecore Sells The Last Curation Foods Assets And Remediates Its Accounting Issues

After selling its last remaining Curation Foods brand, O Olive, on April 6, 2023, Lifecore focused on its remediation of the accounting issues from discontinued operations. Lifecore could not, however, timely complete its quarterly report filing obligation for the third quarter of its 2023 fiscal year, which it disclosed on April 10, 2023. AC ¶ 140. This quarterly report was filed on June 2, 2023, disclosing that Lifecore's disclosure controls and procedures were not effective because of the previously disclosed material weaknesses. *Id.* ¶ 141.

Over the next nine months, Lifecore's work with EY on remediation of material weaknesses identified other accounting issues. Lifecore disclosed on August 14, 2023, October 10, 2023, and January 10, 2024, that it could not complete the timely filing of its quarterly reports. *Id.* ¶¶ 144, 149, 152. On October 31, 2023, Lifecore announced that the Company's financial reports from periods going back to the first quarter of Lifecore's fiscal year 2021 should not be relied on and would need to be restated. *Id.* ¶ 151. Lifecore also disclosed on August 22, 2023 and January 12, 2024, that due to its inability to timely file its quarterly reports, it had received notices from NASDAQ that it did not comply with NASDAQ listing qualifications. *Id.* ¶¶ 146, 154. And on February 16, 2024, Lifecore announced that NASDAQ had initiated a process that could result in delisting the Company's securities because Lifecore had not yet filed the required quarterly reports. *Id.* ¶ 156.

F.    **Lifecore Completes The Remediation, Restates Its Financials, And Avoids Delisting**

On March 20, 2024, Lifecore issued its third restatement, addressing errors related to certain adjustments involving the calculation of capitalized interest, valuation of inventories, and previously divested businesses. AC ¶ 158-59; Ex. 6 at 109. Impacted financials included quarterly and annual reports going back to the first quarter of Lifecore's fiscal year 2021. AC ¶ 158-59; Ex. 6 at 109. The most significant restatements related to Lifecore's divestiture of Curation Foods assets and transition to a CDMO business. AC ¶ 159; Ex. 6 at 109. On that same day, Lifecore announced that Jim Hall would retire as President and Chief Executive Officer ("CEO"), to be replaced by Paul Josephs, who had thirty years of pharmaceutical experience and twenty-five years in the CDMO business. AC ¶ 167; Ex. 11 at Ex. 99.1. It was disclosed that Hall would continue to support Josephs for twelve months in an advisory capacity. Ex. 11 at Ex. 99.1.

Less than a week later, on March 26, 2024, Lifecore announced that EY declined to stand for reappointment as the Company's independent registered public accounting firm. AC ¶ 168; Ex. 12. EY confirmed there were no disagreements or reportable events during the 2022 and 2023 fiscal years, except for EY's adverse opinion on the Company's internal controls. Ex. 12.

## III.    PLAINTIFFS' 10(B) CLAIM SHOULD BE DISMISSED

To bring a claim under Section 10(b) of the Exchange Act, Plaintiffs must allege: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation. *Dura Pharms., Inc. v. Broudo* 544 U.S. 336, 341-42 (2005). Section 10(b) claims are subject to the PSLRA's unique and rigorous pleading requirements, which go "beyond the ordinary pleading requirements

9

described in Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure." *In re Apogee Enterprises, Inc. Sec. Litig.*, 2020 WL 1445856, at \*7 (D. Minn. Mar. 25, 2020). Plaintiffs must "specify each statement alleged to have been misleading," the "reasons why the statement is misleading," and, if an allegation "is made on information and belief," "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

The PSLRA also requires Plaintiffs to state with particularity facts supporting a strong inference of scienter, that is, an "intent to deceive, manipulate, or defraud*." Tellabs*, 551 U.S. at 319; *Podraza v. Whiting*, 790 F.3d 828, 836 (8th Cir. 2015). Under this "exacting" burden, Plaintiffs must plead "highly unreasonable omissions or misrepresentations that . . . present a danger of misleading buyers or sellers which is either known to the defendant, or is so obvious that the defendant must have been aware of it." *Podraza*, 790 F.3d at 836 n.3.

Finally, Plaintiffs must allege "loss causation," i.e., a causal connection between the material misrepresentation and the recoverable loss. *Dura*, 544 U.S. at 342.

