**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| DAVID CAREW, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>LIFECORE BIOMEDICAL, INC., ALBERT D. BOLLES, JAMES G. HALL, BRIAN MCLAUGHLIN, and JOHN MORBERG,<br><br>    Defendants. | **Case No. 0:24-cv-03028 (LMP/JFD)** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

| | |
|---|---|
| **THE ROSEN LAW FIRM, P.A.**<br>Phillip Kim (*pro hac vice*)<br>Ha Sung (Scott) Kim (*pro hac vice*)<br>275 Madison Avenue, 40th Floor<br>New York, New York 10016<br>(212) 686-1060<br>philkim@rosenlegal.com<br>skim@rosenlegal.com<br><br>*Co-Lead Counsel for Plaintiffs and the Proposed Class* | **POMERANTZ LLP**<br>Jeremy A. Lieberman (*pro hac vice*)<br>Brenda Szydlo (*pro hac vice*)<br>Dean Paul Ferrogari (*pro hac vice*)<br>600 Third Avenue, 20th Floor<br>New York, NY 10016<br>(212) 661-1100<br>jalieberman@pomlaw.com<br>bszydlo@pomlaw.com<br>dferrogari@pomlaw.com<br><br>*Co-Lead Counsel for Plaintiffs and the Proposed Class* |
| **CUNEO GILBERT & LaDUCA, LLP**<br>Robert K. Shelquist (#21310X)<br>5775 Wayzata Blvd., Suite 620<br>St. Louis Park, MN 55416<br>(612) 254-7288<br>rshelquist@cuneolaw.com<br><br>*Liaison Counsel to Plaintiffs and the Proposed Class* | **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**<br>Carl Malmstrom<br>111 W. Jackson St., Suite 1700<br>Chicago, IL 60604<br>(312) 984-0000<br>malmstrom@whafh.com<br><br>*Additional Counsel for Plaintiff Hugh Robert Holmes* |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 9

ARGUMENT ............................................................................................................. 16

I.     PLAINTIFFS SUFFICIENTLY PLEAD MATERIALLY FALSE AND/OR MISLEADING STATEMENTS ................................................................. 16

       A.    Plaintiffs Adequately Allege Materially Misstated Financials ................... 16

       B.    The PSLRA's Safe Harbor Offers No Protection ....................................... 19

       C.    Defendants' SOX Certifications and Statements Regarding the Effectiveness of Lifecore's Disclosure Controls and Procedures are Actionable Statements ................................................................................ 20

II.    PLAINTIFFS ADEQUATELY PLEAD SCIENTER ............................................. 21

III.   PLAINTIFFS ADEQUATELY PLEAD LOSS CAUSATION ............................. 27

IV.   PLAINTIFFS STATE A CLAIM UNDER SECTION 20(a) ............................... 31

CONCLUSION ......................................................................................................... 31

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ................................................................. 26

*Alberici v. Recro Pharma, Inc.*,
   2021 WL 798299 (E.D. Pa. Mar. 1, 2021).................................................. 20

*Bazzelle v. NovoCure Ltd.*,
   2025 WL 843668 (S.D.N.Y. March 18, 2025) ............................................ 19

*Brendon v. Allegiant Travel Co.*,
   412 F. Supp. 3d 1244 (D. Nev. 2019)........................................................ 30

*Carmignac Gestion, S.A. v. Perrigo Co.*,
   2019 WL 3451523 (D.N.J. July 31, 2019)................................................. 19

*DeMarco v. Robertson Stephens Inc.*,
   318 F. Supp. 2d 110 (S.D.N.Y. 2004)........................................................ 28

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................... 27

*Epstein v. World Acceptance Corp.*,
   203 F. Supp. 3d 655 (D.S.C. 2016)............................................................ 30

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
   270 F.3d 645 (8th Cir. 2001) ..................................................................... 23

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)........................................................ 18

*Gebhardt v. ConAgra Foods, Inc.*,
   335 F.3d 824 (8th Cir. 2003) ................................................................ 17, 28

*Hemmer Grp. v. Sw. Co.*,
   527 Fed. App'x 623 (9th Cir. 2013) ...................................................... 17, 18

*In re Akorn, Inc. Sec. Litig.*,
   240 F. Supp. 3d 802 (N.D. Ill. 2017) ......................................................... 18

*In re Buca Inc. Sec. Litig.*,
    2006 WL 3030886 (D. Minn. Oct. 16, 2006) .............................................................. 30

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
    403 F. Supp. 3d 712 (D. Minn. 2019)................................................................... *passim*

*In re Ceridian Corp. Sec. Litig.*,
    542 F.3d 240 (8th Cir. 2008) ...................................................................................... 23

*In re Chronimed Sec. Litig.*,
    2002 WL 1016824 (D. Minn. May 16, 2002)........................................................ 24, 27

*In re Cylink Sec. Litig.*,
    178 F. Supp. 2d 1077 (N.D. Cal. 2001) ...................................................................... 17

*In re Diamond Foods, Inc., Sec. Litig.*,
    2012 WL 6000923 (N.D. Cal. 2012) ........................................................................... 26

*In re H & R Block Sec. Litig.*,
    527 F. Supp. 2d 922 (W.D. Mo. 2007) ........................................................................ 17

*In re K-tel Int'l, Inc. Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) ...................................................................................... 16

*In re Mattel, Inc. Sec. Litig.*,
    2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ............................................................. 26

*In re McLeodUSA Inc.*,
    2004 WL 1070570 (N.D. Iowa Mar. 31, 2004) ........................................................... 27

*In re Miller Energy Res. Sec. Litig.*,
    2014 WL 415730 (E.D. Tenn. Feb. 4, 2014) ............................................................... 18

*In re MoneyGram Int'l, Inc.*,
    626 F. Supp. 2d 947 (D. Minn. 2009)...............................................................25, 26, 29

*In re Retek Inc. Sec. Litig.*,
    621 F. Supp. 2d 690 (D. Minn. 2009)......................................................................... 29

*In re Spear & Jackson Sec. Litig.*,
    399 F. Supp. 2d 1350 (S.D. Fla. 2005) ...................................................................... 26

*In re St. Jude Med., Inc. Sec. Litig.*,
    836 F. Supp. 2d 878 (D. Minn. 2011)......................................................... 25, 27, 29, 31

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ........................................................................24

*Longo v. Osi Sys., Inc.*,
2021 WL 1232678 (C.D. Cal. Mar. 31, 2021)..............................................................19

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .....................................................................................29

*MAZ Partners LP v. First Choice Healthcare Sols., Inc.*,
2019 WL 5394011 (M.D. Fla. Oct. 16, 2019),
*R. & R. adopted*,
2020 WL 1072582 (M.D. Fla. Feb. 14, 2020) ............................................................20

*Montalvo v. Tripos, Inc.*,
2005 WL 2453964 (E.D. Mo. Sept. 30, 2005)............................................................23

*Nakkhumpun v. Taylor*,
782 F.3d 1142 (10th Cir. 2015) ..................................................................................28

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc*.
367 F. Supp. 3d 16 (S.D.N.Y. 2019)...........................................................................21

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015).....................................................................................................20

*Plymouth Cnty. Ret. Sys. v. Patterson Cos*.,
2019 WL 3336119 (D. Minn. July 25, 2019),
*R. & R. adopted*, *modified on other grounds*,
2019 WL 4277302 (D. Minn. Sept. 10, 2019).......................................................24, 31

*Reid v. Hemispherx Biopharma, Inc.*,
2010 WL 11710594 (E.D. Pa. Apr. 20, 2010) ............................................................19

*Sanchez v. Centene Corp.*,
407 F. Supp. 3d 831 (E.D. Mo. 2019)...........................................................21, 23, 24

