**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| DAVID CAREW, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIFECORE BIOMEDICAL, INC., ALBERT D. BOLLES, JAMES G. HALL, BRIAN MCLAUGHLIN, and JOHN MORBERG,<br><br>Defendants. | Civil File No. 0:24-cv-03028 (LMP/EMB)<br><br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF REPLY TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT ........................................................................................................... 3

        A.    Plaintiffs Fail to Plead Falsity ..................................................................... 3

        B.    Plaintiffs Fail to Plead Scienter .................................................................. 5

        C.    No Loss Causation....................................................................................... 12

III.    CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brendon v. Allegiant Travel Co.*,
  412 F. Supp. 3d 1244 (D. Nev. 2019) ............................................................... 13

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) ........................................................................ 5

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ........................................................................................ 12

*Epstein v. World Acceptance Corp.*,
  203 F. Supp. 3d 655 (D.S.C. 2016) ................................................................. 13

*Espinoza v. Whiting*,
  8 F. Supp. 3d 1142 (E.D. Mo. 2014) ................................................................ 8

*Florida State Board of Administration v. Green Tree Financial Corporation*,
  270 F.3d 645 (8th Cir. 2001) ............................................................................ 6

*Gebhardt v. ConAgra Foods, Inc.*,
  335 F.3d 824 (8th Cir. 2003) .......................................................................... 12

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp.2d 474 (S.D.N.Y. 2004) ............................................................... 3

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  403 F. Supp. 3d 712 (D. Minn. 2019) ........................................................ 10, 13

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008) ................................................................*passim*

*In re Dynavax Sec. Litig.*,
  2018 WL 2554472 (N.D. Cal. June 4, 2018) .................................................... 8

*In re H & R Block Sec. Litig.*,
  527 F. Supp. 2d 922 (W.D. Mo. 2007) ............................................................. 3

*In re Navarre Corp. Sec. Litig.*,
  299 F.3d 735 (8th Cir. 2002) ....................................................................... 1, 3

ii

*In re Possis Med., Inc.*,
 2007 WL 335051 (D. Minn. Feb. 1, 2007), *aff'd sub nom. Cornelia I.
 Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778 (8th Cir. 2008) ........................... 9

*In re Synovis Life Techs., Inc. Sec. Litig.*,
 2005 WL 2063870 (D. Minn. Aug. 25, 2005) .............................................................. 9

*In re UTStarcom, Inc. Sec. Litig.*,
 617 F. Supp. 2d 964 (N.D. Cal. 2009) ....................................................................... 10

*K-tel Int'l Sec. Litig.*,
 300 F.3d 881 (8th Cir. 2002) ...................................................................................... 3

*Little Gem Life Scis. LLC v. Orphan Med., Inc.*,
 2007 WL 541677 (D. Minn. Feb. 16, 2007) ................................................................ 4

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
 367 F. Supp. 3d 16 (S.D.N.Y. 2019) ........................................................................... 8

*Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*,
 2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ............................................................ 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015) ................................................................................................... 5

*Perez v. Target Corp.*,
 2024 WL 4804656 (D. Minn. Nov. 15, 2024) .............................................................. 3

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
 2019 WL 3336119 (D. Minn. July 25, 2019) .......................................................... 4, 10

*Podraza v. Whiting*,
 790 F.3d 828 (8th Cir. 2015) ........................................................................ 1, 5, 6, 11

*Elam v. Neidorff*,
 544 F.3d 921 (8th Cir. 2008) ................................................................................... 1, 6

*Rand-Heart of New York, Inc. v. Dolan*,
 812 F.3d 1172 (8th Cir. 2016) ................................................................................... 13

*Sanchez v. Centene Corp.*,
 407 F. Supp. 3d 831 (E.D. Mo. 2019) ...................................................................... 7, 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
 551 U.S. 308 (2007) ................................................................................................... 6

*Trustees of Welfare & Pension Funds of Loc. 464A - Pension Fund v. Medtronic PLC,*
    726 F. Supp. 3d 938 (D. Minn. 2024) ............................................................... 5, 10, 11

