**fcUNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| DAVID CAREW and HUGH ROBERT HOLMES, *individually and on behalf of all others similarly situated*, | Case No. 24-cv-3028 (LMP/EMB) |
| Plaintiffs, | |
| v. | **ORDER APPROVING CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |
| LIFECORE BIOMEDICAL, INC.; ALBERT D. BOLLES; JAMES G. HALL; BRIAN McLAUGHLIN; and JOHN MORBERG, | |
| Defendants. | |

Robert K. Shelquist, **Cuneo Gilbert Flannery & LaDuca LLP, St. Louis Park, MN**, Jeremy A. Lieberman, Brenda Szydlo, and Dean P. Ferrogari, **Pomerantz LLP, New York, NY**, Phillip Kim and Ha Sung (Scott) Kim, **The Rosen Law Firm, P.A., New York, NY**, for Plaintiffs.

Carl Malmstrom, **Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL**, for Plaintiff Hugh Robert Holmes.

James K. Langdon and Michael E. Rowe, **Dorsey & Whitney LLP, Minneapolis, MN**, Andrew R. Gray, **Greenberg Traurig, LLP, Irvine, CA**, Kehaulani R. Jai, **Latham & Watkins LLP, Irvine, CA**, Michele D. Johnson and Spencer L. Chatellier, **Latham & Watkins LLP, Costa Mesa, CA**, and Nicholas J. Siciliano, **Latham & Watkins LLP, Chicago, IL**, for Defendants.

Lead Plaintiffs David Carew and Hugh Robert Holmes brought this securities class action alleging that Defendants made materially false and misleading statements to stockholders. *See generally* ECF No. 42. The parties reached a settlement, which the Court has already preliminary approved, ECF No. 75, and Plaintiffs now move for final approval of that settlement, ECF No. 76. Plaintiffs also move for an award of attorneys' fees,

1

expenses, and service awards for the Class Representatives. ECF No. 78. Defendants do not oppose either motion, and class members have not objected. For the following reasons, the motions are granted.

## BACKGROUND

Plaintiffs are individuals who bought stock in Defendant Lifecore Biomedical, Inc. ("Lifecore") between October 7, 2020, and March 19, 2024. ECF No. 42 ¶¶ 1, 42. Lifecore is a "diversified health and wellness company" that, until 2020, had two main components: Curation Foods and Lifecore Biomedical. *Id.* ¶ 2. Plaintiffs allege that between 2020 and 2023, Lifecore began to divest itself of its Curation Foods segment. *Id.* ¶ 3. But throughout this process, Plaintiffs allege, Lifecore misrepresented its financial status and, relevant here, the quality of its accounting processes. *Id.* ¶¶ 79–157. On March 20, 2024, Lifecore acknowledged in an SEC filing that it "did not design and operate effective internal controls" and detailed several "material weaknesses" in its internal controls and "material errors" in its financial statements. *Id.* ¶ 158. Lifecore's stock price consequently plummeted. *Id.* ¶¶ 158–61. Plaintiffs brought this action alleging that Lifecore's series of misrepresentations caused Lifecore's stock to be artificially inflated, and that its misrepresentations were in violation of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. *See id.* ¶¶ 178–93. Plaintiffs also named Albert D. Bolles (Lifecore's CEO until August 2022), James G. Hall (Lifecore's CEO after August 2022), Brian McLaughlin (Lifecore's CFO until January 2021), and John Morberg (Lifecore's CFO after January 2021) as Defendants. *Id.* ¶¶ 44–48.

Defendants moved to dismiss on March 25, 2025. ECF No. 48. Plaintiffs responded. ECF No. 57. Before Defendants replied, the parties told the Court that they were engaged in mediation and, as a result, asked for a stay. ECF No. 58. That mediation was unsuccessful, ECF No. 62, and Lifecore filed its reply, ECF No. 67. But a week before the scheduled hearing on the motion to dismiss, the parties told the Court that they had reached a settlement. ECF No. 68. Under the settlement agreement, Lifecore has deposited $3,750,000 into an escrow account, and following any deductions for attorneys' fees, expenses, and service awards, the remaining settlement funds will be distributed to class members. ECF No. 72-1 at 18; ECF No. 80 ¶ 61. That distribution will occur on a pro rata basis based on (i) the total number and value of claims submitted; (ii) when the individual claimant purchased or acquired Lifecore securities; and (iii) whether and when the claimant sold the Lifecore securities. ECF No. 80 ¶ 59; ECF No. 80-1 at 21.