### A.   Plaintiffs Challenge Four Categories of Statements

The statements challenged in the Amended Complaint can be grouped into four categories:

- **Disclosure Evaluation Statements**: statements in quarterly reports indicating that "based on [management's] evaluation" of disclosure controls and procedures, the CEO and CFO have concluded that the disclosure controls and procedures are effective in ensuring timely processing and recording of information required to be disclosed under the Exchange Act. AC ¶¶ 83, 86, 89, 92, 95, 99, 103.

- **SOX Certifications**: certifications signed by Lifecore's executives, attesting that the officer reviewed the report and "based on the officer's knowledge" it

10

does not contain any untrue statements or omissions of material fact and fairly represents the financial condition of the Company. *Id.* ¶¶ 84, 87, 90, 93, 97, 101, 105, 118, 123, 133, 142.

- **Financial Reporting Statements**: financials that were restated to address classification of certain fees, costs, and expenses related to discontinued operations and valuation of certain assets. *Id.* ¶¶ 85, 88, 91, 94, 96, 98, 100, 102, 104, 106-08, 112-15, 121-22, 124, 137-38, 141, 148.

- **Remediation Statements**: statements about Lifecore's plans to remediate identified weaknesses in its internal controls over financial reporting. *Id.* ¶¶ 116, 132, 142.

### B.      Plaintiffs Fail To Allege Any Materially False Or Misleading Statement

Plaintiffs' Amended Complaint asserts that statements from nearly every SEC filing made by Lifecore over a nearly three-and-a-half year Class Period were false and misleading simply because Lifecore later issued restatements correcting the GAAP accounting of the underlying financials.  Plaintiffs allege that Disclosure Evaluation Statements, SOX Certifications, and Financial Reporting Statements between October 7, 2020 and September 14, 2022, were false and misleading because "Lifecore did not maintain effective disclosure controls and procedures." *Id.* ¶¶ 85, 88, 91, 94, 98, 102, 107. Plaintiffs also allege that later SOX Certifications, Financial Reporting Statements, and Remediation Statements were false or misleading because Lifecore did not correct all errors when it restated financials and did not disclose that remediation efforts would not be effective and would later cause delays in SEC filings. *Id.* ¶¶ 119, 125, 139, 143.

The Eighth Circuit makes clear that "[s]imply alleging that defendants made a particular statement at a given time . . . and then showing in hindsight that the statement is

11

false misses the [PSLRA's] pleading requirement." *In re Navarre*, 299 F.3d at 743. Rather, Plaintiffs must "indicate why the alleged misstatements would have been false or misleading at the several points in time in which it is alleged they were made." *Perez v. Target Corp.*, 2024 WL 4804656, at *9 (D. Minn. Nov. 15, 2024) (dismissing complaint for failure to plead falsity). Courts must disregard "catch-all" or "blanket" assertions not meeting the particularity requirements. *Ferris, Baker Watts, Inc. v. Ernst & Young, LLP*, 395 F.3d 851, 853 (8th Cir. 2005). "[S]weeping allegations disconnected from particular facts are insufficient to comply with the PSLRA's mandate that plaintiffs specify why statements were false or misleading at the time the statements were made." *In re Target Corp. Securities Litigation*, 275 F. Supp. 3d 1063, 1072 (D. Minn. July 31, 2017).

Plaintiffs' allegations fail to meet this standard with respect to each category of alleged misstatements. First, the Disclosure Evaluation Statements and SOX Certifications are statements of opinion, and Plaintiffs do not allege that the opinions were not honestly believed. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015) (dismissing claims where Plaintiff failed to allege an opinion was not honestly held). Second, with respect to the Financial Reporting Statements, Eighth Circuit courts dismiss claims based on GAAP restatements when, as here, Plaintiffs fail to identify which of the various accounting standards makes each statement false, which particular financial figures in the disclosed financials are inaccurate, and why those statements were false when made. *In re 3M Co. Sec. Litig.*, 2021 WL 4482987, at *9-10, *14, *21 (D. Minn. Sept. 30, 2021) (dismissing GAAP restatement claims that that did not allege why the financial figures were false when made). Third, the challenged remediation statements

12

are forward-looking statements, which are not actionable under the PSLRA's statutory safe harbor for forward-looking statements because they are accompanied by meaningful cautionary language and, separately, Plaintiffs fail to allege facts establishing "actual knowledge" of falsity at the time the statement was made. *See Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 921-22 (8th Cir. 2015) (dismissing claims implicating forward-looking statements under the PSLRA safe harbor).