*Shalala v. Guernsey Mem'l Hosp.*,
514 U.S. 87 (1995).......................................................................................................16

*Shash v. Biogen*,
84 F.4th 1 (1st Cir. 2023)............................................................................................28

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007).....................................................................................................21

iv

*Vanderhoef v. China Auto Logistics, Inc.*,
2021 WL 3260849 (D.N.J. July 30, 2021)......................................................26

*Zola v. TD Ameritrade, Inc.*,
172 F. Supp. 3d 1055 (D. Neb.),
*aff'd*, 889 F.3d 920 (8th Cir. 2018)..........................................................31

## Statutes

15 U.S.C. § 78u-4 ..............................................................................................21

## Other Authorities

Accounting Standards Update No. 2009-01, Statement of Fin. Acct.
Standards No. 168 (Fin. Acct. Standards Bd. 2009), available at
https://www.fasb.org/standards/accounting-standard-updates .................. 17

Committee of Sponsoring Organizations of the Treadway Commission,
Internal Control – Integrated Framework (May 2013), available at
https://pdfcoffee.com/coso-internal-control-integrated-framework-may-
2013-2-pdf-free.html.................................................................................27

John Carney et al., *Materiality, Restatements, and the Reasonable Investor
Standard*, Bloomberg Tax (May 12, 2022 4:45 AM),
https://news.bloombergtax.com/tax-insights-and-
commentary/materiality-restatements-and-the-reasonable-investor-
standard ........................................................................................................ 18

Press Release, Fin. Acct. Standards Bd., FASB Accounting Standards
Codification Launches Today (July 1. 2009),
https://fasb.org/page/getarticle?uid=fasb_NewsRelease07-01-
09Body_0228221200...................................................................................17

## INTRODUCTION

Co-Lead Plaintiffs David Carew and Hugh Robert Holmes ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' motion to dismiss the Complaint.[1] Lifecore Biomedical, Inc. ("Lifecore" or the "Company"), formerly Landec, was a diversified health and wellness company. ¶2. The Company failed to maintain proper internal controls during the Class Period,[2] and as a result, Lifecore was forced to restate its financial statements *three times* in September 2022, March 2023, and March 2024. ¶5. The internal control problems were so severe that: (i) the Company restated its financial statements for fiscal year ("FY") 2021 through FY 2023 and *all* the interim financial statements; (ii) the financial statements for FY 2022 had to be restated *three times*; and (iii) the Company's quarterly filings for Q3 2022 and Q1 2023 had to be restated *twice*. ¶¶5, 82. The restatements included corrections of misstatements related to accounting for Lifecore's disposition and restructuring activities as well as improper accounting for its continuing operations. ¶5.

Throughout the Class Period, Defendants made several materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants misrepresented and/or failed to disclose that: (i) Lifecore recklessly maintained deficient internal controls over financial reporting; (ii) as a result

---

[1] Unless otherwise defined or stated, (i) all capitalized terms used herein have the meanings as provided in the Amended Class Action Complaint ("Complaint" or "¶_") (ECF No. 42), and (ii) all internal citations and quotation marks are omitted and emphasis is added. "MTD" refers to Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 50).

[2] The Class Period is from October 7, 2020 through and including March 19, 2024. ¶1.

1

of the deficient internal controls, the Company issued numerous financial statements that materially misstated the Company's revenue, profits, and operating losses; (iii) Lifecore's purported remediation efforts with respect to the internal control deficiencies were ineffective; and (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements. ¶6. Lifecore came clean to investors about various issues concerning its internal controls over financial reporting in a series of more than a dozen disclosures from September 2022 through March 2024. *See* ¶7.

Plaintiffs allege violations of Section 10(b) and 20(a) of the Securities Exchange Act (¶¶178-93) and Defendants argue that Plaintiffs fail to adequately allege any materially false or misleading statements, scienter, and loss causation. Additionally, they contend that Plaintiffs' Section 20(a) claim necessarily fails because Plaintiffs' 10(b) claim was not adequately alleged. MTD at 28. For the reasons set forth herein, Defendants' motion should be denied in its entirety.

Plaintiffs sufficiently plead materially false and/or misleading statements. Plaintiffs allege that the Company's quarterly and annual reports contained material misstatements due to its failure to follow GAAP[3] and had to be restated several times. ¶¶57-78. An accounting restatement is sufficient to show that an earlier statement was false when made. Here, the Company admitted that the restatements were necessitated to correct errors. ¶¶109, 132, 151, 158-59. Additionally, the Complaint adequately alleges the original

---

[3] "GAAP" refers to U.S. Generally Accepted Accounting Principles.

reported financial data, the restated financial data, and the difference between the two. Consequently, the Complaint adequately alleges falsity. The restatements likewise established the materiality of the earlier misstatements because under GAAP, previously issued financial statements should be restated only to correct material accounting errors that existed at the time the statements were originally issued. ¶56.

Defendants argue that some of the alleged misstatements are forward-looking and protected by the PSLRA's safe harbor.[4] MTD at 17. But that is incorrect because the safe harbor does not apply to statements of present or past fact, or omissions of existing facts or circumstances. Defendants also contend that the alleged false SOX certifications[5] and statements regarding the effectiveness of the Company's disclosure controls and procedures are not actionable statements (MTD at 13-15), but they are wrong. These statements are actionable because Plaintiffs pled that all of the Company's quarterly and annual reports filed during the Class Period contained material misstatements due to its failure to follow GAAP and had to be restated, and the Individual Defendants who signed/made these statements had scienter.

Plaintiffs also alleged sufficient evidence to support a strong inference of scienter. For example, during the Class Period, Defendants recklessly failed to maintain proper internal controls over financial reporting. Defendants did not properly account for inventory valuation, the capitalization of interest assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs

---

[4] "PSLRA" refers to the Private Securities Litigation Reform Act of 1995.
[5] "SOX certifications" refers to certifications pursuant to the Sarbanes-Oxley Act of 2002.

and expenses of continuing operations and discontinued operations, and the write-off of other receivables of the Company's former Curation Foods businesses, as reflected in the tables in the Complaint. ¶¶73, 164. Additionally, Defendants were reckless in their restatement efforts. In the 2022 Form 10-K, Defendants assured investors that, "management has corrected the error in its interim financial statements." ¶¶116, 165. However, the purportedly corrected financial statements would have to be restated. Defendants' failure to maintain proper internal controls was so severe and reckless that it necessitated several restatements, resulting in multiple error-laden financial statements for the same period. *See* ¶82. In addition to initially presenting false financial statements for all relevant periods, when Defendants presented the restated financial statements for FY 2021, Q3 FY 2022, FY 2022, and Q1 FY 2023 as "corrected," these financial statements were, in fact, still materially misstated necessitating an additional restatement. In fact, FY 2022 financial statements were restated three times. ¶¶34, 113, 165. The GAAP violations and multiple restatements paint an inescapable inference of recklessness.

Additionally, the magnitude of the accounting errors bolsters scienter. The Company's failure to follow GAAP enabled it to *understate* its: (i) operating loss by as much as **73.9%** for Q3 FY 2021, (ii) pre-tax loss from continuing operations by as much **26.8%** for FY 2022, and (iii) net loss per share from continuing operations by as much as **36.8%** for Q3 FY 2022. ¶73. Additionally, the same metrics were *overstated* by as much as (i) **33.3%**, (ii) **28.2%**, and (iii) **27.5%**, respectively, for Q3 FY 2023. ¶73. Moreover, Lifecore's segment's gross profits were *overstated* by as much as **17.4%** for Q2 FY 2023 and *understated* by as much as **28.9%** for Q3 FY 2023; Lifecore's segment gross profit

margins were *overstated* by as much as **18.3%** for Q2 FY 2023 and *understated* by as much as **28.4%** for Q3 FY 2023; and Curation Foods' segment gross profits were *overstated* by as much as **214.3%** for Q3 FY 2022 and *understated* by as much as **244.3%** for Q1 FY 2023. ¶73.