*Vanderhoef v. China Auto Logistics Inc.,*
    2021 WL 3260849 (D.N.J. July 30, 2021) ........................................................... 11, 12

## I.    INTRODUCTION

Plaintiffs' Opposition repeatedly asserts that the Complaint meets the PSLRA's heightened pleading standard because Lifecore's quarterly and annual reports contained GAAP accounting errors that were restated.  Opp. at 2-4, 9-15, 16-18, 20-23.  But under Eighth Circuit law, "allegations of GAAP violations are insufficient to state a securities fraud claim unless coupled with evidence of corresponding fraudulent intent."  Mot. at 21-22 (quoting *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015)).  Plaintiffs fail to identify any evidence of corresponding fraudulent intent and fail to distinguish or even address *eight* separate Eight Circuit cases—including *Podraza*, *Elam v. Neidorff*, 544 F.3d 921 (8th Cir. 2008), and *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735 (8th Cir. 2002), among others—that require a complaint alleging false statements regarding financial results to include factual allegations of "contemporaneous reports, witness statements, or any information that had actually been provided to defendants" contradicting the reported numbers.  *Elam*, 544 F.3d at 927.

When Plaintiffs do cite Eighth Circuit law, they fail to engage with the substance and holdings.  For example, the Eighth Circuit has held that the "sheer number of [accounting] violations, and the magnitude of the restatements" cannot give rise to a strong inference of scienter.  *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008).  Nonetheless, Plaintiffs rely extensively on the number and magnitude of restatements and only briefly reference *Ceridian* in a two-sentence footnote to argue it does not dictate dismissal because Plaintiffs purportedly alleged other facts raising an inference of scienter.  Opp. at 4, 22-23, n.22.  But the only other facts alleged in the Complaint are the departure

1

of health foods executives while Lifecore divested its health foods businesses and EY's decision not to continue as Lifecore's public auditor. Neither of these allegations support an inference of scienter.

A comparison to the detailed, but insufficient, allegations in *Ceridian*—which included three restatements with "dozens, if not hundreds, of accounting errors," allegations from two whistleblowers and three confidential witnesses, and details regarding the CEO and CFO selling 200,000 shares of stock over the five-month class period—demonstrates that Plaintiffs have not pleaded facts raising an inference of scienter that is "cogent and at least as compelling as [the] opposing inference of nonfraudulent intent." *Ceridian*, 542 F.3d at 244. The opposing inference of negligence or inadvertent mistake in trying to meet complex accounting rules during Lifecore's challenging sale of its health foods business is simply more compelling.

Plaintiffs also cannot rehabilitate the Complaint's deficient falsity and loss causation allegations. With respect to falsity, this circuit requires allegations of contemporaneous facts that contradict Defendants' statements at the time they were made. Plaintiffs do not identify any such particularized factual allegations, rely on inapposite, out-of-circuit cases to argue that the PSLRA safe harbor does not apply to forward looking Remediation Statements, and cannot effectively refute the conclusion that Disclosure Evaluation Statements and SOX Certifications are statements of opinion. With respect to loss causation, Plaintiffs do not connect their claimed loss to the alleged misstatements. Instead, they continue to characterize all Lifecore's restatements as corrective disclosures even though the Company's stock price rose after the First Restatement.

2

The Amended Complaint should be dismissed.