Plaintiffs moved for preliminary approval of the settlement, ECF No. 69, which the Court granted, ECF No. 75. The Court set a final approval hearing for July 28, 2026. *Id.* at 3. On June 23, 2026, Plaintiffs moved for final approval of the settlement, ECF No. 76, and for attorneys' fees, expenses, and service awards, ECF No. 78. Defendants represent that notice under the Class Action Fairness Act ("CAFA") was served on all relevant authorities no later than January 27, 2026. ECF No. 85-1. Plaintiffs represent that beginning on March 27, 2026, the Settlement Administrator sent notice by mail or email of the settlement to 24,370 potential class members, with additional efforts made at providing notice to those class members whose initial notices were deemed undeliverable. ECF No. 80-1 ¶¶ 3–10. The Settlement Administrator also gave notice by posting the

settlement agreement, plan of allocation, class notice, complaint, and other important filings and deadlines in this case on various news journals and a publicly available website. *Id.* ¶¶ 11–13.  The deadline for objections was July 7, 2026.  ECF No. 75 ¶ 11.  Neither the Court nor the Settlement Administrator received any objections.  ECF No. 80-1 ¶ 15.

The Court held a final fairness hearing on July 28, 2026, at which Plaintiffs' counsel discussed why the settlement was fair, reasonable, and adequate, and why Plaintiffs' motion for attorneys' fees, expenses, and service awards should be granted.  ECF No. 83.

## ANALYSIS

### I.    Certification of the Settlement Class

This Court provisionally granted class certification, and defined the proposed class as:

> All persons and entities that purchased or otherwise acquired Lifecore securities between October 7, 2020, and March 19, 2024, and were damaged thereby.
>
> Excluded from the Settlement Class are Defendants, the officers and directors of Lifecore at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, Legion Partners Asset Management, LLC, Wynnefield Capital, Inc., and 22NW, LP. Also excluded are any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

ECF No. 75 at 2.

As for final approval, class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, and a district court may not certify a class until it "is satisfied, after a rigorous analysis," that Rule 23(a)'s certification prerequisites are met.  *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted). To certify the proposed class, the Court must conclude that the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). These requirements remain mandatory in the settlement context. *See Kruger v. Lely N. Am., Inc.*, No. 20-cv-629 (KMM/DTS), 2023 WL 5665215, at *2 (D. Minn. Sep. 1, 2023).

Here, a close review of the materials submitted in support of the unopposed motion, and other relevant materials in the case file, shows that the proposed settlement class satisfies the prerequisites of Rule 23(a) and Rule 23(b)(3), making certification for the purposes of settlement appropriate.

### a.     Rule 23(a)

Rule 23(a) provides that a class action may be maintained if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements—numerosity, commonality, typicality, and adequacy of representation—are met here.

### i.     Numerosity

There are several relevant factors pertaining to the numerosity inquiry with the most obvious being the size of the proposed class. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982). In this case, the number of potential settlement class members is in

the tens of thousands.  ECF No. 80-1 ¶¶ 3–10.  As a matter of size, this satisfies the numerosity requirement.  *See Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (explaining that a putative class size of at least 40 members generally supports a finding of numerosity); *see also W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 286 (D. Minn. 2018) (citation omitted) (noting that the "numerosity requirement is generally satisfied in class actions involving nationally traded securities").

### ii.    Commonality

Commonality "requires a showing that class members have suffered the same injury." *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 571 (8th Cir. 2015) (citation omitted) (internal quotation marks omitted).  To satisfy commonality, the class members' "claims must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  There is no requirement, however, "that every question of law or fact be common to every member of the class," and commonality may be satisfied, for example, "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation omitted).