### 1. Plaintiffs Fail To Allege The Disclosure Evaluation Statements And SOX Certifications Were False When Made

The Disclosure Evaluation Statements and SOX Certifications included with each periodic financial report indicate that "[b]ased on [management's] evaluation" or based on the knowledge of the officer, disclosure controls are effective or the financial statements fairly present the Company's condition. *See, e.g.*, Ex. 4 at 33-34, Exs. 31.1, 31.2; Ex. 5 at 33-35, Exs. 32.1, 32.2. Courts have held that SOX Certifications and similar statements that "are 'based on [the] knowledge' of the officer," are statements of opinion because they convey management's subjective judgments. *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 47 (2d Cir. 2023); *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 549-50 (S.D.N.Y. 2024) ("Each of the challenged statements in the SOX certifications is a statement of opinion."). "Subjective statements of opinion are generally not [actionable] unless they were both false and were not honestly believed when they were made." *Trustees of Welfare & Pension Funds of Loc. 464A - Pension Fund v. Medtronic PLC*, 726 F. Supp. 3d 938, 962 (D. Minn. 2024).

Pursuant to this standard, Eighth Circuit courts dismiss securities claims that "fail[] to point to any contemporaneous reports, witness statements, or any information that had

13

actually been provided to defendants" contradicting the challenged statements. *Elam*, 544 F.3d at 927. For example, in *Elam*, the company reported its net earnings in its quarterly report, and the CEO and CFO issued SOX certifications. *Id.* at 925. When the Company later announced disappointing earnings, plaintiffs alleged that the earnings statements were false because the Company had monitoring systems for applicable costs and must have known about the costs that drove the disappointing earnings numbers. *Id*. at 927. The Eighth Circuit affirmed dismissal of the complaint because plaintiffs "fail to allege any specific fact that would render the [earlier] statements false." *Id.*

Just as in *Elam*, Plaintiffs' allegations here fail to establish falsity because they do not plead contemporaneous, particularized information suggesting that the Disclosure Evaluation Statements and SOX Certifications were false when made. For the first two years of the alleged class period, Plaintiffs allege only that the challenged statements— made in nearly every quarterly (Form 10-Q) or annual (Form 10-K) report—were "false and/or misleading because Lifecore did not maintain effective disclosure controls and procedures." AC ¶¶ 85, 88, 91, 94, 98, 102, 107. For statements after September 14, 2022 when Lifecore issued its first, limited restatement, Plaintiffs only challenge falsity with the assertions that "further restatements would be required" and Lifecore's remediation efforts were ineffective. *Id.* ¶¶ 119, 125, 139, 143. No allegation suggests what issues had been identified at the time of the statements or how those issues impacted the underlying financials.

There is also no allegation that Lifecore had not evaluated the effectiveness of disclosure controls or that the CEO or CFO had not genuinely concluded that the controls

14

were effective at the time of their statements. *Omnicare*, 575 U.S. at 186 ("a sincere statement of pure opinion is not an 'untrue statement of material fact,'" regardless of whether the belief can ultimately be proved as wrong). As the Supreme Court has explained, "[b]ecause a statement of opinion admits the possibility of error, [it] remains true—and thus is not an 'untrue statement of [] fact'—even if the opinion turns out to have been wrong." *Id.* at 176. Lifecore's later restatements do not show that the officers' earlier statements of opinion were false under Eighth Circuit law. *In re Navarre*, 299 F.3d at 743; *see also In re Target*, 275 F. Supp. 3d at 1071 ("[M]erely pleading that the [opinion] must have been false mid-year because it conflicts with year-end facts—[is] an unsatisfactory explanation for 'why' the mid-year statement was false when made.").

### 2. Plaintiffs Fail To Plead Particularized Facts Challenging The Allegedly Misstated GAAP Financials

Plaintiffs claim that certain of Lifecore's quarterly and annual reports contained misstated financial figures due to a failure to follow GAAP. AC ¶¶ 74-75, 166. GAAP is "a series of general principles followed by accountants." *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 786 (8th Cir. 2001). There are nineteen sources for GAAP, including Accounting Principles Board opinions, Financial Accounting Standards Board Statements, and Accounting Research Bulletins, "any number of which might present conflicting treatments of a particular accounting question." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995). Far from being a "canonical set of rules that will ensure identical accounting treatment of identical transactions," GAAP "tolerate[s] a range of 'reasonable' treatments." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 890 (8th Cir. 2002). "When [] conflicts arise, the accountant is directed to consult an elaborate hierarchy

15

of GAAP sources to determine which treatment to follow." *Id.* "GAAP changes and, even at any one point, is often indeterminate." *Guernsey Mem'l Hosp.*, 514 U.S. at 101.