Plaintiffs' scienter allegations are also bolstered by executive resignations. On August 10, 2022, a month before Restatement No. 1, Defendant Bolles resigned as the Company's CEO. ¶167. On March 20, 2024, the same day as Restatement No. 3 was announced, the Company also announced that Defendant Hall would be stepping down as CEO. ¶167. These resignations are probative of scienter. ¶167. Indeed, in the context of the other evidence and coupled with evidence of timing, these resignations further support Plaintiffs' scienter allegations.

Additionally, the claimed remedial actions undertaken by the Company evidence knowledge concerning the material weakness in internal control over financial reporting and the Company's remedial actions in response thereto. *See* ¶¶116, 132, 142. Here, the remedial actions were first described in the Company's 2022 Form 10-K filed on September 14, 2022, signed by Defendants Hall and Morberg,[6] as well as in the Company's Q2 2023 and Q3 2023 10-Qs, both signed by Morberg, and filed on March 16, 2023 and June 2, 2023, respectively.[7] Morberg and Hall also signed the SOX certifications with respect to all three of these SEC filings,[8] which, under these circumstances, is further

---

[6] ¶109.
[7] ¶¶131, 141.
[8] ¶¶118, 133, 142.

indicia of scienter.

Moreover, on March 26, 2024, just six days after the Company filed its 2023 Form 10-K in which it fully disclosed the scope of its internal control problems, the Company filed a Form 8-K which stated that the Company's auditor, Ernst & Young LLP ("E&Y"), declined to stand for reappointment for the Company's fiscal year ending May 26, 2024. ¶168. Auditors regularly decline to be reappointed when they disagree with a company's accounting treatments or believe that management is not acting with integrity. ¶168. Here, Plaintiffs allege that E&Y's decision to drop its client and walk away from future fees was the result of Lifecore's recklessly prepared financial statements resulting in several restatements, including multiple restatements for certain periods. ¶¶82, 168.

Furthermore, the fact that the Individual Defendants here were the highest-ranking Lifecore executives (CEOs and CFOs) also supports an inference of scienter when considered in tandem with all the other allegations discussed herein. After the Company first disclosed a material weakness in the Company's internal control over financial reporting and Restatement No. 1 on September 14, 2022, it is logical to conclude that CEO Hall and CFO Morberg were focused on these issues.

Plaintiffs sufficiently allege loss causation. Plaintiffs allege that Defendants' false and misleading statements[9] caused investors to purchase Lifecore securities at inflated prices,[10] and that the truth was gradually revealed through a series of partial corrective

---

[9] *See generally* ¶¶83-148.
[10] ¶¶42, 124, 141, 180, 184, 185, 191.

6

disclosures throughout the Class Period.[11] When the truth became known, the stock price declined.[12] This satisfies Plaintiffs' burden for loss causation because Plaintiffs adequately allege a causal nexus between Defendants' actions and the stock drop. Defendants argue that loss causation is not sufficiently pled because Plaintiffs "allege [certain] stock price declines *arising from intervening events*" that were "not caused by the alleged revelation of truth." MTD at 25-26. But Plaintiffs do not allege any intervening events. Moreover, even if they did, the significance of intervening events, if any existed, creates a fact issue that cannot be resolved on a Rule 12(b)(6) motion to dismiss. Defendants also argue that the stock price drops after Lifecore's announcements that it would not be able to timely file its quarterly or annual reports[13] or that it had received NASDAQ notification letters regarding the Company's non-compliance with listing requirements,[14] "are not recoverable because they are not caused by the alleged misstatements." MTD at 27. But they are wrong. To establish loss causation, a plaintiff is not confined to only showing a corrective disclosure that both identifies a specific prior false representation and reveals the truth thereof. Here, the disclosures are inextricably linked to the Company's misrepresentations and/or failure to disclose that Lifecore recklessly maintained deficient internal controls over financial reporting; as a result of the deficient internal controls, the Company issued numerous financial statements that materially misstated the Company's revenue, profits,

---

[11] *See* ¶¶109-11, 114-15, 120, 126-27, 129, 131, 134, 138, 140-41, 144, 146, 149, 151-52, 154, 156, 158-60.
[12] *See* ¶¶124, 128, 130, 138, 145, 147, 150, 153, 155, 157, 161.
[13] ¶¶126, 144, 149, 152.
[14] ¶¶127, 146, 154, 156.

and operating losses; Lifecore's purported remediation efforts with respect to the internal control deficiencies were ineffective; and all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements. ¶6. At the pleading stage, Plaintiffs have alleged enough to provide Defendants with notice of what the relevant loss might be or of what the causal connection might be between that loss and the misrepresentation.

Defendants also contend that loss causation is not adequately pled because Plaintiffs do not allege a stock price decline after the first of three restatements in a series of disclosures. MTD at 25-26. However, loss causation may be adequately pled by allegations that that the stock dropped after the last disclosure in a series of disclosure events. Indeed, even increases in stock prices after a partial disclosure that is within a series of disclosures does not preclude a final showing of loss causation.

Defendants contend that two of the alleged partial corrective disclosures are not corrective because they repeat known information regarding the existence of a material weakness and the ineffectiveness of internal controls as of May 29, 2022, as disclosed in the Company's 2022 Form 10-K (MTD at 27). But Defendants are incorrect as each of the two alleged partial corrective disclosures revealed *new information* – that the Company's disclosure controls and procedures were not effective *as of new dates* – August 28, 2022, and February 26, 2023, respectively, further alerting the market to the depth of the Company's financial disclosure malaise. ¶¶120, 141.

Finally, Defendants contend that because Plaintiffs have failed to adequately plead a predicate Section 10(b) violation, Plaintiffs' claim under Section 20(a) should also be

dismissed. MTD at 28. However, because Plaintiffs have adequately pled a Section 10(b) claim, their argument fails.

## STATEMENT OF FACTS

Lifecore, formerly Landec, was a diversified health and wellness company with two operating segments: Curation Foods and Lifecore Biomedical. ¶2. Curation Foods is the Company's lower margin legacy business. ¶2. Lifecore Biomedical is the higher margin Contract Development and Manufacturing Organization business, specializing in pharmaceutical drug injectables. ¶2. Between 2020 and 2023, Lifecore transitioned away from Curation Foods to fully focus on Lifecore Biomedical by, *inter alia*, divesting of the companies which made up its Curation Foods segment and rebranding itself as Lifecore.

Unbeknownst to investors, Lifecore's disclosure regime was in shambles. The Company's failure to maintain proper internal controls during the Class Period necessitated several restatements for certain periods, resulting in multiple error-laden financial statements for the same period. ¶¶82, 165. Lifecore restated its financial statements three times: in September 2022, March 2023, and March 2024. ¶5. The Company restated its financial statements for FY 2021 through FY 2023 and *all* the interim financial statements. ¶5. The internal control problems were so serious that FY 2022 had to be restated three times, and Q3 2022 and Q1 2023 10-Qs had to be restated twice. ¶82. The restatements included corrections of misstatements related to accounting for Lifecore's disposition and restructuring activities as well as improper accounting for its continuing operations. ¶5.

Despite Lifecore repeatedly assuring investors that their internal controls over financial reporting were effective, the reality was the Company's accounting was slipshod.

9

¶81. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. ¶6. Specifically, Defendants misrepresented and/or failed to disclose that: (i) Lifecore recklessly maintained deficient internal controls over financial reporting; (ii) as a result of the deficient internal controls, the Company issued numerous financial statements that materially misstated the Company's revenue, profits, and operating losses; (iii) Lifecore's purported remediation efforts with respect to the internal control deficiencies were ineffective; and (iv) all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC. ¶6.