## II.   ARGUMENT

### A.   Plaintiffs Fail to Plead Falsity

The PSLRA requires that Plaintiffs specify why each allegedly false or misleading statement was false when made.  *See K-tel Int'l Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002).  However, Plaintiffs rely entirely on the issuance of later restatements to allege that nearly every SEC filing during the Class Period was false or misleading, ignoring clear Eighth Circuit authority that "[s]imply alleging that defendants made a particular statement at a given time . . . and then showing in hindsight that the statement is false misses the [PSLRA's] pleading requirement." *Navarre,* 299 F.3d at 743.  Contrary to Plaintiffs' assertion, an accounting restatement alone is not sufficient to plead falsity under Eighth Circuit law.[1]  Plaintiffs' failure to "indicate why the alleged misstatements would have been false or misleading at the several points in time . . . they were made" is fatal.  *Perez v. Target Corp.*, 2024 WL 4804656, at *9 (D. Minn. Nov. 15, 2024) (dismissing complaint for failure to plead falsity).[2]  Plaintiffs' hindsight pleading is insufficient, and their claims should be dismissed on that basis alone.

---

[1] Plaintiffs cite a single Western District of Missouri case to support their argument.  *In re H & R Block Sec. Litig.*, 527 F. Supp. 2d 922, 928 (W.D. Mo. 2007).  But the language that they attribute to that case is actually from inside a parenthetical quoting a 2004 Southern District of New York case and the court does not reach this broad conclusion.  *Id.* (quoting *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 486-87 (S.D.N.Y. 2004)).  This Circuit has not found a restatement sufficient to establish falsity.

[2] Plaintiffs' reference to the Accounting Standards Codification misses the point.  GAAP standards continue to require interpretation and allow variance, which is relevant in the context of a highly complex divestiture spanning multiple years.  Indeed, if the GAAP standards were as clear and simple as Plaintiffs suggest, it would not have required over twenty paragraphs of the Complaint to summarize relevant rules.  *See* AC ¶¶ 51-72.

3

In addition, Plaintiffs fail to rebut the argument that the forward-looking Remediation Statements are protected by the PSLRA safe harbor.  *See* Mot. at 17-19.  They argue that because remediation activities were "ongoing," and Lifecore had "corrected the errors in its financial statements," Opp. at 19 (citing AC ¶¶ 116 and 142), all related remediation statements were of present fact.  *Id.* (citing AC ¶¶ 132 and 142).  But Plaintiffs do not allege anything false about Lifecore's statement that it had corrected the errors it had identified.  Mot. at 17.  Nor do Plaintiffs allege any facts showing the statement that remediation efforts were "ongoing" was false or misleading.  Indeed, the fact that there were additional restatements confirms that remediation was ongoing.  Opp. at 19.  Regardless, a single phrase in one of Plaintiffs' extensive block quotes referencing ongoing activity does not render all statements about remediation "present fact."  On the contrary, "'mixed statements' consisting of forward looking and non-forward looking factors are nonetheless treated by courts as forward looking."  *Little Gem Life Scis. LLC v. Orphan Med., Inc.*, 2007 WL 541677, at *6 (D. Minn. Feb. 16, 2007).  Because the Remediation Statements were accompanied by meaningful cautionary language, and Plaintiffs failed to allege actual knowledge of falsity at the time the statements were made, the allegations about the Remediation Statements should be dismissed.[3]  Mot. at 17-19.

---

[3] Plaintiffs take issue with the fact that Lifecore "failed to disclose" that its previous purported remediation efforts were inadequate. Opp. at 19.  But "[t]he federal securities laws do not require a company to accuse itself of wrongdoing" (*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2019 WL 3336119, at *15 (D. Minn. July 25, 2019)), and the Company's disclosures are clear that the remediation efforts were "ongoing."  AC ¶¶ 132, 142.