Commonality "is easily satisfied in securities cases." *W. Va. Pipe Trades*, 325 F.R.D. at 286; *see also In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 202 (D. Minn. 2020) (citation omitted) ("In securities fraud class actions, questions of

6

misrepresentation, materiality and scienter are the paradigmatic common question[s] of law or fact." (alteration in original)). And it is satisfied here. The class is a group of similarly situated purchasers of Lifecore stock between October 7, 2020, and March 19, 2024, who allege that Lifecore made public misrepresentations and omissions that artificially inflated the price of that stock. For instance, the amended complaint alleges that Lifecore repeatedly misrepresented the adequacy of its internal financial control processes in SEC filings, only to subsequently acknowledge in later SEC filings that its internal financial control processes were insufficient. ECF No. 42 ¶¶ 83–108. But, according to the amended complaint, even these later SEC filings were half-truths, *id.* ¶¶ 109–18, because they assured investors that Lifecore had corrected the problem when, in reality, it had not, *id.* ¶¶ 124–57. Because resolution of any individual claim would require proving, at minimum, that Lifecore's misrepresentations and omissions were material—that is, that there is a "a substantial likelihood that the disclosure of the omitted fact[s] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (citation omitted)—commonality is met here.

### iii.    Typicality

The typicality requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United,*

*Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Here, whatever factual variations might exist between individual plaintiffs are minor and are likely limited to determining at which relevant time period any individual member owned Lifecore stock. Even that, though, implicates only the amount of recovery the individual plaintiff is likely entitled to, not whether the claims themselves are typical. This factor is met.

### iv.    Adequacy of Representation

To demonstrate adequacy of representation, a plaintiff must show that: "(1) the representative and [his] attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). "This inquiry requires the Court to evaluate the adequacy of both the proposed class representatives and the proposed class counsel." *Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, 577 F. Supp. 3d 970, 993 (D. Minn. 2021).

As for the first requirement, Plaintiffs have been active participants in this case by preserving documents, reviewing court filings, and communicating with counsel about the case and settlement discussions. ECF No. 80-4 ¶ 5; ECF No. 80-5 ¶ 5. Additionally, Plaintiffs' counsel and their firms have a wealth of experience litigating securities class actions. ECF No. 20-1 at 27–37 (describing experience of Pomerantz attorneys); ECF No. 25-4 (describing experience of Rosen attorneys). The Court is persuaded that Plaintiffs and their counsel will competently and vigorously litigate this matter.

8

As for the second requirement, there is no evidence in the record suggesting Plaintiffs' interests diverge from those of other settlement class members, and all settlement class members stand to benefit equally from the monetary relief offered by the settlement. *Farmington Hills Emps. Ret. Sys.*, 281 F.R.D. at 354. The Lead Plaintiffs, David Carew and Hugh Robert Holmes, along with Pomerantz LLP and the Rosen Law Firm, are adequate representatives. In sum, the Court finds the requirements of Rule 23(a) satisfied.

**b.    Rule 23(b)(3)**

The Court must next determine whether Plaintiffs' proposed class falls into one of the three categories of Rule 23(b). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**i.    Predominance**

"At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence . . . . If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (citation omitted). "An individual question is one on which evidence varies from member to member; a common question is one where the same evidence suffices for each member to make a prima facie showing." *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 859 (8th Cir. 2024). The predominance test is "readily met"

9

in certain cases alleging securities fraud. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

A securities fraud claim requires a plaintiff to show: (1) a material misrepresentation or omission by the defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance on the misrepresentation or omission, (5) economic loss, and (6) loss causation. *Matrixx Initiatives*, 563 U.S. at 37–38; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (explaining that the predominance analysis "begins, of course, with the elements of the underlying cause of action"). At least three of these elements—material misrepresentation, scienter, and loss causation—are questions of law or fact common to class members. Indeed, each focuses on Defendants' words or actions and the effect of those words or actions on the stock price. So each is a "common question." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (noting that "materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)"); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 516 (D. Minn. 2015) (noting that questions about material misrepresentation and scienter are common questions); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 475 (2013) ("[T]his Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions.").

The remaining elements—connection to the purchase, reliance, and economic loss—are typically more individualized questions, but they do not preclude the certification of a class under Rule 23(b). Starting with reliance, class members in securities cases may