Over sixteen paragraphs and seven pages in the Amended Complaint, Plaintiffs attempt to summarize six accounting standards that applied to portions of Lifecore's financial statements over the three-and-a-half year Class Period. AC ¶¶ 57-72. Plaintiffs then try to combine the various accounting changes made over the course of three restatements into their own charts purporting to represent certain quarterly financial numbers covering three years of reporting periods. *Id.* ¶ 73, and charts on pages 23-24. But Plaintiffs fail to identify which of the various accounting standards makes each statement false, which particular financial figures in the disclosed financials are inaccurate, why the various financial figures are inaccurate, and whether the alleged misstatement impacted Lifecore's bottom line. *Id.* ¶¶ 85, 88, 91, 94, 98, 102, 107, 119, 125, 139, 143.

Plaintiffs do not meet the PSLRA pleading standard for falsity of GAAP accounting statements because they fail to indicate why the particular statements were false or misleading at the several points in time in which they were made. *In re Navarre*, 299 F.3d at 743; *see also In re 3M*, 2021 WL 4482987, at *9-10, *14, *21 (dismissing complaint because it did not contain specific factual allegations showing that the GAAP figures failed to satisfy the accounting rule at issue and did not allege facts showing the company had contemporaneous conflicting information). Plaintiffs catch-all statements that the statements were false "due to ineffective controls" are insufficient. *See Ferris*, 395 F.3d at 853.

16

### 3.     Defendants Forward-Looking Remediation Statements Are Not Actionable

Plaintiffs challenge Lifecore's statements that it has corrected errors and plans to remediate in a manner that will "both address the identified weaknesses and enhance our overall control environment." AC ¶¶ 116, 132, 142. As a preliminary matter, Plaintiffs have not identified anything false about the statement that Lifecore had corrected the errors it had identified. *Id.* ¶¶ 119, 139, 143. The remainder of the challenged Remediation Statements describe Lifecore's plans for remediating the internal controls weakness, which Plaintiffs allege was false because Lifecore did not prevent future errors. *Id.* ¶¶ 116, 119, 132, 139, 142, 143.[4]

To encourage companies to share corporate plans and expectations with shareholders, the PSLRA includes a safe-harbor provision protecting forward-looking statements. *Iowa Pub. Employees' Ret. Sys. v. MF Glob.*, Ltd., 620 F.3d 137, 141-42 (2d Cir. 2010) (explaining that PSLRA is meant to "encourage disclosure of forward-looking information"). Under the PSLRA's safe harbor, a defendant's forward-looking statements are nonactionable if they are accompanied by "meaningful cautionary language," are immaterial, or if a plaintiff fails to plead facts showing that the defendant had "actual knowledge" the statements were false when made. 15 U.S.C. § 78u-5(c); *see also K-V*

---

[4] To the extent Plaintiffs challenge the portion of Lifecore's Remediation Statements indicating that Lifecore would remediate "as quickly as possible" and is "committed to continuous improvement" (AC ¶¶ 116, 132, 142), the claims should be dismissed as challenging immaterial puffery. *See, e.g., Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at *48 (S.D.N.Y. Sept. 19, 2024) (statement that company was "committed to supporting further risk management improvements" is immaterial puffery); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 n.2 (N.D. Cal. 2014) (statements about resolving issues "as quickly as possible" are non-actionable puffery).

17

*Pharm. Co.*, 791 F.3d at 920-21. The key to determining whether a statement is forward-looking "is not the tense of the statement[, but] whether its truth or falsity is discernible only after it is made." *K-V Pharm*, 791 F.3d at 921. Because Lifecore's statements detailed plans and objectives for remediation, even the portions of the statements referencing Defendants' present effort toward the remediation goals are forward-looking under the PSLRA and qualify for safe harbor protections. *See In re Best Buy Co., Inc. Sec. Litig.*, 2005 WL 839099, at *3 (D. Minn. Apr. 12, 2005) (statements about plans and objectives are forward-looking).