In September 2022, Lifecore began to come clean to investors about material weaknesses in its internal controls over financial reporting. ¶7. On September 14, 2022, in the first of what would ultimately be a series of numerous corrective disclosures over the next year and a half, Lifecore revealed in its annual report for the fiscal year ended May 29, 2022 (the "2022 Form 10-K") that, due to a previously undisclosed material weakness in the Company's internal control over financial reporting, the Company was restating several previously issued financial statements and earnings releases ("Restatement No. 1"). ¶7. Restatement No. 1 resulted from corrections primarily related to (i) the classification of certain costs, expenses, and accruals in connection with the Company's disposition activities and the corporate transition of Landec to Lifecore; and (ii) the treatment of the fees received and costs incurred by the Company in connection with the sale of the Curation Foods' Eat Smart business. Lifecore assured investors in the 2022 Form 10-K that the Company was undertaking efforts to address the material weaknesses and restate the financial statements in a timely manner. ¶7.

10

Notably, on August 10, 2022, just a month before Restatement No. 1, Defendant Bolles resigned as the Company's CEO. ¶167. The timing of his departure suggests that Defendants Bolles' resignation was related to Restatement No. 1 and Lifecore's recklessly prepared financial statements. *Id.*

On October 7, 2022, Lifecore revealed in a quarterly report for the period ended August 28, 2022 (the "Q1 2023 10-Q") that the Company's disclosure controls and procedures were still not effective due to the material weakness that was disclosed in the 2022 Form 10-K. ¶8. On this news, Lifecore's stock price fell $0.19 per share, or 2.31%, to close at $8.05 per share on October 10, 2022. Lifecore reiterated in the Q1 2023 10-Q that the Company was implementing a remediation plan to address the material weaknesses. ¶9.

Lifecore is required to comply with NASDAQ Listing Rule 5250(c)(1), which requires the Company to timely file all required periodic financial reports with the SEC. ¶80. On January 9, 2023, Lifecore revealed in an SEC filing that the Company was unable to file its quarterly report for the period ended November 27, 2022 (the "Q2 2023 10-Q") in a timely manner. ¶10. The Company stated that the filing was delayed because "[t]he Company intends to evaluate the effect of [non-cash impairment] charges on the Company's prior period financial information and on the related internal control over financial reporting." [15] On January 11, 2023, Lifecore announced the Company had

---

[15] Lifecore Biomedical, Inc., Notification of Late Filing (Form 12b-25) (Jan. 9, 2023), https://www.sec.gov/Archives/edgar/data/1005286/000100528623000007/lifecore-form12bx25lwcomme.htm.

received a notification letter from NASDAQ indicating that Lifecore was not in compliance with the continued listing requirements. ¶11. On this news, Lifecore's stock price fell $0.12 per share, or 1.65%, to close at $7.14 per share on January 12, 2023. ¶12.

On February 1, 2023, Lifecore revealed in a Form 8-K that the Company's financial statements in its 2022 Form 10-K and Q1 2023 10-Q should no longer be relied upon. ¶13. Specifically, Lifecore indicated that "[t]his determination resulted from the identification of errors" related to the Company's Curation Foods business and that the financial statements for these periods would need to be restated. ¶13. On this news, Lifecore's stock price fell $0.11 per share, or 1.75%, to close at $6.17 per share on February 2, 2023. ¶14.

On March 16, 2023, Lifecore filed the Q2 2023 10-Q which stated that the Company's disclosure controls were still not effective as of November 27, 2022. ¶15. That same day, Lifecore filed an amended annual report on Form 10-K/A for the fiscal year ended May 29, 2022 (the "2022 10-K/A") and an amended quarterly report on Form 10-Q/A for the quarter ended August 28, 2022 (the "Q1 2023 10-Q/A" and, collectively with the 2022 10-K/A, "Restatement No. 2"). ¶16. The 2022 10-K/A revealed that the impairment charges recorded as part of the restatement pertained to property and equipment and intangible assets related to Lifecore's subsidiary, Yucatan Foods, LLC ("Yucatan"). ¶17. On this news, Lifecore's stock price fell $3.44 per share, or 67.32%, to close at $1.67 per share on March 17, 2023. Nonetheless, Lifecore reiterated in the Q2 2023 10-Q that the Company was implementing a remediation plan. ¶18.

Then, on April 10, 2023, Lifecore disclosed that the Company again could not complete the filing of its quarterly report for the period ended February 26, 2023 (the "Q3

2023 10-Q") ¶19. On June 2, 2023, Lifecore filed its Q3 2023 10-Q, which stated that the Company's disclosure controls were not effective as of February 26, 2023, due to the material weaknesses that were disclosed in the 2022 Form 10-K. ¶20.

On August 14, 2023, Lifecore revealed that the Company could not complete the filing of its annual report for the fiscal year ended May 28, 2023 (the "2023 Form 10-K") in a timely manner due to an unexpected delay. ¶21. On this news, Lifecore's stock price fell $0.41 per share, or 4.1%, to close at $9.58 per share on August 15, 2023. ¶22.

On August 22, 2023, Lifecore announced that the Company received a second letter from NASDAQ. ¶23. The letter stated that the Company was not in compliance with Listing Rule 5250(c)(1) due to Lifecore's delay in filing its 2023 Form 10-K. ¶23. On this news, Lifecore's stock price fell $0.45 per share, or 5%, to close at $8.55 per share on August 23, 2023. ¶24. On October 10, 2023, Lifecore revealed in a filing with the SEC that the Company could not complete the filing of its quarterly report for the period ended August 27, 2023 (the "Q1 2024 10-Q"). ¶25. On this news, Lifecore's stock price fell $0.07 per share, or 0.96%, to close at $7.22 per share on October 11, 2023. ¶26.

On October 31, 2023, Lifecore revealed in Form 8-K that the Company's previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 and May 30, 2021 and the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February 28, 2020, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 (collectively, the "Prior Financial Statements") should no longer be relied upon. ¶27. Specifically, Lifecore indicated that "[t]his determination

13

resulted from the Company's identification of errors . . . related to certain adjustments . . . involving the calculation of capitalized interest, valuation of inventories, and certain adjustments related to previously divested businesses" and that the financial statements for these periods need to be restated. ¶27.

On January 10, 2024, Lifecore revealed in an SEC filing that the Company could not complete the filing of its Q-2 2024 10-Q for the period ended November 26, 2023 "as it continues to finalize the restatement of its previously issued consolidated financial statements as of and for the fiscal years ended May 29, 2022 . . . and May 30, 2021 . . . included in the Company's . . . 10-K/A . . . , the Company's unaudited consolidated financial statements as of and for the periods ending August 30, 2020, November 29, 2020, February 28, 2021, August 29, 2021, November 28, 2021, February 27, 2022, August 28, 2022, November 27, 2022 and February 26, 2023 included in the Company's Quarterly Reports on Form 10-Q . . . , and the preparation and review processes in support of the [2023 Form 10-K] . . . for the fiscal year ended May 28, 2023 . . . and of the [Q1 2024 10-Q]." ¶28.[16] On this news, Lifecore's stock price fell $0.28 per share, or 3.98%, to close at $6.75 per share on January 11, 2024. ¶29. On January 12, 2024, Lifecore issued a press release announcing that the Company received a third notification letter from NASDAQ, stating that the Company was not in compliance with the requirements for continued listing under Listing Rule 5250(c)(1). ¶30. On this news, Lifecore's stock price fell $0.11 per

---

[16] Lifecore Biomedical, Inc., Notification of Late Filing (Form 12b-25) (Jan. 10, 2024), https://www.sec.gov/Archives/edgar/data/1005286/000100528624000009/lifecore-form12bx25.htm.

share, or 1.6%, to close at $6.76 per share on January 16, 2024. ¶31.