Plaintiffs cannot refute the conclusion that the Disclosure Evaluation Statements and SOX Certifications are inactionable opinion statements. They claim, in a cursory footnote, that the statements are actionable because they are "embedded with statements of untrue facts." Opp. at 20-21 n.21. But Plaintiffs fail to identify what they claim to be an embedded statement of untrue fact. *Id.* And *Omnicare* does not permit a plaintiff to "second-guess inherently subjective and uncertain assessments" by simply claiming there are untrue embedded facts, without identifying the allegedly untrue fact and how it makes the opinion statement misleading. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); *see also Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1323 (11th Cir. 2019) (affirming dismissal with prejudice for failure to allege "with particularity" that "[opinion] statements embedded false facts"). As explained in the Motion, subjective and uncertain assessments are only actionable when the complaint sufficiently alleges the opinion statements are "both false" and "not honestly believed when they were made." Mot. at 13 (quoting *Trustees of Welfare & Pension Funds of Loc. 464A - Pension Fund v. Medtronic PLC*, 726 F. Supp. 3d 938, 962 (D. Minn. 2024)). Plaintiffs do not allege facts indicating that, at the time of the SOX certification, defendants knew or consciously avoided information that rendered their SOX certification erroneous. Opp. at 20. Claims regarding the SOX certifications and Disclosure Evaluation Statements should be dismissed. Mot. at 13-14.

### B.    Plaintiffs Fail to Plead Scienter

The Opposition confirms that Plaintiffs do not meet the standard for pleading scienter, which requires a "strong" inference of intentional or severely reckless misconduct

to survive a motion to dismiss. *Podraza*, 790 F.3d at 836-37 (an inference of scienter must be "cogent and at least as compelling as any opposing inference" of nonfraudulent intent). Plaintiffs rely almost exclusively on Second and Ninth Circuit authority to argue the mere existence of Lifecore's restatements is proof of recklessness. Opp. at 22. Their cases do not support this argument. Eighth Circuit law and Plaintiffs' own cases confirm that even "significant" GAAP violations are "insufficient by [themselves] to give rise to a strong inference of scienter." *Podraza*, 790 F.3d at 838 (rejecting that the "magnitude of the GAAP violations . . . demonstrates scienter"); *see also Elam*, 544 F.3d at 927 (requiring allegations of contemporaneous contradictory information). Plaintiffs do not cite a single Eighth Circuit case from the last 20 years, except for a passing reference to *Ceridian* in a footnote. *See* Opp. at 23 n.22.[4] They fail to address eight separate Eighth Circuit cases analyzed extensively in the Motion.

Comparing the facts alleged in *Ceridian* highlights why Plaintiffs avoid engaging with the Eighth Circuit standard. *See Ceridian*, 542 F.3d at 246-48. The *Ceridian* complaint alleged three restatements arising from numerous accounting issues and resulting in significant overstatement of earnings, all calibrated to leak information slowly

---

[4] Plaintiffs' passing citation to *Florida State Board of Administration v. Green Tree Financial Corporation*, 270 F.3d 645, 66 (8th Cir. 2001) is unavailing. *Green Tree* relied heavily on motive and opportunity allegations under a scienter standard applied before the U.S. Supreme Court redefined scienter in *Tellabs*, and before the Eighth Circuit analyzed GAAP restatements under that new standard. *Id.* at 664-65; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). *Green Tree* was also based on inapposite facts which include (1) the CEO ensuring financial results would maximize pay under an "extraordinary compensation package" that was set to expire and (2) well-pleaded facts of defendants had contemporaneous knowledge of contradictory information. *Green Tree*, 270 F.3d at 665.

to avoid a catastrophic impact on stock price. *Id.* at 245-46. The *Ceridian* complaint also included allegations from two whistleblowers and three confidential witnesses about the executives' contemporaneous knowledge, and detailed significant class period stock sales by the individuals responsible for the statements. *Id.* at 246 (alleging that the CFO and CEO sold 200,000 shares of stock over five months during the class period). The Eighth Circuit nonetheless found these allegations insufficient to raise a strong inference of scienter. *Id.* at 247-48. In reaching this conclusion, the Court reaffirmed that the magnitude and number of accounting violations do not give rise to an inference of recklessness or scienter under Eighth Circuit law. *Id.* at 246. It then concluded that confidential witness allegations and executive stock sales were not sufficient additional facts to meet the relevant standard when viewing the complaint as a whole. *Id.* at 246-47, 249 (finding the inference of nonfraudulent accounting errors more compelling). Plaintiffs here have far weaker scienter allegations than those rejected in *Ceridian*. Like *Ceridian*, Plaintiffs rely on the number and magnitude of restatements, but "pleading an amalgam of unrelated GAAP violations, without more, does not give rise to a strong inference of scienter." *Id.* at 246.