10

rely on the "'fraud-on-the-market'" theory to establish that individual questions of reliance do not predominate over common questions. *Erica P. John Fund, Inc.*, 563 U.S. at 811. To invoke the theory, a plaintiff must show that "the alleged misrepresentations were publicly known," that the stock "traded in an efficient market," and that "the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *Id.* (citation omitted) (internal quotation marks omitted). The misrepresentations here were publicly known, as each came in "corporate reports filed with the SEC." *Första AP-Fonden*, 312 F.R.D. at 517; ECF No. 42 ¶¶ 79–157. So too were the misrepresentations made during the class period, a period beginning after the first misrepresentation was made and ending when Lifecore publicly disclosed its misconduct. *CenturyLink.*, 337 F.R.D. at 206 ("Plaintiffs meet the market timing prong because they allege that they purchased . . . securities during the Class Period."). And absent any objection, the Court concludes that Lifecore stock traded on an "efficient market," in large part because it traded on the Nasdaq. ECF No. 42 ¶ 80; *see Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, No. 18-cv-871 (MJD/HB), 2020 WL 5757695, at *10 (D. Minn. Sept. 28, 2020) (citation omitted) ("[S]ecurities traded on NASDAQ are often presumed to be traded on an efficient market."). Plaintiffs are therefore entitled to rely on the fraud-on-the-market presumption, which allows them to "overcome the problem of proving individualized reliance by each member of the proposed class." *Första AP-Fonden*, 312 F.R.D. at 517.

As to damages, a plaintiff must show that "damages are capable of measurement on a classwide basis," using a model consistent with liability. *Comcast Corp. v. Behrend*,

569 U.S. 27, 34 (2013). Here, Plaintiffs developed a Plan of Allocation, with the use of an expert, that distributes funds on a pro rata basis that considers "the amount of alleged artificial inflation in the prices of Lifecore publicly traded common stock" and accounts for "the portion of the price drops allegedly attributable to fraud." ECF No. 80 ¶ 59. Courts "commonly accept [similar] methodologies." *Första AP-Fonden*, 312 F.R.D. at 516; *W. Va. Pipe Trades*, 325 F.R.D. at 290 (accepting the "event study" method).

### ii.    Superiority

A class action must also be superior to other methods of adjudication to be certified under Rule 23(b)(3). This requirement is easily met here, as in most securities class actions, because individual litigation would be "either no recourse for thousands of stockholders to whom the courthouse would thus be out of bounds or a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *W. Va. Pipe Trades*, 325 F.R.D. at 290 ("Securities cases easily satisfy Rule 23(b)(3)'s superiority requirement.").

In sum, because common questions predominate over individual questions, and because a class action is a superior method of adjudicating this action, the Court finds that class certification is proper under Rule 23(b)(3).

## II.    Final Approval of the Settlement

Having certified the class, the Court also finds that the notice program carried out by the parties satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause, and CAFA *See* ECF No. 80-1 ¶¶ 3–15; ECF No. 85-1. Therefore, the only question left is whether the settlement is "fair, reasonable, and adequate." Fed. R.

12

Civ. P. 23(e)(2). In making this assessment, the Court considers the *Van Horn* factors: (1) the merits of Plaintiffs' case weighed against the terms of the settlement; (2) Defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). It is also appropriate for the Court to consider the factors enumerated in Rule 23(e)(2) along with the *Van Horn* factors. *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860–61 (S.D. Iowa 2020); *Barclay v. iFIT Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DJF), 2025 WL 3004039, at *9 (D. Minn. Oct. 27, 2025). Under Rule 23(e)(2), courts consider whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. A settlement agreement is "presumptively valid." *Uponor*, 716 F.3d at 1063 (citation omitted).

### a.      *Van Horn* Factors

#### i.             Merits of Plaintiffs' Case vs. the Terms of the Settlement

This factor, which is the "most important," *Van Horn*, 840 F.2d at 607, requires consideration of "Plaintiffs' likelihood of success in litigation" and "the range of successful outcomes," *Barclay*, 2025 WL 3004039, at *9.

Plaintiffs' likelihood of ultimate success was far from guaranteed. First, winning a securities fraud claim amounts to a significant undertaking, and one not easily obtained. *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909, at *6