Each challenged Remediation Statement was made in an SEC filing that included detailed risk factor disclosures cautioning that if the issues were not remediated, they "could adversely affect [the Company's] business." *See, e.g.*, Ex. 5 at 15; Ex. 4 at 35 (incorporating 2022 10-K/A risk factors). These disclosures explain that the implementation procedure for remediation is an ongoing process that "requires validation and testing of the design and operating effectiveness of internal controls over a sustained period of financial reporting cycles." Ex. 5 at 15. The disclosures also warn that Lifecore cannot "be certain that these measures will successfully remediate the material weakness or that other material weaknesses and control deficiencies will not be discovered in the future" and that if efforts did not succeed, the Company "may be unable to report [its] financial results accurately on a timely basis," which could result in delisting or stock price decline. *Id.* These disclosures specifically warn against the very allegations advanced by Plaintiffs. The Remediation Statements are not actionable under the PSLRA safe harbor. *Best Buy*, 2005 WL 839099, at *3-4.

18

In any event, challenges to the Remediation Statements should be dismissed because Plaintiffs plead no facts alleging Defendants' "actual knowledge" of falsity at the time the statements were made.  15 U.S.C. § 78u-5(c)(1)(B); *In re 3M*, 2021 WL 4482987, at *16. Merely pleading that these statements were false because remediation efforts were "ineffective," or that despite the remediation efforts Lifecore's financial statements "would need to be restated" (AC ¶¶ 117, 119, 125, 139, 143), cannot take the statements out of safe harbor protection.  *In re 3M*, 2021 WL 4482987, at *16 (finding no liability for "forward-looking statements" absent facts showing a defendant had "actual knowledge that the statements were false or misleading").

### C. Plaintiffs' Allegations Do Not Give Rise To A "Strong Inference" That Defendants Acted With Scienter

In their 68-page Amended Complaint, Plaintiffs include just five paragraphs dedicated to facts probative of scienter.  But even in these paragraphs, Plaintiffs do not allege any contemporaneous facts that could indicate an intent to deceive at the time the various statements were made.  Instead, Plaintiffs characterize Lifecore's accounting practices and internal controls as "reckless" because the Company was required to restate certain financial results.  AC ¶¶ 164-66.  Plaintiffs further allege that the scope, number, and magnitude of the restatements demonstrates severe recklessness that is indicative of a "scheme to defraud."  *Id.*  Finally, Plaintiffs allege that departure of corporate executives during the corporate transition process and EY's decision not to stand for reelection as independent public accountant must indicate that there were findings of fraud.  *Id.* ¶¶ 167-68.  None of these allegations meet Eighth Circuit standards for pleading scienter, which provides an independent reason for dismissal of the Amended Complaint.

Plaintiffs can meet their heavy scienter pleading burden by alleging particularized facts showing: (1) a conscious intent to deceive, manipulate, or defraud, (2) conduct reflecting severe recklessness, or (3) specific facts showing motive and opportunity. *Podraza*, 790 F.3d at 836. Without any confidential witnesses, contemporaneous reports contradicting the Company's disclosures, insider stock sales, or adverse market conditions purportedly known by Lifecore's officers, Plaintiffs rely on allegations regarding the scope and magnitude of the restatements to assert scienter under the severe recklessness prong. But even those allegations do not specify how the speakers of the challenged statements meet the recklessness standard. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-44 (2011) (a private claim under Rule 10b-5 can only be brought against the maker of the false or misleading statement). And the Eighth Circuit has specifically rejected the argument that allegations regarding the number, scope, and magnitude of restatements is sufficient to raise a strong inference of scienter. *Ceridian*, 542 F.3d at 246.

### 1.    Plaintiffs' Allegations About Lifecore's Restatements Do Not Raise A Strong Inference Of Scienter

To demonstrate scienter by alleging severe recklessness, Plaintiffs must plead "highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *In re Apogee*, 2020 WL 1445856, at *11. Omissions and misrepresentations alleged to be highly unreasonable must present a danger "which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.*

Plaintiffs first suggest that scienter should be assumed based solely on the restatement. But "the Eighth Circuit has rejected the argument that accounting errors or

restatements, in and of themselves, demonstrate scienter." *Rochester Laborers Pension Fund v. Monsanto Co.*, 883 F. Supp. 2d 835, 896 (E.D. Mo. 2012); *see also Medtronic PLC*, 726 F. Supp. 3d at 989 (finding internal control deficiencies and GAAP restatement allegations "far too conclusory to support a strong inference of scienter").