On February 16, 2024, after receiving three notification letters from NASDAQ, Lifecore announced the Company received a Staff Delisting Determination due to the Company's failure to comply with Listing Rule 5250(c)(1). ¶32.The determination notified the Company that NASDAQ had initiated a process which could result in the delisting of the Company's securities. ¶32. On this news, Lifecore's stock price fell $0.16 per share, or 1.95%, to close at $8.03 per share on February 20, 2024. ¶33.

On March 20, 2024, Lifecore filed its 2023 Form 10-K. ¶34. Specifically, the 2023 Form 10-K revealed that, despite Lifecore's previous restatements and purported implementation of a remediation plan, the Company's Audit Committee had concluded that Lifecore's Prior Financial Statements *should no longer be relied upon* and needed to be restated yet again ("Restatement No. 3"). ¶34. The 2023 Form 10-K stated that the determination resulted from the identification of errors in the Prior Financial Statements related to adjustments involving the calculation of capitalized interest, valuation of inventories, and certain other adjustments related to previously divested businesses. ¶34. On this news, Lifecore's stock price plummeted $2.18 per share, or 30.32%, to close at $5.01 per share on March 20, 2024. ¶35. Additionally, on the same day as Restatement No. 3, the Company announced that Defendant Hall would be stepping down as CEO in May 2024. ¶167. The timing of Defendants Hall's resignation suggests that he left the Company as the result of the Restatements and Lifecore's recklessly prepared financial statements. ¶167.

On March 26, 2024, Lifecore filed a Form 8-K with the SEC, which disclosed that

15

Lifecore's independent registered public accountant, Ernst & Young LLP, declined to stand for reappointment as the Company's accountant. ¶168. Auditors regularly decline to be reappointed when they disagree with a company's accounting treatments or believe that management is not acting with integrity. ¶168. Here, Plaintiffs believe that E&Y's decision to drop its client was also the result of Lifecore's recklessly prepared financial statements. ¶168.

## ARGUMENT

### I.   PLAINTIFFS SUFFICIENTLY PLEAD MATERIALLY FALSE AND/OR MISLEADING STATEMENTS

#### A.   Plaintiffs Adequately Allege Materially Misstated Financials

Plaintiffs allege that Lifecore's quarterly and annual reports contained material misstatements due to a failure to follow GAAP and had to be restated several times. ¶¶57-78.[17] In fact, the financial statements for FY 2022 had to be restated three times. ¶82. An

---

[17] Defendants appear to be confused about GAAP. They contend:

> There are nineteen sources for GAAP, including Accounting Principles Board opinions, Financial Accounting Standards Board Statements, and Accounting Research Bulletins, "any number of which might present conflicting treatments of a particular accounting question." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995). Far from being a "canonical set of rules that will ensure identical accounting treatment of identical transactions," GAAP "tolerate[s] a range of 'reasonable' treatments." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 890 (8th Cir. 2002). "When conflicts arise, the accountant is directed to consult an elaborate hierarchy of GAAP sources to determine which treatment to follow." *Id.* "GAAP changes and, even at any one point, is often indeterminate." *Guernsey Mem'l Hosp.*, 514 U.S. at 101.

MTD at 15-16. But Defendants refer to the way GAAP was organized ***prior to July 1, 2009***, when FASB adopted the Accounting Standards Codification, which became the source of authoritative GAAP. *See* ¶ 52. ***There have not been nineteen sources for GAAP***

16

accounting restatement is sufficient to show that an earlier statement was false when made. *In re H & R Block Sec. Litig.*, 527 F. Supp. 2d 922, 928 (W.D. Mo. 2007) ("[T]he mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made."); *Hemmer Grp. v. Sw. Co.*, 527 Fed. App'x 623, 626 (9th Cir. 2013) ("By definition, a restatement corrects financial data that was false when made."); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001) ("the existence of restated financial results is sufficient" for purposes of alleging a misstatement). Here, the Company admitted that the restatements were necessitated to correct errors. ¶¶109, 132, 158-59. Moreover, "[t]he complaint adequately alleges the originally reported financial data, the restated financial data, and the difference between the two." *Hemmer Grp.*, 527 Fed. App'x at 626; ¶73. Consequently, "[t]he complaint adequately alleges falsity." *Hemmer Grp.*, 527 Fed. App'x at 626.

The restatements likewise established the materiality of the earlier misstatements because under GAAP, previously issued financial statements should be restated only to correct *material* accounting errors that existed at the time the statements were originally issued. ¶56; *see Gebhardt v. ConAgra Foods, Inc*., 335 F.3d 824, 829 (8th Cir. 2003) ("[w]e are inclined to agree to a limited extent" that the "restating of revenues is a strong indicium

---

*for over fifteen years! See* Accounting Standards Update No. 2009-01, Statement of Fin. Acct. Standards No. 168 (Fin. Acct. Standards Bd. 2009), available at https://www.fasb.org/standards/accounting-standard-updates; Press Release, Fin. Acct. Standards Bd., FASB Accounting Standards Codification Launches Today (July 1. 2009), https://fasb.org/page/getarticle?uid=fasb_NewsRelease07-01-09Body_0228221200. Moreover, none of the restatements are due to conflicting GAAP guidance and Defendants do not argue otherwise. Moreover, none of the restatements are due to conflicting GAAP guidance and Defendants do not argue otherwise.

of materiality"); *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 815 (N.D. Ill. 2017); *In re Miller Energy Res. Sec. Litig.*, 2014 WL 415730, at *16 (E.D. Tenn. Feb. 4, 2014).[18] The Complaint describes significant changes in financial data and "reproduces a chart" that identifies the numbers "as originally stated, the amount it was restated by, and the restated amount …. These allegations, especially when combined with the fact that the [Company] restated its financials [three times], are sufficient to plead materiality." *Hemmer Grp.*, 527 Fed. App'x at 626; ¶¶73, 89, 96-97.

Defendants' assertions that: (i) the charts in the Complaint do not show which particular figures in the financial statements are inaccurate, and (ii) the impact on the bottom line is not disclosed (MTD at 16) are false as the misstatement chart (¶73) is structured to show the misstated financial statement line items and how these adjustments flow through to the "bottom line" by summarizing their impact on earnings and EPS for continued operations. The Complaint identifies which relevant accounting standards were violated: Accounting for Restatements (¶¶53-56), Discontinued Operations (¶¶58-59), Restructuring Expenses (¶¶60-61), Property and Equipment (¶¶62-65), Intangible Assets (¶¶66-68), Principal v. Agent (¶¶69-70), and Inventory (¶¶71-72). The misstatement chart (¶73) further identifies misstatements by accounting issue (e.g., "Principal v. Agent,"

---

[18] *See also* John Carney et al., *Materiality, Restatements, and the Reasonable Investor Standard*, Bloomberg Tax (May 12, 2022 4:45 AM), https://news.bloombergtax.com/tax-insights-and-commentary/materiality-restatements-and-the-reasonable-investor-standard (Paul Munter, the former chief accountant at the SEC, noted that "when previously issued financial statements contain a material error, the error must be corrected by restating those prior period financial statements—sometimes referred to as a 'Big R' restatement.").

Inventory write down," "Previously recorded restructuring costs," "Yucatan impairments of PP&E and intangibles"), which ties them to the respective accounting guidance.