The cases Plaintiffs cite further demonstrate that the facts alleged do not meet the PSLRA pleading standard. For example, Plaintiffs repeatedly reference *Sanchez v. Centene Corp.*, but *Centene* confirms that Plaintiffs must plead contemporaneous facts demonstrating Defendants' knowledge at the time of the challenged statements. *See* 407 F. Supp. 3d 831, 833-34 (E.D. Mo. 2019). The *Centene* complaint detailed how the company conducted nine months of diligence on a merger target, then used "purchase

7

accounting" to conceal $390 million in expected losses, all motivated by a desire to obtain regulatory approval of the merger. *Id.* at 835-36, 43-45. When analysts "extensively questioned" the company about the adequacy of reserves after diligence, Centene stated that there were "no surprises" and "no unfavorable developments." *Id.* at 836, 41-43, 46. Additionally, defendants held an investor day presentation "intended to help mitigate any concerns" regarding reserves before closing the transaction. *Id.* at 843-45.

Plaintiffs here lack comparable contemporaneous facts indicating fraudulent intent. Instead, Plaintiffs include conclusory allegations about leadership transitions and EY's decision not to stand for reappointment. However, it is not enough to assert that multiple weak factors "collectively warrant a particular conclusion." *Ceridian.*, 542 F.3d at 246. Plaintiffs offer no allegations of insider stock sales, contemporaneous documents, or statements from confidential witnesses. *Espinoza v. Whiting*, 8 F. Supp. 3d 1142, 1155 (E.D. Mo. 2014) ("no allegations of insider trading . . . further decreases any inference of scienter"); *In re Dynavax Sec. Litig.*, 2018 WL 2554472, at *8 (N.D. Cal. June 4, 2018) (absence of "allegations of internal documents, confidential witness statements, or [other] correspondence" weakens the argument for scienter). While allegations of scienter may be considered collectively, none of Plaintiffs allegations convert insufficient number and magnitude allegations into facts raising a strong inference of scienter.[5] No matter how

---

[5] Plaintiffs assert that a "tie on scienter" goes to plaintiff, but the "tie" in *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc*. went to plaintiffs because there were allegations of contemporaneous facts demonstrating that executive defendants had access to slide decks with "specific numbers" contradicting the statements and held monthly CEO calls where they discussed the exact misstatements at issue. 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019).

"many times the Court adds zero to zero, the result is still nil." *In re Possis Med., Inc.*, 2007 WL 335051, at *9 (D. Minn. Feb. 1, 2007), *aff'd sub nom. Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778 (8th Cir. 2008).

### 1.   Plaintiffs' Leadership Transition Allegations Do Not Support an Inference of Scienter

Plaintiffs repeat their argument that their scienter allegations are "bolstered by executive resignations" without addressing the cases holding otherwise.  Opp. at 23-24. Courts have repeatedly found that "senior corporate officers often resign or are terminated if their division of the corporation performs poorly." *In re Synovis Life Techs., Inc. Sec. Litig.*, 2005 WL 2063870, at *16 (D. Minn. Aug. 25, 2005).  Courts therefore put little to no weight on executive departures when considering whether allegations raise a compelling inference of scienter. *Id.*

Here, Plaintiffs' executive departure allegations are exceptionally weak.  The most compelling inference is that executives left for reasons wholly unrelated to the alleged fraud. Mot. at 24.  Bolles and McLaughlin were career-long executives in the health food industry and left Lifecore as part of its transition to the CDMO business.  Mot. at 4. McLaughlin retired twenty months before the First Restatement. *Id.* at 23.  Rather than being removed from his position due to alleged fraud, Lifecore announced that Bolles would transition to President of Curation Foods to oversee Lifecore's disposition of this business.  Mot. at 24.  Jim Hall retired years later, after Lifecore completed its strategic review process, and concurrent with the hiring of an executive with over twenty-five years of CDMO experience. *See* Mot. at 24.