13

(D. Minn. Mar. 24, 2022) (quoting *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 18-cv-296 (MJD/KMM), 2021 WL 3080960, at *9 (D. Minn. July 21, 2021)) ("Courts in this District have recognized that '[s]ecurities claims proceeding as a class action present complex and novel issues, and successfully prosecuting these types of actions has become more difficult with the adoption of the Private Securities Litigation Reform Act.'"); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("The risk of no recovery in complex cases of this sort is not merely hypothetical."). It involves proving six complex elements, *Matrixx Initiatives*, 563 U.S. at 37–38, each of which presents significant legal issues, *Resideo Techs.*, 2022 WL 872909, at *6 (involving significant legal and factual issues pertaining to falsity, scienter, causation and the calculation of damages). And the case was still in its infancy, having settled before the Court decided Defendants' motion to dismiss, which presented robust defenses. *See generally* ECF No. 50. These facts support an early settlement here. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (acknowledging that "the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss"); *Voulgaris v. Array Biopharma Inc.*, No. 17-cv-02789-KLM, 2021 WL 6331178, at *7 (D. Colo. Dec. 3, 2021) (noting the complexity of proving a securities claim and finding settlement proper where "Defendants raised credible defenses to the merits of Plaintiffs' claims before the settlement was reached, which could have resulted in either a substantially lower recovery or none at all").

Turning to the "range of successful outcomes," *Barclay*, 2025 WL 3004039, at *9, Plaintiffs' damages expert tentatively calculated potential damages in this case at the

14

upward end of $70.9 million.  ECF No. 80 ¶ 13.  Defendants, of course, would have argued for a significantly lower recovery, and Plaintiffs assert that Defendants would have surely argued that "declines in Lifecore's stock price were caused entirely by non-fraud-related factors."  *Id.* ¶ 44.  In that light, $3.75 million–or 5.3 percent of the maximum recovery— is reasonable and approximates the outcomes approved by courts in this District.  *See CenturyLink*, 2021 WL 3080960, at *7 (approving award that represented "8% to 17% of investors' realistically recoverable damages"); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-cv-786 (ADM/TNL), 2017 WL 2574005, at *3 (D. Minn. June 14, 2017) (approving award of "approximately 6.8% to 9.5%" of expert's estimate and noting that this "range both exceeds the median recovery of estimated damages in similar securities class actions settled in 2016, as well as the median settlement as a percentage of estimated damages in the Eighth Circuit from 2007 through 2016"); *see also* ECF No. 80-9 at 23 (referencing report concluding that the median securities settlement in the Eighth Circuit in 2025 was estimated at 5.6% of total possible recovery).  Accordingly, the $3.75 million settlement falls within the range of successful outcomes for Plaintiffs and "bears a reasonable relationship to the case's merits."  *Morrison v. Entrust Corp.*, No. 23-cv-415 (ECT/ECW), 2024 WL 2207563, at *6 (D. Minn. May 14, 2024).

### ii.   Defendants' Financial Condition

No party disputes Lifecore's ability to pay for its settlement obligations.  This factor is therefore neutral in the Court's analysis.  *See Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir.

2017) (finding this factor neutral because it was undisputed that defendant's "financial condition was stable").

### iii. Complexity and Expense of Further Litigation

"The benefits of the settlement must also be weighed against the potential cost of achieving a better result at trial." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1100 (D. Minn. 2009). And "[w]hile all cases carry the potential for uncertain verdicts, securities cases in particular are complex and difficult to prove." *Beaver Cnty. Emps.' Ret. Fund*, 2017 WL 2574005, at *3 (citation omitted); *Resideo Techs.*, 2022 WL 872909, at *3 (explaining that securities litigation involves "risks that Plaintiffs would be unable to establish liability, causation, or damages and would impose additional litigation costs and delays on the Settlement Class").

The risks of continued litigation here were substantial, particularly considering the infancy of the case. Indeed, with a pending motion to dismiss, the immediate risks were weighty. *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047. And those risks would have multiplied as the case progressed, which would have included additional decision-making points of "class certification, summary judgment, trial, and, if Plaintiffs had prevailed at trial, on the appeal that likely would have followed." ECF No. 77 at 24; *see also Resideo Techs.*, 2022 WL 872909, at *3 ("If the Settlement is approved, this case will be resolved before the parties invest time and resources on further litigation, including summary judgment, trial, and any possible appeals."). "Against all of this, the Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option." *Omnivision Techs.*, 559 F. Supp. 2d at 1042; *see also Huyer*,

16

847 F.3d at 939 (finding this factor weighed in favor of settlement approval when "proceeding to trial would be costly, extensive discovery was likely, [and] a trial would last ten days to two weeks" and would involve "presenting complex financial data" to the trier of fact); *see also Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975) ("[C]lass actions place an enormous burden of costs and expense upon the parties . . . .").