"The fact that GAAP violations are allegedly significant does not change this rule and is insufficient by itself to give rise to a strong inference of scienter." *Podraza*, 790 F.3d at 838; *K-Tel*, 300 F.3d at 895-96 (rejecting allegation that the sheer magnitude of GAAP violations gives rise to a strong inference of scienter). And "signed SOX certifications . . . do not demonstrate that [d]efendants knew or recklessly disregarded that [the company's] financial statement did not conform with GAAP." *In re Apogee*, 2020 WL 1445856, at *13. If it were otherwise, "scienter would be established in every case where there was an accounting error or auditing mistake by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." *Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788, 822 n.27 (D. Minn. 2022).

In *Ceridian*, plaintiffs alleged that the company's CEO, CFO, and Controller, "exploit[ed] a weak or corrupt system of internal controls" to commit many GAAP violations as part of a "massive accounting scheme" resulting in three restatements. 542 F.3d at 245 & n.2. The complaint alleged severe recklessness based on "dozens, if not hundreds, of accounting errors" in the restatements. *Id.* at 245. The Court, however, rejected plaintiffs' assertions that the "sheer number of violations, and the magnitude of the restatements," or the number of restatements gave rise to a strong inference of scienter. *Id.* at 246. It reasoned that unless plaintiffs allege specific facts giving rise to an inference

that defendants knew the internal accounting controls were deficient, "the opposing inference of nonfraudulent intent—that these were mistakes by accounting personnel undetected because of faulty accounting controls—is simply more compelling." *Id.*

The allegations here fall squarely within the Eighth Circuit's framework in *Ceridian* and dictate the same result. Plaintiffs allege that issues with Lifecore's internal controls leading to accounting errors impacting multiple years of financial statements show recklessness. AC ¶ 164. But Plaintiffs allege nothing about Defendants' knowledge in approving the financial results or making the required certifications. Plaintiffs cannot establish an intent to defraud or severe recklessness without any allegations regarding what was known or consciously disregarded by the speakers at the time of the statements. *Podraza*, 790 F.3d at 836 n.3. Indeed, finding severe recklessness without such allegations would undermine the Eighth Circuit's repeated direction that "a showing in hindsight that the statements were false does not demonstrate fraudulent intent." *Id.* at 838.

Plaintiffs also assert that the need for multiple restatements, and the scope and "sheer magnitude of errors" shows severe recklessness. AC ¶¶ 166-67. But these are the exact arguments the Eighth Circuit rejected in *Ceridian*. *See* 542 F.3d at 245-46; *see also In re Buca Inc. Sec. Litig.*, 2006 WL 3030886, at *15 (D. Minn. Oct. 16, 2006) ("GAAP violations, viewed collectively with Plaintiff's allegations regarding the magnitude of the restatement and the alleged inadequate internal controls are also insufficient to give rise to a strong inference of scienter."). Plaintiffs' allegations about the scope and magnitude of accounting issues cannot establish severe recklessness under Eighth Circuit law.

**2.    Leadership Transitions Do Not Support An Inference Of Scienter**

Without any factual allegations beyond the dates of executive departures, Plaintiffs allege "on information and belief" that various leadership changes at Lifecore during the three-and-a-half year class period support their scienter allegations. AC ¶ 167. But "senior corporate officers often resign or are terminated if their division of the corporation performs poorly." *In re Synovis Life Techs., Inc. Sec. Litig.*, 2005 WL 2063870, at \*16 (D. Minn. Aug. 25, 2005). Courts have therefore rejected the assertion that "the resignation of a senior executive following the fall in a company's stock price [is] sufficient to raise a strong inference of scient[e]r." *Id.*; *see also In re Cornerstone Propane Partners, L.P Sec. Litig.*, 335 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005) ("Most major stock losses are often accompanied by management departures, and it would be unwise for courts to penalize directors for these decisions."); *In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at \*17 (D.N.J. Aug. 17, 2005) (compiling cases finding executive resignations insufficient to plead scienter).