### B. The PSLRA's Safe Harbor Offers No Protection

Defendants contend that a few of the misstatements are forward-looking and protected by the PSLRA's safe harbor. MTD at 17 (citing ¶¶116, 132, 142). They are wrong. "The statements Defendants point to contain statements of *present fact* or *past fact*, to which the safe harbor does not apply." *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 729 (D. Minn. 2019). For example, Defendants point to ¶¶116 and 142 which include the statement that in response to the material weaknesses described above, management has corrected the errors in its financial statements. This is an actionable statement of *past fact* and is materially false because Lifecore's financial statements were still materially misstated and required at least one more restatement (*see* ¶¶119, 143). Defendants also point to ¶¶132 and 142, which include the statement that "[t]he remediation efforts, *which are ongoing*, are intended to both address the identified material weaknesses and to enhance our overall financial control environment…." In addition to this being a statement of *present fact*, Defendants *failed to disclose* that its previous purported remediation efforts were woefully inadequate (¶¶139, 143). The safe harbor *does not* apply to omissions of existing facts or circumstances. *Bazzelle v. NovoCure Ltd.*, 2025 WL 843668, at *19 n.22 (S.D.N.Y. March 18, 2025); *Longo v. Osi Sys., Inc.*, 2021 WL 1232678, at *8 n.6 (C.D. Cal. Mar. 31, 2021); *Carmignac Gestion, S.A. v. Perrigo Co.*, 2019 WL 3451523, at *11 (D.N.J. July 31, 2019); *Reid v. Hemispherx Biopharma, Inc.*, 2010 WL 11710594, at *4 (E.D. Pa. Apr. 20, 2010).

**C.      Defendants' SOX Certifications and Statements Regarding the Effectiveness of Lifecore's Disclosure Controls and Procedures are Actionable Statements**

Defendants incorrectly contend that the alleged false SOX certifications [19] and statements regarding the effectiveness of the Company's disclosure controls and procedures [20] are not actionable statements. MTD at 13-15. Because Plaintiffs pled that all of Lifecore's quarterly and annual reports filed during the Class Period contained material misstatements due to its failure to follow GAAP and had to be restated, and the Individual Defendants who signed/made these statements had scienter (*see infra* at 21), these statements are actionable. *See Alberici v. Recro Pharma, Inc.*, 2021 WL 798299, at *9 (E.D. Pa. Mar. 1, 2021) (stating "SOX certifications can be actionable where the plaintiff has shown that the signor was attesting to a false or misleading statement with the requisite scienter" and finding SOX certification actionable); *MAZ Partners LP v. First Choice Healthcare Sols., Inc.*, 2019 WL 5394011, at *11 (M.D. Fla. Oct. 16, 2019) (finding SOX certifications actionable "where the complaint asserts facts indicating that, at the time of the SOX certification, defendants knew or consciously avoided any meaningful exposure to the information that was rendering their SOX certification erroneous"), *R. & R. adopted*, 2020 WL 1072582 (M.D. Fla. Feb. 14, 2020). [21]

---

[19] ¶84 (signed by CEO Bolles and CFO McLaughlin), ¶87 (same), ¶90 (signed by CEO Bolles and CFO Morberg), ¶93 (same), ¶97 (same), ¶101 (same), ¶105 (same), ¶118 (signed by CEO Hall and CFO Morberg), ¶123 (same), ¶133 (same), ¶142 (same).

[20] ¶83 (signed by CFO McLaughlin), ¶86 (same), ¶89 (signed by CFO Morberg), ¶92 (signed by CEO Bolles, CFO Morberg), ¶95 (signed by CFO Morberg), ¶99 (same), ¶103 (same).

[21] Moreover, treating any of these alleged misstatements as subjective opinions does not aid Defendants. Applying *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension*

## II.    PLAINTIFFS ADEQUATELY PLEAD SCIENTER

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A "strong inference" of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter . . . at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324-26 (2007). The inference "need not be irrefutable, … or even the most plausible of competing inferences." *Id.* at 324. In evaluating the strength of an inference of scienter, "courts must consider the complaint in its entirety" because the "inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in insolation, meets that standard." *Id.* at 322-23 (emphasis in original). Moreover, at the motion to dismiss stage, a tie on scienter goes to the plaintiff. *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc*. 367 F. Supp. 3d 16, 38-39 (S.D.N.Y. 2019); *see*, *e.g.*, *Sanchez v. Centene Corp.*, 407 F. Supp. 3d 831, 847 (E.D. Mo. 2019). To plead scienter properly, a plaintiff must allege facts that constitute circumstantial evidence of either reckless or intentional behavior. *CenturyLink*, 403 F. Supp. 3d at 730. Plaintiffs "may satisfy the scienter element with proof of severe recklessness, that is, highly unreasonable

---

*Fund* in the 10(b) context, an opinion statement can be actionable: (i) if the opinion was subjectively false, *i.e.*, was not sincerely held, *or* (ii) the opinion was embedded with statements of untrue facts; *or* (iii) the speaker omitted material facts about the basis for the opinion, thereby rendering the opinion misleading to a reasonable person. 575 U.S. 175, 176 (2015). The allegations here satisfy the second prong because Defendants failed to disclose that their accounting treatment did not conform to GAAP. *See generally* ¶¶57-78.

21

omissions or misrepresentations that present a danger of misleading buyers or sellers which is either known to the defendant, or is so obvious that the defendant must have been aware of it." *Id.*

At the motion to dismiss stage, Plaintiffs have alleged sufficient evidence to support a strong inference of scienter by Defendants. For example, during the Class Period, Defendants recklessly failed to maintain proper internal controls over financial reporting. Defendants did not properly account for inventory valuation, the capitalization of interest assets under construction, recording of development revenue and related cost of sales, the presentation of certain operating costs and expenses of continuing operations and discontinued operations, and the write-off of other receivables of the Company's former Curation Foods businesses, as reflected in the tables in the Complaint. ¶¶73, 164. Additionally, Defendants were reckless in their restatement efforts. In the 2022 Form 10-K, Defendants assured investors that, "management has corrected the error in its interim financial statements." ¶¶116, 165. However, the purportedly corrected financial statements would have to be restated. Defendants' failure to maintain proper internal controls was so severe and reckless that it necessitated several restatements, resulting in multiple error-laden financial statements for the same period. *See* ¶82. In addition to initially presenting false financial statements for all relevant periods, when Defendants presented the restated financial statements for FY 2021, Q3 FY 2022, FY 2022, and Q1 FY 2023 as "corrected," these financial statements were, in fact, still materially misstated and required at least one more restatement (FY 2022 financial statements were restated three times). ¶¶34, 113, 165. The sheer number of GAAP violations and three restatements add to the inference of

22

scienter under the holistic approach. *See Montalvo v. Tripos, Inc.*, 2005 WL 2453964, at *8 (E.D. Mo. Sept. 30, 2005).

Moreover, the "magnitude of the accounting discrepanc[ies]" bolsters scienter. *Centene*, 407 F. Supp. 3d at 846-47; *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 666 (8th Cir. 2001) (finding magnitude of company's $390 million write-down contributes to scienter). The Company's failure to follow GAAP enabled it to *understate* its: (i) operating loss by as much as **73.9%** for Q3 FY 2021, (ii) pre-tax loss from continuing operations by as much **26.8%** for FY 2022, and (iii) net loss per share from continuing operations by as much as **36.8%** for Q3 FY 2022. ¶73. Additionally, the same metrics were *overstated* by as much as (i) **33.3%**, (ii) **28.2%**, and (iii) **27.5%**, respectively, for Q3 FY 2023. ¶73. Moreover, Lifecore's segment's gross profits were *overstated* by as much as **17.4%** for Q2 FY 2023 and *understated* by as much as **28.9%** for Q3 FY 2023; Lifecore's segment gross profit margins were *overstated* by as much as **18.3%** for Q2 FY 2023 and *understated* by as much as **28.4%** for Q3 FY 2023; and Curation Foods' segment gross profits were *overstated* by as much as **214.3%** for Q3 FY 2022 and *understated* by as much as **244.3%** for Q1 FY 2023. ¶73.[22] It is difficult to imagine such severe misreporting of critical financial metrics resulted from anything other than purposeful fraud, or at the very least severe recklessness.