These allegations bear no resemblance to the facts in Plaintiffs' cited cases. Opp. at 24 (listing cases). In *Plymouth*, the Court found that scienter could ***not*** be inferred from the resignation of the company's CFO—undermining Plaintiffs' argument. 2019 WL 3336119, at \*19. The Court explained that allegations regarding the CEO's resignation were "not much," and only supported the inference of scienter because the abrupt resignation was accompanied by allegations detailing the CEO's involvement in anticompetitive actions (including contemporaneous internal communications) that were investigated by multiple states and misrepresented in public disclosures. *Id.* at 19-20. Similarly, the CEO's resignation in *In re CenturyLink Sales Pracs. & Sec. Litig.* only "marginally assist[ed]" scienter allegations when he reversed his decision to remain CEO and had fired a whistleblower who raised concerns regarding the underlying issue. 403 F. Supp. 3d 712, 722, 734 (D. Minn. 2019). And the resignation in *In re UTStarcom, Inc. Sec. Litig.* occurred during an SEC investigation that resulted in an injunctive action against the CEO and was accompanied by fact witness allegations. 617 F. Supp. 2d 964, 974, 976 (N.D. Cal. 2009). These outlier cases do not support Plaintiffs' scienter claim.

Indeed, the case law explains the distinction between Plaintiffs' cases where there was some marginal support for scienter allegations and the facts present here: "For a resignation to add to an inference of scienter, a pleading must set forth allegations suggesting a compelling inference that the resignation was the result of something other than the reasonable assumption that the resignation occurred as a result of the release of bad news." *Medtronic*, 726 F. Supp. 3d at 987-88. Plaintiffs here have alleged no

10

particularized facts connecting the resignations to the alleged fraud.  Their allegations, therefore, do not contribute to any inference of scienter.  *Id.*

### 2.  EY's Decision Not to Stand for Reappointment Does Not Support an Inference of Scienter

Plaintiffs admit that Lifecore retained EY as its independent registered accountant, that EY provided clean audit opinions covering the first fifteen months of the purported Class Period, and that EY continued as Lifecore's independent registered accountant through the entirety of the purported Class Period.  *See* Opp. at 25-26, n. 26.  Plaintiffs also do not dispute that EY expressly disclosed that its decision not to stand reappointment was not the result of any disagreements or reportable events.  Mot. at 6; Ex. 12.  They nonetheless fail to address binding Eighth Circuit law holding that "[t]he inference of scienter is contradicted" when an auditor states the financials "complied with GAAP," *Podraza*, 790 F.3d at 838, and argue that EY's decision not to stand for reappointment was the result of "several restatements," Opp. at 25-26.  Plaintiffs' argument misses the point. Absent "concerns about the candor" of Lifecore's management, even if EY's decision not to stand for reappointment was related to restatements, it contributes nothing to an inference of scienter.  *Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *43 (C.D. Cal. Apr. 14, 2015); Mot. at 24-25.

Plaintiffs' own cases demonstrate the type of allegations necessary for an auditor's departure to contribute to an inference of scienter.  For example, in *Vanderhoef v. China Auto Logistics Inc.*, the company retained independent counsel to investigate failing internal controls and assured investors that it was "working diligently with its auditors and

independent counsel" and "intend[ed] to cooperate fully with the Investigation." 2021 WL 3260849, at *2 (D.N.J. July 30, 2021).  One month later, the company disclosed that its auditor and independent counsel resigned and that the company would not complete the investigation.  *Id.* at *8.  The resignation instead of completing a necessary investigation, which strongly suggested conflict and executive's lack of candor with the auditor, supported an inference of scienter.  *Id.*  Plaintiffs point to no such facts here.