### iv.   Objections to the Settlement

On March 27, 2026, the Settlement Administrator sent notice of the settlement to 24,370 potential class members, with additional efforts made at providing notice to those class members whose initial notices were deemed undeliverable.  ECF No. 80-1 ¶¶ 3–10. The Court has received no objections to the settlement, which strongly supports settlement approval.  *See Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1080, 1083 (D. Minn. 2009) (finding this factor "strongly support[ed] settlement approval" when no objections were made by the more than 23,000 class members).[1]

### b.   Rule 23(e)(2) Factors

Having found that the *Van Horn* factors support approving the settlement, the Court also finds that the Rule 23(e)(2) factors support the settlement.  As described above, the class representatives and Class Counsel adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(A).  The parties also reached the settlement agreement after meeting with an experienced mediator, providing for arm's-length negotiation and avoiding any risk of

---

[1]    The Settlement Administrator did receive one request to be excluded from the class. ECF No. 80-1 ¶ 14.  But the requestor, 22NW Fund, LP, is managed by 22NW, LP, an entity explicitly excluded from the class.  The exclusion request is, as a result, meaningless.

17

collusion.  ECF No. 80 ¶¶ 29–35; *see* Fed. R. Civ. P. 23(e)(2)(B); *see also Barclay*, 2025 WL 3004039, at \*13 (finding this factor weighed in favor of a settlement when the parties had negotiated at arm's length through a mediator); *Isbell v. Polaris, Inc.*, No. 22-cv-1322 (WMW/DJF), 2023 WL 6662980, at \*2 (D. Minn. Oct. 12, 2023) ("Courts have held that negotiations involving counsel and a mediator, like the present case, raise a presumption of reasonableness.").  Settlement avoids the risks, additional expenses, uncertainties, and delays of continued litigation.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  The proposed method of distribution and processing claims is effective, and the notice was effectively delivered.  *See* ECF No. 80 ¶¶ 50–55; ECF No. 80-1 at 9–27; *see also* Fed. R. Civ. P. 23(e)(2)(C)(ii).  And the plan of allocation treats class members equitably relative to each other, as class members will receive their proportional share of losses arising from Lifecore's purported misrepresentations.  *See* ECF No. 80 ¶¶ 57–61; ECF No. 80-1 at 28–37; *see also* Fed. R. Civ. P. 23(e)(2)(D).  Both the *Van Horn* and Rule 23(e)(2) factors favor approving the parties' settlement, and the Court accordingly finds the settlement fair, reasonable, and adequate.  The Court grants final approval to the settlement.

## III.   Request for Attorneys' Fees

Plaintiffs also seek attorneys' fees under the "common-fund" doctrine.  ECF No. 79 at 10.  Under the "common-fund" doctrine, "class counsel is entitled to a reasonable fee drawn from the commonly-held fund created by a settlement for the benefit of a class." *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2015 WL 4246879, at \*1 (D. Minn. July 13, 2015) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

Generally, the "reasonable fee" is calculated by awarding a percentage of the settlement fund as attorneys' fees. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Here, Plaintiffs seek 33.33 percent of the $3.75 million settlement fund—or approximately $1.25 million—in attorneys' fees. ECF No. 79 at 10. This is within a presumptively reasonable range. *Resideo Techs.*, 2022 WL 872909, at *6 ("Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund."). But the Court must assess the fees' reasonableness here, and weighs seven factors: (1) the benefit conferred on the class; (2) the risk to which Plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both of the Plaintiffs and Defendants; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010).

### a.      Benefit to the Class

Class Counsel's efforts have brought about a modest monetary recovery to the class—$3.75 million. This is far from the largest securities settlement in this District. *See, e.g.*, *CenturyLink*, 2021 WL 3080960, at *9 (settlement of $55 million); *Resideo Techs.*, 2022 WL 872909, at *6 (settlement of $55 million). But, as noted above, it is a settlement reached before the case faced most of the risks involved with securities litigation, and the $3.75 million represents 5.3% of the estimated total that could have been recovered, which approximates a reasonable recovery for such cases. *See, e.g.*, ECF No. 80-9 at 23 (citing academic research showing that the median settlement recovery in 2025 for securities class

actions in the Eighth Circuit was 5.6% of estimated damages).  Based on the range of possible outcomes for this case, a $3.75 million settlement represents a fairly good deal for class members.