The alleged facts related to these corporate transitions undermine any inference of scienter. CFO McLaughlin served before the Class Period (AC ¶ 46) and before the Company's transition away from its legacy Curation Foods business (*id.* ¶ 3). Lifecore announced his retirement on January 19, 2021, twenty months before the first restatement in September 2022. *Id.* ¶ 5; Ex. 2 at 99.1. The only allegations involving CFO McLaughlin relate to completing required certifications. AC ¶¶ 83-84, 86-87. These facts do not support an inference of scienter.

23

CEO Bolles also served before the Class Period and is only mentioned in the complaint with respect to required certifications and signatures. *See, e.g.*, AC ¶¶ 44, 84, 87, 90, 92, 93, 97, 101, 105. As part of its announcement that the company was rebranding to Lifecore and focusing on its CDMO business, Lifecore announced that Bolles would "transition to President of Curation Foods, Inc. to oversee the remaining disposition activities." Ex. 3 at 99.2. A transition to executives better equipped to oversee the CDMO business offers a far more compelling inference than any inference of scienter.

After years of service on Lifecore's Board of Directors and then as its CEO, Lifecore announced CEO Hall's retirement on March 20, 2024 alongside the announcement that it had concluded the strategic review process and would continue as a standalone CDMO business under Paul Josephs, an executive with twenty-five years of CDMO experience. *Id.* ¶ 167; Ex. 11 at 99.1. Notably, Hall's retirement occurred upon the completion of the last restatement, not when the Company discovered and announced five months earlier that its financials would need to be restated. AC ¶ 158. There are no alleged facts indicating that CEO Hall's termination related to the restatement or disclosure controls. Plaintiffs' executive transition allegations are insufficient to raise an inference of scienter. *See Synovis*, 2005 WL 2063870, at *16.

### 3. Plaintiffs' Conclusory Allegations About EY's Decision Not To Stand For Reappointment Are Insufficient

Plaintiffs acknowledge that Lifecore retained EY, as its independent registered public accountant, and allege that EY's decision not to stand for reappointment after the March 20, 2024 restatement raises an inference of scienter. AC ¶ 168. But, "[t]here are many reasons [the auditor] might have elected not to stand for reappointment; absent facts

24

that link the decision to concerns about the candor of [the Company's] management (e.g., statements by the auditors to that effect), the fact that the firm did so does not give rise to an inference of scienter." *Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *43 (C.D. Cal. Apr. 14, 2015). Far from raising an inference of scienter, the Eighth Circuit has held that "[t]he inference of scienter is contradicted" when an independent auditor states the underlying financial documents "complied with GAAP." *Podraza*, 790 F.3d at 838; *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1069 (9th Cir. 2008) (no strong inference of scienter where complaint did not allege that defendant's "external auditors counseled against the practice").

Throughout the class period EY signed off on Lifecore's financials as complying with GAAP. *See, e.g.*, Ex. 13 at 36-38 (EY's Audit report for the three years in the period ended May 30, 2021). EY concluded "the consolidated financial statements present fairly, in all material respects, the financial position of the Company . . . and the results of its operations and its cash flows . . . in conformity with [GAAP]." *Id.* at 36. There are no allegations that Defendants misled EY or provided false information, and allegations about EY's decision do not raise an inference of scienter.

### D.   Plaintiffs Fail To Connect The Claimed Loss With The Alleged Misstatements

The Amended Complaint alleges that Lifecore gradually revealed the truth regarding its prior misstatements over the course of three restatements, and that the stock price decline occurring after the revelation of truth constitutes damages arising from the false statements. *See* AC ¶¶ 5, 42, 81, 163. But Plaintiffs do not allege any stock price decline after the first restatement (*id.* ¶¶ 109-19), and instead allege stock price declines

arising from intervening events such as the disclosure that the Company received warnings from NASDAQ regarding the timeliness of its SEC filings—declines not caused by the alleged revelation of truth. *Id.* ¶¶ 124, 128, 130, 138, 145, 147, 150, 153, 155, 157. Plaintiffs' inconsistent and contradictory allegations fail to plead loss causation.

In order to prevent use of the federal securities laws as a form of broad insurance against market loss, the securities statutes require a plaintiff to plead an "indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347. "[T]he complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses." *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009). In other words, "a plaintiff must allege that the share price fell significantly after the truth became known." *See Buca*, 2006 WL 3030886, at *7.