Plaintiffs' scienter allegations are also bolstered by executive resignations. On

---

[22] In accordance with *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008), Plaintiffs do not allege that the number of restatements and magnitude of the errors *alone* give rise to scienter. As explained herein, further indicia of scienter are alleged.

August 10, 2022, a month before Restatement No. 1, Defendant Bolles resigned as the Company's CEO. ¶167. On March 20, 2024, the same day as Restatement No. 3 was announced, the Company also announced that Defendant Hall would be stepping down as CEO. ¶167. These resignations are probative of scienter. ¶167. Indeed, "in the context of the other evidence and coupled with evidence of timing," these resignations further support Plaintiffs' scienter allegations. *CenturyLink*, 403 F. Supp. at 734; *Plymouth Cnty. Ret. Sys. v. Patterson Cos.*, 2019 WL 3336119, at *20 (D. Minn. July 25, 2019) (finding "resignation buttresse[d] the inference of scienter under the holistic approach"), *R. & R. adopted, modified on other grounds*, 2019 WL 4277302 (D. Minn. Sept. 10, 2019); *see also In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 976 (N.D. Cal. 2009) (finding "the proximity of Defendants' departures to the financial restatements and investigations adds one more piece to the scienter puzzle" and stating "the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances").

Additionally, the claimed remedial actions undertaken by the Company evidence knowledge concerning the material weakness in internal control over financial reporting and the Company's remedial actions in response thereto. *See* ¶¶116, 132, 142; *Centene*, 407 F. Supp. 3d at 846-47 ("Besides these material omissions, a strong showing of scienter is supported by . . . the remedial actions already undertaken…."); *see, e.g.*, *In re Chronimed Sec. Litig.*, 2002 WL 1016824, at *5-6 (D. Minn. May 16, 2002) (finding company's remedial actions supported scienter) (finding company's remedial actions supported scienter). Here, the remedial actions were first described in the Company's 2022 Form 10-

24

K filed on September 14, 2022, signed by Defendants Hall and Morberg,[23] as well as in the Company's Q2 2023 and Q3 2023 10-Qs, both signed by Morberg, and filed on March 16, 2023 and June 2, 2023, respectively.[24] Morberg and Hall also signed the SOX certifications with respect to all three of these SEC filings,[25] which, under these circumstances, is further indicia of scienter. *See In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 906 (D. Minn. 2011) (D. Minn. 2011) (considering CEO and CFO prepared and signed SEC filings and SOX certifications for purposes of scienter); *In re MoneyGram Int'l, Inc.*, 626 F. Supp. 2d 947, 981 (D. Minn. 2009) (stating SOX certifications may be probative of scienter if they are accompanied by facts showing defendants "were aware of a GAAP violation and disregarded it").

Moreover, on March 26, 2024, just six days after the Company filed its 2023 Form 10-K in which it fully disclosed the scope of its internal control problems, the Company filed a Form 8-K which stated that Lifecore's independent registered public accountant, E&Y "declined to stand for reappointment as the Company's independent registered public accounting firm for the Company's fiscal year ending May 26, 2024." ¶168. Auditors regularly decline to be reappointed when they disagree with a company's accounting treatments or believe that management is not acting with integrity. ¶168. Here, Plaintiffs allege that E&Y's decision to drop its client and walk away from future fees was the result of Lifecore's recklessly prepared financial statements resulting in several restatements,

---

[23] ¶109.
[24] ¶¶131, 141.
[25] ¶¶118, 133, 142.

including multiple restatements for certain periods. ¶¶82, 168. *See Vanderhoef v. China Auto Logistics, Inc.*, 2021 WL 3260849, at \*5 (D.N.J. July 30, 2021) (finding GAAP violations, executive and auditor resignations, and that individual defendants maintained c-suite positions, supported inference of scienter); *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1358 (S.D. Fla. 2005) (listing auditor resignations as one of several indicia of scienter courts consider).[26]

Furthermore, the fact that the Individual Defendants here were the highest-ranking Lifecore executives (CEOs and CFOs) also supports an inference of scienter when considered in tandem with all the other allegations discussed herein. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003); *China Auto*, 2021 WL 3260849, at \*5; *Diamond Foods*, 2012 WL 6000923, at \*9. After the Company first disclosed a material weakness in the Company's internal control over financial reporting and Restatement No. 1 on September 14, 2022, it is fair to conclude that CEO Hall and CFO Morberg were

---

[26] Defendants argue that the inference of scienter is negated by E&Y's statement *in its July 2021 audit report included in the Company's 2021 Form 10-K* that the Company's financial statements complied with GAAP. MTD at 25. But: (i) this has no bearing as to later false and/or misleading statements made in subsequent reporting periods during the Class Period; (ii) there are no other clean audit opinions during the Class Period, which spans almost 3.5 years; (iii) these financial statements had to be restated as well; and (iv) discovery is needed "to evaluate what communications passed between the company and the auditor as well as what, if anything, was hidden from the auditor." *In re Diamond Foods, Inc., Sec. Litig.*, 2012 WL 6000923, at \* 8 (N.D. Cal. 2012). *See Moneygram*, 626 F. Supp. 2d at 974, 983 (holding facts gave rise to an inference of scienter in connection with misstated financials *notwithstanding auditor's opinion on financial statements*); *see also In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at \*8 (C.D. Cal. Jan. 26, 2021) ("Many courts have found adequate allegations of scienter even when the defendants had obtained 'clean' audit opinions from their independent auditors and had never restated their financial statements."). For this reason, E&Y's audit opinion does not, *standing alone*, negate any otherwise compelling inference of scienter.

focused on these issues. *See* ¶92 ("Our management is responsible for establishing and maintaining adequate internal control over financial reporting."); *In re McLeodUSA Inc.*, 2004 WL 1070570, at *6 (N.D. Iowa Mar. 31, 2004) (stating that for purposes of scienter, federal courts assume "that individuals in top management of a corporation are aware of matters central to that business's operation"); *see also* Committee of Sponsoring Organizations of the Treadway Commission, Internal Control – Integrated Framework, at 54 (May 2013) [27] ("The chief executive officer and senior management . . . are responsible for designing, implementing, conducting, and periodically assessing the structures, authorities, and responsibilities needed to establish accountability for internal control at all levels of the organization.").

For all these reasons, the Court should "find[] that the totality of the allegations raises a sufficient specter of scienter so as to meet the threshold under the Reform Act." *Chronimed*, 2002 WL 1016824, at *6 (finding scienter based on collective allegations even where certain allegations are insufficient, on their own).

## III.   PLAINTIFFS ADEQUATELY PLEAD LOSS CAUSATION

Allegations of loss causation are not subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. All that is required is that plaintiff provide "some indication of the loss and the causal connection that the plaintiff has in mind," consistent with Rule 8(a). *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *St. Jude*, 836 F. Supp. 2d at 908. The Eighth Circuit has noted that the "[loss] causation requirement for damages is not

---

[27] Available at https://pdfcoffee.com/coso-internal-control-integrated-framework-may-2013-2-pdf-free.html.

very stringent.'" *ConAgra Foods*, 335 F.3d at 831.