### C.    No Loss Causation

Finally, the Opposition underscores that Plaintiffs have not adequately pled loss causation.  Plaintiffs argue that they only need to show "some indication" of a loss and a causal connection to Defendants' alleged misstatements.  Opp. at 27 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, (2005)).  But under *Dura*, Plaintiffs must show a strong "logical link" between any purported inflated price resulting from a misstatement and a subsequent economic loss.[6]  *Dura*, 544 U.S. at 336.  The long alleged Class Period and the lack of significant stock drops following most of the purported corrective disclosures indicates that it is "more likely that other factors" were the proximate cause of the loss.  Mot. at 25-26; *Dura*, 544 U.S. at 343 ("the longer the time between purchase and sale, the more likely that . . . other factors caused the loss").

---

[6] Plaintiffs' reliance on *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003) is also misplaced. *See* Opp. at 27-28.  In *Gebhardt*, the day after the company disclosed several $100 million discrepancies arising from accounting practices that circumvented GAAP and violated corporate policy, there was a significant decline in stock value. *Gebhardt*, 225 F. 3d at 827-28.  The court found the timing sufficient to establish a causal nexus.  *Id.* at 832.  Here, there is a three-and-a-half year class period with no stock price decline after alleged corrective disclosures.

Moreover, to plead loss causation, Plaintiffs must allege corrective disclosures that "present facts to the market that are new" and "publicly revealed for the first time." Mot. at 27 (citing *Rand-Heart of New York, Inc. v. Dolan*, 812 F.3d 1172, 1180 (8th Cir. 2016)).[7] Plaintiffs concede that following the First Restatement, many of the alleged "corrective disclosures" merely provided updates indicating that issues disclosed in the First Restatement were ongoing. Opp. at 30. The First Restatement alerted the market to the fact that Lifecore's disclosure controls and procedures were not effective due to material weaknesses and that they were "evaluating remediation activities." AC ¶¶ 109, 116. This information remained unchanged throughout the remainder of the Class Period. *Id.* ¶¶ 120, 131, 132, 141, 158. The fact that the process continued is not a new corrective disclosure.

The Company's announcements regarding its inability to timely file periodic reports or comply with NASDAQ suffer from the same defect—they "[did] not correct a misrepresentation" for purposes of loss causation. *Rand-Heart*, 812 F.3d at 1180. Rather, these announcements only "elaborate[d] on the previously disclosed" issues with Lifecore's internal controls over financial reporting. *Id.* (a company's announcement cannot just elaborate on "previously disclosed" information; it must have "a corrective effect"). Without allegations of new corrective information, the subsequent drop in stock price cannot be attributed to an alleged misrepresentation.

---

[7] Plaintiffs' own authority confirms that adequate corrective disclosures must provide the market with new information. *See Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 673 (D.S.C. 2016) (insufficient to "[tell] the market nothing factually" it "had not already heard"); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1264 (D. Nev. 2019) (an "adequate corrective disclosure" reveals "new information to the market"); *CenturyLink*, 403 F. Supp. 3d at 735-36 (stock dropped after multiple "revelations" from different sources each revealed new facts of the wrongdoing).

## III.   CONCLUSION

Defendants respectfully request that the First Amended Complaint be dismissed with prejudice in its entirety.

Dated:  September 15, 2025

/s/ Michael Rowe
James K. Langdon (#0171931)
Michael Rowe (#0392598)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
    langdon.jim@dorsey.com
    rowe.michael@dorsey.com

Michele D. Johnson (pro hac vice)
Andrew R. Gray (pro hac vice)
Spencer L. Chatellier (pro hac vice)
Kehaulani R. Jai (pro hac vice)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone:  (714) 540-1235
    michele.johnson@lw.com
    andrew.gray@lw.com
    spencer.chatellier@lw.com
    kehaulani.jai@lw.com

Nicholas Siciliano (pro hac vice)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 777-7021
    nicholas.siciliano@lw.com

*Attorneys for Defendants Lifecore Biomedical, Inc., Albert D. Bolles, James G. Hall, Brian McLaughlin, and John Morberg*

14