### b.     Risk for Class Counsel and Novelty of Case[2]

Class Counsel also took significant risk in litigating this case.  As an initial matter, Class Counsel litigated this case on a contingency basis, meaning that they assumed an appreciable risk this case would "produce no fee." *Brissette v. Heckler*, 784 F.2d 864, 865–66 (8th Cir. 1986).  Class Counsel assumed that risk while bringing securities claims, among the hardest claims to prove.  *Beaver Cnty. Emps.' Ret. Fund*, 2017 WL 2574005, at *3.  Given the complexity of the claims, Plaintiffs stood a very real risk of "recovering nothing in this litigation." *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), 2025 WL 3653652, at *3 (D. Minn. Dec. 17, 2025); *In re Xcel Energy*, 364 F. Supp. 2d at 994 ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").  And even if Plaintiffs prevailed before this Court, lengthy appeals (and a potential reversal) would no doubt have followed. *See Resideo Techs.*, 2022 WL 872909, at *6 ("Even if Plaintiffs were to prevail at trial, they would face the risks associated with any appeal.").

---

[2]     Although the "risk to counsel" and "complexity and novelty of case" factors are distinct, because the analysis of these two factors overlap, the Court will address them together.

### c.    Skill of Attorneys

All counsel in this case have proven themselves to be competent and vigorous advocates for their clients' interests.  Class Counsel and their firms—Pomerantz LLP and the Rosen Law Firm—are highly experienced in litigating securities class actions.  *See* ECF No. 20-1 at 27–37 (describing experience of Pomerantz attorneys); ECF No. 25-4 (describing experience of Rosen attorneys).  This Court recognized as much when granting lead plaintiff status.  *See* ECF No. 31 at 3.  This factor weighs in Class Counsel's favor.

### d.    Time and Labor Involved

Class Counsel claim 1,061 hours worked on this case over the past two years.  *See* ECF No. 80 ¶ 81.  But counsel "moved the case along expeditiously," *In re Xcel Energy*, 364 F. Supp. 2d at 996, and there is no evidence that Class Counsel's claimed work was duplicative or unnecessary.  Indeed, spending less than 1,500 hours over two years to achieve a $3.75 million settlement seems like a fairly efficient use of attorney resources.  *Id.* (noting that 1,082 hours spent was "efficient and just").  The Court's lodestar cross-check will further account for Class Counsel's time and labor expended.

### e.    Class Reaction

Under the Court's preliminary order granting approval, the Settlement Administrator sent notices to more than 24,000 potential class members.  ECF No. 80-1 ¶¶ 3–10.  The notices advised potential class members that Class Counsel would apply for an attorney fee award of up to 33.33 percent of the settlement, that the fees would be deducted from the settlement fund, and that members of the class could object to the

21

requested fee. *See* ECF No. 80-1 at 11, 18. No class members have objected to Class Counsel's fee request.

### f.       Comparison to Similar Cases

Class Counsel's request for a 33.33 percent fee award is in line—if slightly on the high end—with awards in similar securities class action cases. Courts in this circuit and this district "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *Xcel Energy*, 364 F. Supp. 2d at 998; *see also U.S. Bancorp*, 291 F.3d at 1038 (affirming a 36 percent fee award); *Krueger*, 2015 WL 4246879, at *2 (granting 33.3 percent fee award); *Resideo Techs.*, 2022 WL 872909, at *7 (granting 25 percent award); *CenturyLink*, 2021 WL 3080960, at *10 (same).

In sum, each Rule 23(e)(2) factor supports Class Counsel's requested fee award.

### g.       Lodestar Cross-Check

Although not necessary, courts may apply a lodestar "cross-check" to assess the reasonableness of the fee calculated as a percentage of the fund. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). The lodestar methodology calculates a reasonable fee by multiplying a reasonable hourly rate of compensation by the hours expended by an attorney. *See id.*

Here, Class Counsel expended 1,061 hours. *See* ECF No. 80 ¶ 81. As for rates of compensation, senior Class Counsel charge between $1,120 and $1,500 per hour, associate Class Counsel charge between $650 and $826 per hour, and legal support staff charge $450 per hour. ECF No. 80-2 at 7; ECF No. 80-3 at 7. The claimed hourly rates are generally in line for attorneys and paralegals involved in complex class-action litigation. *See Snyder*

22

*v. UnitedHealth Grp., Inc.*, No. 21-cv-1049 (JRT/DJF), ECF No. 241-2 ¶ 63; ECF No. 249 at 6–7 (D. Minn.) (finding hourly rates of $1,000 to $1,400 for partners, $500 to $725 for associates, and $325 for legal support staff to be "reasonable and consistent with rates" in ERISA class-action litigation); *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), ECF No. 3141-1; ECF No. 3255 at 10 (D. Minn.) (finding hourly rates of $850 to $1,150 for partners, $625 for associates, and $300 for legal support staff to be "fair and reasonable compensation" in an antitrust class action).