Plaintiffs fail to connect the claimed loss to the correction of alleged misstatements. For example, Plaintiffs allege that Lifecore "started to come clean to investors" and "partially corrected" the misstatements beginning with Lifecore's first restatement. AC ¶¶ 7, 114. But Plaintiffs do not allege any stock price drop after this purported revelation of the truth. *Id.* ¶¶ 109-19. Indeed, Lifecore's stock price increased from $9.86 to $9.89 on the day of the disclosure. Ex. 8. The failure to allege a stock price drop following a partial corrective disclosure "negates Plaintiffs' allegation that the fraud was gradually disclosed through a series of partial disclosures." *Buca*, 2006 WL 3030886, at *9.

Instead, Plaintiffs seek to recover for stock price declines occurring when Lifecore's later SEC filings repeated information already available to the market. For example, Plaintiffs detail a stock price decline on October 10, 2022, the first market day after

26

Lifecore repeated the existence of a material weakness and the ineffectiveness of internal controls. AC ¶¶ 120, 124. Plaintiffs cannot allege loss caused by the reiteration of information already known to the market. *See Rand-Heart of New York, Inc. v. Dolan,* 812 F.3d 1172, 1180 (8th Cir. 2016) ("Corrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time, because, if investors already know the truth, false statements won't affect the price.").

Plaintiffs also detail stock price declines after some (but not all) of Lifecore's announcements that it would not be able to timely file its quarterly or annual reports (AC ¶¶ 126, 144, 149, 152),[5] or after Lifecore's announcements that it had received NASDAQ notification letters regarding compliance with listing requirements. AC ¶¶ 127, 146, 154, 156. But each of these disclosures reveals "firm-specific facts, conditions, or other events" identifying new risks to the Company. *See Dura*, 544 U.S. at 343 The ensuing share price declines are not recoverable because they are not caused by the alleged misstatements. *Id.* at 347 (plaintiffs must allege that the "share price fell significantly after the truth [of the misrepresentations] became known").

With no share price declines following certain of Plaintiffs' alleged partial disclosures of the truth (AC ¶¶ 109-19), and allegations about non-recoverable share price declines after the reiteration of known information (*id.* ¶¶ 120, 124, 141) or announcements that did not reveal any misstatement (*id.* ¶¶ 126, 127, 144, 146, 149, 152, 154, 156), Plaintiffs fail to provide "fair notice of what [Plaintiffs'] claim is and the grounds upon

---

[5] Plaintiffs do not detail stock price movement when similar announcements of an inability to file a quarterly report did not result in a stock price decline. *See* ¶ 140 ($0.08 stock price increase the day following an announcement of the inability to timely file).

which it rests." *Dura*, 544 U.S. at 337.  The Amended Complaint should therefore be dismissed for failure to properly allege loss causation.  *Id.*

### E.      Plaintiffs' Section 20(a) Claim Necessarily Fails

Because Plaintiffs have "failed to adequately allege their Section 10(b) and Rule 10b-5 claim, the claim under Section 20(a) also fails as a matter of law."  *Perez*, 2024 WL 4804656, at *14 ("The plain language of the control-person statute dictates that, absent a primary violation, a claim for control-person liability must fail.").

## IV.   CONCLUSION

For all the above reasons, Defendants respectfully request that the First Amended Complaint be dismissed in its entirety.

Dated:  March 25, 2025

By  */s/ Andrew R. Gray*
    Michele D. Johnson (pro hac vice)
    Andrew R. Gray (pro hac vice)
    Spencer L. Chatellier (pro hac vice)
    Kehaulani R. Jai (pro hac vice)
    LATHAM & WATKINS LLP
    650 Town Center Drive, 20th Floor
    Costa Mesa, CA 92626
    Telephone:  (714) 540-1235
    michele.johnson@lw.com
    andrew.gray@lw.com
    spencer.chatellier@lw.com
    kehaulani.jai@lw.com


    Nicholas Siciliano (pro hac vice)
    LATHAM & WATKINS LLP
    330 North Wabash Avenue
    Suite 2800
    Chicago, IL 60611
    Telephone:  (312) 777-7021

nicholas.siciliano@lw.com

/s/ Michael Rowe
James K. Langdon (#0171931)
Michael Rowe (#0392598)
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868
langdon.jim@dorsey.com
rowe.michael@dorsey.com

*Attorney for Defendants Lifecore Biomedical, Inc., Albert D. Bolles, James G. Hall, Brian McLaughlin, and John Morberg*

29