Here, Plaintiffs allege that Defendants' false and misleading statements[28] caused investors to purchase Lifecore securities at inflated prices,[29] and that the truth was gradually revealed through a series of partial corrective disclosures throughout the Class Period.[30] When the truth became known, the stock price fell.[31] This satisfied Plaintiffs' burden for loss causation because Plaintiffs adequately alleged a causal nexus between Defendants' actions and the stock drop. *CenturyLink*, 403 F. Supp. 3d at 735-36.

Defendants argue that loss causation is not sufficiently pled because Plaintiffs "allege [certain] stock price declines *arising from intervening events*" that were "not caused by the alleged revelation of truth." MTD at 25-26. But Plaintiffs do not allege any intervening events. Moreover, even if they did, "the significance of intervening events, if any existed, create[s] a fact issue that [can]not be resolved in a motion to dismiss under Rule 12(b)(6)." *See Shash v. Biogen*, 84 F.4th 1, 21 (1st Cir. 2023) (quoting *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1154 (10th Cir. 2015)); *DeMarco v. Robertson Stephens Inc.*, 318 F. Supp. 2d 110, 126 (S.D.N.Y. 2004). Defendants argue that the stock price drops after Lifecore's announcements that it would not be able to timely file its quarterly or annual reports (¶¶126, 144, 149, 152) or that it had received NASDAQ notification letters regarding the Company's non-compliance with listing requirements (¶¶127, 146, 154,

---

[28] *See generally* ¶¶83-148.

[29] ¶¶42, 124, 141, 180, 184, 185, 191.

[30] *See* ¶¶109-11, 114-15, 120, 126-27, 129, 131, 134, 138, 140-41, 144, 146, 149, 151-52, 154, 156, 158-60.

[31] *See* ¶¶124, 128, 130, 138, 145, 147, 150, 153, 155, 157, 161.

156), "are not recoverable because they are not caused by the alleged misstatements." MTD at 27. But they are wrong. "[T]o establish loss causation, a plaintiff is not confined to only showing a corrective disclosure that both identifies a specific prior false representation and calls [it] into question." Indeed, Plaintiffs need not identify "a corresponding, mirror-image prior representation for every disclosure that precedes a share price decline." *St. Jude*, 836 F. Supp. 2d at 910. Here, the corrective disclosures are inextricably linked to the Company's misrepresentations and/or failure to disclose that Lifecore recklessly maintained deficient internal controls over financial reporting; as a result of the deficient internal controls, the Company issued numerous financial statements that materially misstated the Company's revenue, profits, and operating losses; Lifecore's purported remediation efforts with respect to the internal control deficiencies were ineffective; and all of the foregoing impaired Lifecore's ability to timely file periodic reports with the SEC in compliance with NASDAQ listing requirements. ¶6. While the "chain of causation might be long[,]" "at the pleading stage[,] Plaintiffs have alleged enough to provide Defendants with 'notice of what the relevant loss might be or of what the causal connection might be between that loss and the misrepresentation.'" *St. Jude*, 836 F. Supp. 2d at 910-11 (quoting *In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 701 (D. Minn. 2009)).

Defendants also contend that loss causation is not adequately pleaded because Plaintiffs do not allege a stock price decline after the first of three restatements in a series of disclosures. MTD at 25-26. However, loss causation may be "adequately pleaded by allegations that 'that the stock dropped after the last disclosure in the series of disclosure events.'" *MoneyGram*, 626 F. Supp. 2d at 984 (quoting *Lormand v. US Unwired, Inc.*, 565

29

F.3d 228, 266 n.33 (5th Cir. 2009)). Indeed, even "increases in stock prices after a partial disclosure that is within a series of disclosures does not preclude a final showing of loss causation." *Lormand*, 565 F.3d at 266 n.33.[32]

Defendants contend that two of the alleged partial corrective disclosures are not corrective because they repeat known information regarding the existence of a material weakness and the ineffectiveness of internal controls as of May 29, 2022, as disclosed in the Company's 2022 Form 10-K (MTD at 27 (citing ¶¶ 120, 124, 141)). But Defendants are incorrect as each of the two alleged partial corrective disclosures revealed *new information* – that the Company's disclosure controls and procedures were not effective *as of new dates* – August 28, 2022, and February 26, 2023, respectively. ¶¶120, 141; *see Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 672-74 (D.S.C. 2016) (rejecting argument that earnings call, during which material weakness was discussed, could not serve as corrective disclosure because material weakness had already been disclosed six days earlier in the Company's 10-K, and noting that earnings call provided *new information* regarding material weakness); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1263-64 (D. Nev. 2019) (finding loss causation where plaintiffs alleged a series of partial

---

[32] Defendants' reliance on *In re Buca Inc. Sec. Litig.*, 2006 WL 3030886, at *9 (D. Minn. Oct. 16, 2006), is misplaced as the case does not support their argument that "[t]he failure to allege a stock price drop following a partial corrective disclosure 'negates Plaintiffs' allegation that the fraud was gradually disclosed through a series of partial disclosures.'" MTD at 26. In *Buca*, the court held that because *three of the four* alleged partial disclosures either did not constitute a corrective disclosure or plaintiff failed to identify a stock price drop following the disclosure, *the one remaining alleged partial corrective disclosure* and associated stock price drop "negates Plaintiffs' allegation that the fraud was gradually disclosed through *a series of partial disclosures*." *In re Buca*, 2006 WL 3030886, at *9.

corrective disclosures "exposed new information and shed new light on existing public information"); *CenturyLink*, 403 F. Supp. 3d at 736 (finding loss causation where corrective disclosures revealed new information). Consequently, Defendants' argument may be ignored.[33]

## IV.    PLAINTIFFS STATE A CLAIM UNDER SECTION 20(a)

Defendants contend that because Plaintiffs have failed to adequately plead a predicate Section 10(b) violation, Plaintiffs' claim under Section 20(a) should also be dismissed. MTD at 28. However, because Plaintiffs have adequately pled a Section 10(b) claim, their argument fails. *See St. Jude*, 836 F. Supp. 2d at 911-12.

### CONCLUSION

For all the above reasons, Defendants' motion should be denied in its entirety.[34]


 Dated: May 23, 2025                                    Respectfully submitted,

                                                        **CUNEO GILBERT & LaDUCA, LLP**

                                                         */s/ Robert K. Shelquist*
                                                        Robert K. Shelquist (#21310X)
                                                        5775 Wayzata Blvd., Suite 620
                                                        St. Louis Park, MN 55416
                                                        (612) 254-7288
                                                        rshelquist@cuneolaw.com

---

[33] Additionally, "Defendants essentially ask this Court to weigh their truth-on-the-market defense. This [is] a defense that seeks to rebut the fraud-on-the market presumption of reliance by proving that" the market was privy to the truth. *Patterson*, 2019 WL 3336119, at *21. "This is an intensely fact-specific defense that is rarely appropriate to determine at the motion to dismiss stage." *Id.*

[34] If the Complaint contains pleading deficiencies, Plaintiffs request leave to amend, which shall be freely given. *See Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055, 1072 (D. Neb.), *aff'd*, 889 F.3d 920 (8th Cir. 2018).

*Liaison Counsel to Plaintiffs and the Proposed Class*

**POMERANTZ LLP**

*/s/ Brenda Szydlo*
Jeremy A. Lieberman (*pro hac vice*)
Brenda Szydlo (*pro hac vice*)
Dean Paul Ferrogari (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
(212) 661-1100
jalieberman@pomlaw.com
bszydlo@pomlaw.com
dferrogari@pomlaw.com

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim (*pro hac vice*)
Ha Sung (Scott) Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
(212) 686-1060
philkim@rosenlegal.com
skim@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

**WOLF   HALDENSTEIN   ADLER FREEMAN & HERZ LLC**
Carl Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
(312) 984-0000
malmstrom@whafh.com

*Additional Counsel for Plaintiff Hugh Robert Holmes*

32