Multiplying the hours expended by the hourly rates leads to a lodestar amount of $947,066.08. ECF No. 80-2 at 7; ECF No. 80-3 at 7. Based on this lodestar, Class Counsel's requested fee of $1,249,987 leads to a multiplier of 1.32 from the lodestar. This multiplier is well within the range of reasonableness for complex class-action lawsuits. *See Xcel Energy*, 364 F. Supp. 2d at 1002 (awarding a fee representing a 4.7 multiplier in a securities class action); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (awarding a fee representing a 5.61 multiplier in multi-district securities class-action litigation). Accordingly, the Court grants attorneys' fees to Class Counsel in the amount of $1,249,987.

## IV.   Request for Expenses

Class Counsel are seeking $103,468.42 in case-related expenses for a range of expenses incurred in litigating this case. Those include expert fees, notice fees, mediator fees, travel expenses, investigator fees, and court fees. ECF No. 80-2 at 9; ECF No. 80-3 at 9. "[C]ounsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness

23

costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger*, 2015 WL 4246879, at *3. The Court is satisfied from its review of Class Counsel's declarations that each of the expense categories for which reimbursement is sought is appropriate for payment from a common fund. *See, e.g.*, *Xcel Energy*, 364 F. Supp. 2d at 1000 (finding expenses for "photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel" were reasonable). And because Class Counsel represented Plaintiffs on a contingent-fee basis, Class Counsel "had a strong incentive to keep these expenses at a reasonable level." *Krueger*, 2015 WL 4246879, at *3. The Court therefore awards Class Counsel $103,468.42 for its expenses.

## V.    Service Awards

Plaintiffs finally request a $2,000 service award to each of the two class representatives. ECF No. 79 at 23.

The Court may order an award to lead plaintiffs for the services they render in a securities class action. *See* 15 U.S.C. § 78u–4(a)(4) ("Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."). In determining whether to grant a service award, courts consider the actions that the plaintiffs took to protect the class's interests, the degree to which the class has benefitted from those actions, and the time and effort the plaintiffs expended in pursuing litigation. *See U.S. Bancorp*, 291 F.3d at 1038.

24

Here, each of these factors supports granting service awards. Each Plaintiff explains that he has been involved in this litigation since its outset and that each communicated with Class Counsel about the litigation, provided documents relevant to the claims, and consulted with Class Counsel about settlement discussions. ECF No. 80-4 ¶ 5; ECF No. 80-5 ¶ 5. These efforts are similar to actions in cases where courts have deemed service awards appropriate. *See Xcel Energy*, 364 F. Supp. 2d at 1003 (awarding service awards when plaintiffs "reviewed pleadings, conferred with counsel, provided information about the plan, responded to discovery, and reviewed and consented to the settlement"). In recognition of their efforts, the Court grants a modest service award of $2,000 each to David Carew and Hugh Robert Holmes.

## CONCLUSION

For these reasons, and on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 76) is **GRANTED**. The parties are directed to take the necessary steps to effectuate the terms of the settlement agreement (ECF No. 72-1) and the plan of allocation (ECF No. 80 ¶¶ 57–63).

2. Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 78) is **GRANTED** as follows:

   a. Class Counsel's request for an award of $1,249,987 from the Settlement Fund, plus interest earned at the same rate as the Fund, is approved.

   b. Class Counsel's request for litigation expenses of $103,468.42, plus interest earned at the same rate as the Settlement Fund, is approved.

   c. Service awards of $2,000 each are granted to Class Representatives David Carew and Hugh Robert Holmes.

3.       This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 6, 2026                    *s/Laura M. Provinzino*
                                         Laura M. Provinzino
                                         United States District Judge